IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>CELLNET TECHNOLOGY, INC.,<br><br>      Defendant/Counterclaimant | CIVIL ACTION NO.<br>1:05-CV-2658-CC |
| IP CO., LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>TROPOS NETWORKS, INC.,<br><br>      Defendant/Counterclaimant. | CIVIL ACTION NO.<br>1:06-CV-585-CC |

**ORDER**

These matters are presently before the Court on IP Co., LLC's Motion to Consolidate Related Cases Through Claims Construction [Doc. Nos. 73, 54].[1] In addition, pending in the Cellnet matter is IP Co., LLC's Motion for Partial Reconsideration of Order Denying Cellnet Technology, Inc.'s Motion to Dismiss Count II of Plaintiff IP Co., LLC's Complaint [Doc. No. 92] and Plaintiff IP Co., LLC's Motion for Protective Order [Doc. No. 99] and pending in the Tropos matter is Tropos Network, Inc.'s Motion to Stay Litigation Pending Reexamination of the '516 and '062 Patents by the United States Patent and Trademark Office [Doc. No. 43]. This Court heard oral argument on the motion to stay on January 17, 2007.

---

[1] The first docket number references the docket in IP Co., LLC v. Cellnet Technology, Inc., 1:05-CV-2658-CC (hereinafter "the Cellnet matter"), and the second refers to the docket in IP Co., LLC v. Tropos Networks, Inc., 1:06-CV-585-CC (hereinafter "the Tropos matter").

Having carefully considered the submissions of the parties and the applicable law, the Court hereby rules as follows:

## I.     MOTION TO STAY

As an initial matter, even though a motion to stay has been filed only in the Tropos matter, the Court finds it appropriate to consider whether a stay should be entered in both cases, insofar as both involve allegations relating to U.S. Patent No. 6,044,062 (the "'062 Patent") and U.S. Patent No. 6,249,516 (the "'516 Patent").[2] The '516 and '062 Patents are currently being reexamined by the United States Patent and Trademark Office ("USPTO") because a substantial new question of patentability has been raised regarding each of the patents. All claims of the '516 and '062 Patents are being reexamined. In light of the reexamination proceedings, Tropos Networks, Inc. ("Tropos") has argued that a stay should be entered, and both IP Co., LLC ("IPCO") and Cellnet Technology, Inc. ("Cellnet") oppose a stay.

Tropos contends that the Tropos matter should be stayed because the reexamination will narrow the issues for trial, conserve the resources of the parties, and promote judicial economy. If the claims are declared unpatentable, Tropos argues that this litigation will become moot, and if the claims are amended, Tropos asserts that proceeding with this litigation at this time would be a waste of resources. Tropos additionally takes the position that entering a stay will allow the parties and the Court to benefit from the USPTO's expertise in addressing the application of prior art to the claims of the Patents and that neither party will be prejudiced by the stay because the Tropos matter is in an early procedural stage – the parties have not exchanged disclosures or conducted any discovery.

---

[2] The Court notified Cellnet Technology, Inc. and IP Co., LLC of its intention to consider whether both actions should be stayed pending the reexamination of the patents and provided the parties with an opportunity to address this issue.

IPCO opposes a stay on the grounds that the reexamination addresses only the limited issue of alleged prior art, that the patents remain enforceable during the reexamination, and that the additional delay would be prejudicial. IPCO additionally contends that Tropos has been unnecessarily litigious in this case and has failed to cooperate on several procedural matters, resulting in a delay in the adjudication of IPCO's claims. IPCO asserts that Tropos continues to profit from infringing conduct and will continue to earn profits during the pendency of the stay.[3] Cellnet opposes a stay of the Cellnet matter on the grounds that the additional delay will be prejudicial. Cellnet also emphasizes that the Cellnet matter has progressed further than the Tropos matter and is ready to move forward into the exchange of proposed claim constructions, claim construction briefing, and a Markman hearing.

The Court agrees with Tropos' position that the reexamination proceedings may have a significant impact on the issues to be considered in these cases, particularly insofar as statistics published by the USPTO reflect a 74 percent likelihood that at least some of the patent claims that are reexamined by the USPTO (as initiated by a third party) will be cancelled or changed during the reexamination. This Court has discretion to enter a stay while a reexamination is pending before the USPTO. Gould v. Control Laser Corp., 705 F.2d 1340 (Fed. Cir. 1983). To determine whether a stay is appropriate, the Court considers "(1) whether a stay will simplify the issues in question and trial of the case; (2) whether discovery is complete and whether a trial date has been set; and (3) whether the stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Medicis Pharm.

---

[3] IPCO additionally argues that a stay should not be entered because Tropos' tort claims are not impacted by the reexamination proceedings. Since IPCO submitted its response to the motion to stay, however, the parties have stipulated to the dismissal of Tropos' tort claims.

Corp. v. Upsher-Smith Labs, Inc., No. CV-05-3458-PHX-SMM, 2006 U.S. Dist. LEXIS 76320 (D. Ariz. Oct. 19, 2006) (citation omitted). The Court may also consider whether a stay will reduce the burden of litigation on the parties and the Court. Tap Pharm. Prods. v. Atrix Labs., Inc., 70 U.S.P.Q.2d (BNA) 1319, 1320 (N.D. Ill. 2004).

The Court easily finds that the first factor weighs heavily in favor of granting the motion to stay in the instant case. Neither IPCO nor Cellnet take issue with the factual circumstances surrounding the reexamination (i.e., that all claims of the patents are being reexamined, that the USPTO considers substantial questions of patentability to be raised, and that prior art is being considered by the USPTO), the statistics published by the USPTO, or the impact that the potential cancellation or amendment of the patents would have on the Cellnet and Tropos matters. The Court will benefit from the expertise of the USPTO in reviewing prior art, the parties and the Court will avoid the potentially wasteful expenditure of resources (reducing the burden of litigation), and the reexamination proceedings may streamline the claims remaining for determination in the instant litigations.

As for the second factor, which addresses the procedural posture of the case, the Court easily finds that this factor weighs in favor of a stay in the Tropos matter. As previously noted, the parties in the Tropos matter have not conducted any discovery and the case remains in an early procedural stage. The Cellnet matter has progressed further than the Tropos matter; however, the Court nonetheless finds that this factor also weighs in favor of a stay in the Cellnet matter. While the parties have conducted discovery and have exchanged infringement and invalidity contentions, a Markman hearing has not yet been scheduled and a special master has not yet been appointed. Therefore, while the Court recognizes that the parties have invested significant resources in litigating the Cellnet matter, the Court also recognizes that bringing the Cellnet matter to a conclusion will require substantial

additional resources. The Court finds that entering a stay will facilitate the conservation of those resources and will also serve the interests of judicial economy. The Court can discern no advantage to Cellnet if the outcome of the reexamination proceedings either moots IPCO's lawsuit or amends the claims of the patents, such that the entire claims construction process must be repeated. See Grayling Indus., Inc. v. GPAC, Inc., 19 U.S.P.Q.2d 1872, 1873-74 (N.D. Ga. 1991).

Finally, the Court considers whether the stay will be unduly prejudicial or will create a tactical advantage for the non-movants, IPCO and Cellnet. While the Court recognizes that additional delay in this matter may be an undesirable result of entering a stay, the Court cannot find that the parties would be benefitted by proceeding with this litigation in the face of a statistically significant chance that the claims will be changed or even eliminated by the reexamination proceedings. In addition, the Court notes that the average pendency of a reexamination proceeding, as reported by the USPTO, is 21.9 months. The reexamination proceedings relating to the '516 and '062 patents have already been pending for over 14 and 12 months, respectively. Accordingly, the Court anticipates that the reexamination proceedings will be concluded within the next 8 to 10 months. The Court does not find that the anticipated length of the delay is significant, particularly considering the potential waste of resources that could result if the Court allows the matters to proceed.

In addition, entering a stay in these matters is consistent with the frequently-cited congressional intent that the district courts liberally grant stays where reexamination proceedings are pending. See, e.g., Lentek Int'l, Inc. v. Sharper Image Corp., 169 F. Supp.2d 1360, 1362 (M.D. Fla. 2001) ("As several courts have noted, the sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the

district courts with the expertise of the patent office."); ASCII Corp. v. STD Entertainment USA, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("It is clear from the cases cited by both parties that there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.").

Accordingly, Tropos' motion to stay is **GRANTED** in the Tropos matter, and, in the exercise of its discretion, the Court also enters a stay in the Cellnet matter. As of the date of this Order, the entirety of these litigations, including all proceedings and discovery, are **STAYED** pending a final disposition of the reexamination proceedings, including the exhaustion of any appeals that may be taken. IPCO is **DIRECTED** to file a Notice with the Court within ten (10) days of the final disposition of each of the reexamination proceedings, advising the Court that the USPTO has issued a final determination and setting forth the outcome of the reexamination.

## II.     MOTION TO CONSOLIDATE

On December 15, 2006, IPCO filed a motion to consolidate the Cellnet and Tropos matters through claims construction.[4] IPCO argues that consolidation is proper because the cases involve the same patents and the same claims construction issues. Both cases involve the '062 Patent and the '516 Patent. IPCO asks that the cases be consolidated through claims construction, including all pre-hearing procedural and discovery matters relating to the claims construction process. IPCO acknowledges that the Cellnet matter has proceeded slightly further than the Tropos matter because infringement and invalidity contentions have been exchanged in the

---

[4] At the time IPCO filed its motion to consolidate, two cases involving IPCO and Tropos were pending. Those actions have since been consolidated by consent of the parties and the Court therefore addresses only the remaining Tropos matter in this Order.

Cellnet matter and minimal discovery has occurred.

Tropos filed a response to IPCO's motion to consolidate, in which Tropos stated that it did not oppose consolidation for the purposes of claims construction, provided that the consolidation does not interfere with any stay that the Court may enter based on the reexamination proceedings. Tropos additionally contends that the Court should abstain from ruling on the motion to consolidate, enter a stay until the reexamination process is complete, and then address whether the Cellnet and Tropos matters should be consolidated. Tropos states that the result of the reexamination proceedings may impact the degree to which common questions of law or fact are present in these cases.

Cellnet opposes consolidation with the Tropos matter. Cellnet contends that consolidation will result in significant delay and will be unfairly prejudicial because during this time Cellnet will remain under the shadow of a patent infringement lawsuit. According to Cellnet, the Cellnet matter is ready for claims construction and substantive rulings on the merits. Cellnet asserts that significant discovery has occurred in the Cellnet matter and the parties have exchanged infringement and invalidity contentions for the '516 Patent. In contrast, Cellnet emphasizes, discovery in the Tropos matter has not yet commenced. Cellnet estimates that it will require nine months for the Tropos matter to "catch up" with the Cellnet matter.[5]

Federal Rule of Civil Procedure 42(a) provides that consolidation may be ordered where "actions involving a common question of law or fact are pending before the court." In this case, the parties do not dispute the existence of common questions of law, insofar as each case relates to the construction of the terms of the

---

[5] Cellnet also differentiates the cases by noting that the '062 Patent is at issue in the Tropos matter but has been dismissed from the Cellnet matter. However, as reflected in this Court's February 8, 2007 ruling, the '062 Patent remains at issue in the Cellnet matter. The cases therefore do not involve different patents, as Cellnet contends.

'062 and '516 Patents. Having determined that common questions of law exist in these cases, the Court next analyses

> [w]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985) (citation and internal marks omitted). Having reviewed and applied these factors in this case, the Court finds that consolidation is appropriate here. The Court is not unmindful of Cellnet's position that it will be prejudiced by the delay associated with the time that will be required for discovery to be conducted in the Tropos matter. However, the Court finds this possible prejudice is outweighed by the benefits of a consolidation, which include avoiding the duplication of time, effort, and expense on the part of the parties and the Court, conserving judicial resources, reducing the risk of inconsistent adjudications, and allowing all parties to fairly participate in the claims construction process. In addition, the outcome of the reexamination proceedings may warrant the reopening of the discovery period in the Cellnet matter. The Court, moreover, has previously ordered that Cellnet may redepose the '062 Patent inventors and this deposition remains to be conducted. The Court does not have any information as to the current status of the disclosures regarding the '062 Patent in the Cellnet matter. In short, the Court finds that Federal Rule of Civil Procedure 42(a) is satisfied in these cases, and the Court hereby **GRANTS** IPCO's motions to consolidate. The Cellnet and Tropos matters are consolidated through claims construction and, as previously noted, are stayed during the pendency of the USPTO reexamination of the '062 and '516 Patents.

If the outcome of the reexamination proceedings affects the degree to which there are common questions of law and fact in these cases or otherwise impacts any

of the factors to be considered on the issue of consolidation, the parties may seek additional relief from the Court following the conclusion of the reexamination proceedings.

### III.    MOTION FOR RECONSIDERATION

In this motion, IPCO asks that the Court reconsider the portions of its February 8, 2007 Order (hereinafter "February 2007 Order") awarding Cellnet the fees incurred in bringing its motion to dismiss Count II of IPCO's Complaint and fees connected with re-deposing the inventors of the patents-in-suit.  Pursuant to Local Rule 7.2(E), motions for reconsideration may not be filed "as a matter of routine practice."  The decision of whether to grant a motion for reconsideration is within the sound discretion of the district court.  Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000).  There are three recognized grounds that support filing a motion for reconsideration:  (1) newly discovered evidence; (2) an intervening development or change in controlling legal principles; or (3) a need to correct clear error or prevent manifest injustice.  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).

As grounds to support its motion for reconsideration, IPCO states that the Court erroneously relies on inaccurate factual information in its February 2007 Order and that the sanction imposed by that Order is disproportionate to the delay attributable to IPCO.  IPCO does not state that its motion is warranted due to newly discovered evidence or a change in controlling legal principles.  The Court therefore assumes that IPCO alleges that reconsideration is necessary to correct clear error.

IPCO identifies the following three facts as facts relied on by the Court in its February 2007 Order:  (1) IPCO's '062 Patent disclosures were provided late; (2) IPCO represented that it would dismiss the '062 Patent claims but did not thereafter dismiss those claims; and (3) IPCO objected to producing information relating to the

'062 Patent in discovery. IPCO states that these facts are not accurate and then sets forth a lengthy timeline of events for the Court's consideration. The above-referenced facts, however, were set forth in the portion of this Court's February 2007 Order that discussed the contentions of the parties. In any event, however, in the timeline, IPCO admits that its initial Infringement Contentions did not reference the '062 Patent and that IPCO represented a willingness to dismiss the '062 Patent claims. In addition, IPCO's discovery responses were attached to Cellnet's original motion to dismiss and in those responses, IPCO plainly stated an objection to producing any information relating to any patent other than the '516 Patent. IPCO's timeline, therefore, appears to confirm the Court's earlier findings. Indeed, the timeline reflects that IPCO made an initial settlement offer on the same day as it served the Infringement Contentions that did not reference the '062 Patent. IPCO cites nothing to indicate that the mere fact that settlement discussions were initiated excuses IPCO's obligations to comply with the Local Patent Rules by serving Infringement Contentions.

In addition, to the extent that any factual information appearing in the motion for reconsideration was not provided in response to Cellnet's motion to dismiss, IPCO cites nothing to indicate that this information was not previously known to IPCO or to suggest that the information could not have been provided in response to the initial motion. It is well-settled that the Court will not consider arguments raised in a motion for reconsideration that could have been, but were not, included in the initial briefing. See Cunningham v. HSBC Mortgage Services, No. 1:07-CV-1346-WSD, 2007 U.S. Dist. LEXIS 47632 (N.D.Ga. July 2, 2007) ("A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously filed motion."). The Court therefore rejects IPCO's

argument that this Court relied on factually inaccurate information when ruling on Cellnet's motion to dismiss. In addition, the Court notes for the record that much of the material emphasized by IPCO in its motion to reconsideration was recognized by the Court in the February 2007 Order in connection with the Court's discussion of IPCO's arguments in opposition to the motion to dismiss.

IPCO next devotes several pages of its briefing to set forth the position that the three factual allegations discussed extensively above could not support a finding that IPCO willfully failed to make its case ready for trial such that dismissal for failure to prosecute would be appropriate. This Court's February 2007 Order plainly rejected Cellnet's argument that Count II should be dismissed for failure to prosecute. The Court therefore cannot identify the specific finding in its February 2007 Order that is challenged by this argument.

Nonetheless, it is clear that the primary challenge raised by IPCO in the instant motion relates to this Court's decision to award sanctions for the delay in prosecuting the '062 Patent. IPCO contends that sanctions were not warranted because the delays in the case were joint, that Cellnet similarly did not pursue its declaratory judgment claims involving the '062 Patent, that Cellnet never objected to IPCO's failure to provide infringement contentions or disclosures relating to the '062 Patent, that Cellnet never discussed the '062 Patent with IPCO prior to filing the motion to dismiss, that, despite both parties' representations to the Court, Cellnet and IPCO could not agree to terms that would entirely remove the '062 Patent from the case because Cellnet sought unreasonable terms for the dismissal of its declaratory judgment claims regarding the '062 Patent, and that IPCO in fact produced all documents related to the '062 Patent. IPCO states that it remains willing to pay to fly the two inventors to Atlanta for a deposition as to the '062 Patent. IPCO objects to paying Cellnet's attorney time involved in preparing for and

taking the two depositions because Cellnet had not previously expended this time and effort. This Court agrees with IPCO's position on this point and finds that the attorney time necessary to prepare for and take the depositions of the two inventors should not have been awarded as a sanction for IPCO's delay in prosecuting its '062 Patent claims. To the extent that this Court's February 2007 Order awards such fees, that portion of the Order is hereby **VACATED**; however, IPCO will remain responsible for the travel expenses of the two inventors.

IPCO also challenges the Court's decision to award attorney fees to Cellnet in connection with the preparation of the motion to dismiss. IPCO states that the delay was not caused solely by IPCO, that Rule 41 does not provide for the award of sanctions, and that Cellnet should not have moved to dismiss the '062 Patent prior to discussing it with IPCO. As an initial matter, the Court easily rejects IPCO's argument that the Court did not have authority to award sanctions in the instant case. As IPCO itself recognizes, in order to dismiss a claim with prejudice for failure to prosecute, the court must find that, in part, lesser sanctions would not suffice. Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1338 (11th Cir. 2005). The suggestion that a court would not have any authority to impose the lesser sanctions is therefore nonsensical. IPCO similarly cites no authority for the position that a defendant must confer with the plaintiff prior to filing a motion to dismiss. Although Cellnet reference IPCO's failure to provide discovery on the '062 Patent, Cellnet did not file a discovery motion. Finally, as to IPCO's argument that the delay in this case was not solely caused by IPCO, the Court considered this argument in connection with the Court's ruling on the motion to dismiss and has been provided with no reason to reconsider this ruling here. Accordingly, IPCO's motion for reconsideration is **GRANTED in part and DENIED in part**, as stated herein.

After this Court's February 2007 Order, Cellnet filed a Statement of Fees [Doc. No. 93], in which Cellnet asserted that the fees incurred in connection with the motion to dismiss were $59,070.00. IPCO filed an opposition to the Statement of Fees, arguing that the amount is unwarranted, grossly excessive, and unsupported. IPCO argues that both the staffing levels and the amount of time spent on the motion to dismiss are unreasonable. IPCO additionally argues that Cellnet's Statement of Fees does not contain sufficient billing detail to enable the Court to determine the reasonableness of the fees. Moreover, IPCO contends that the billing rate for Cellnet's counsel is excessive and that the amount of fees requested more generally "shocks the conscience." Cellnet filed a response to IPCO's opposition, arguing that the billing rates and amount of time are reasonable.

This Court agrees with IPCO's position that the absence of detailed billing records from Cellnet's Statement of Fees limits the Court's ability to determine the reasonableness of the fees; however, the Court disagrees with IPCO's argument that the billing rate is itself unreasonable. Mr. Setty's Declaration states that Rasheed Williams spend 46.3 hours drafting the motion to dismiss, including researching case law, reviewing the record, and drafting the motion. Two other associates spent a total of 19.1 hours assisting Mr. Williams' efforts in drafting and research. The combined time spent researching and drafting the initial motion to dismiss, therefore, is 65.4 hours. This amount of time is unreasonable, particularly considering the relatively straightforward legal principles applicable to motions to dismiss for failure to prosecute. The Court will therefore reduce by one-third the amount of time each of these attorneys spent on the initial motion to dismiss. Mr. Setty's Declaration reflects that both he and Christopher Green reviewed and edited the motion prior to its filing, devoting 8.0 hours and 8.5 hours, respectively, to this task. The Court has no information to indicate that Mr. Setty and Mr. Green

performed different tasks as to the editing and reviewing of the document and the Court finds that the time is duplicative. The Court also finds that the total editing and reviewing time of 16.5 hours is unreasonable and will reduce the time of each attorney by one-half.

As for the reply brief, Mr. Setty's Declaration indicates that Mr. Williams spent 48.0 hours researching and drafting the brief, with the assistance of two additional attorneys, who spent a total time of 4.0 hours. Accordingly, 52.0 hours were spent researching and drafting the thirteen-page reply brief filed in this case. The Court finds that this amount of time is plainly unreasonable and will reduce the time of each attorney by one-half. Mr. Setty's Declaration additionally indicates that the reply brief was reviewed and edited by three attorneys, requiring 2.0 hours of Mr. Setty's time, .3 hours of Daniel Kent's time, and 10.4 hours of Mr. Green's time, for a total editing and review time of 12.7 hours. According to this calculation, Cellnet's attorneys spent approximately one hour reviewing each page of the reply brief. The Court finds that this amount of time is plainly unreasonable and will reduce the time of each attorney by two-thirds. Mr. Setty's Declaration additionally indicates that Mr. Setty devoted 2.6 hours to preparing for oral argument and arguing the motion to dismiss, with support from two additional attorneys, and that two paralegals assisted in the preparation of documents and materials in connection with the oral argument. While the Court does not find Mr. Setty's time or the paralegals' time unreasonable, the Court does question the reasonableness of the time of the other two attorneys, who did not participate in oral argument. The Court will reduce the time of each of these attorneys by one-half.

Finally, Mr. Setty's Declaration states that Douglas Bridges spent 16.6 hours drafting the proposed order on the motion to dismiss, assisted by another associate who devoted .9 hours to the drafting of the proposed order. Mr. Setty and Mr.

Green devoted 3.0 hours and 2.2 hours, respectively, to editing and reviewing the approximately eight-page proposed order. The Court finds that this amount of time is unreasonable, especially considering that the proposed order includes information and legal analysis from Cellnet's original motion to dismiss. The Court will therefore reduce the time of each attorney by one-half.

Having re-calculated the amount of attorney fees in light of the reductions in time referenced above,[6] the Court finds that an attorney fee award of **$33,611.00** is appropriate. IPCO is **INSTRUCTED** to pay this amount to Cellnet's counsel within ten (10) days of the date of this Order.

## IV.   MOTION FOR PROTECTIVE ORDER

In light of this Court's decision to stay the Cellnet matter pending the outcome of the reexamination of the '062 and '516 Patents, IPCO's motion for a protective order in the Cellnet matter is **DENIED** as moot.

Because the Court has entered a stay in these matters, the Clerk of Court is **DIRECTED** to administratively close these cases. The cases will be reopened after the completion of the reexamination proceedings.

SO ORDERED this 16th day of August, 2007.

*s/   CLARENCE COOPER*

CLARENCE COOPER
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that in performing these calculations, the Court has applied the 2006 billing rate. The only attorney work that could possibly be billed at the 2007 rates relates to the time spent on the proposed order. However, insofar as the Court heard oral argument on December 18, 2006 and the proposed order was filed on January 10, 2007 and Mr. Setty's Declaration does not indicate the portion of time spent in 2006 and in 2007, the Court will apply the 2006 rates.