IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IP Co., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TROPOS NETWORKS, INC., | ) | Civil Action File |
| | ) | |
| Defendant. | ) | No. 1:06-CV-00585-CC |
| | ) | |
| | ) | |

**PLAINTIFF IPCO, LLC'S MOTION TO TRANSFER AND
MEMORANDUM IN SUPPORT THEREOF**

Plaintiff IP Co., LLC ("IPCO") hereby files this motion to transfer the

above-styled action to the Eastern District of Texas pursuant to 28 U.S.C. 1404(a).

Now that the four-year stay has been lifted[1], and given the events that have

transpired during the stay, this case is ripe to be transferred to the Eastern District

of Texas, which has become well-versed in the technologies and patents at issue in

this case during the stay.

---

[1] The stay was lifted on September 8, 2011 pursuant to this Court's Order Granting
Opposed Motion to Lift Stay [Dkt. 75].

## I.    INTRODUCTION

The Eastern District of Texas (the "Texas court" or "Texas forum") is the more convenient and most efficient forum for this litigation.  During four years since the stay in this case was granted, circumstances surrounding this case have changed significantly, thereby altering the calculus for venue in this case.  Most importantly, the "paramount factor" of judicial economy now plainly favors the Texas forum.

As set forth in more detail below, during the four-year stay, the Eastern District of Texas has been educated on the technologies covered by the patents-in-suit and other related patents.  For instance, in one Eastern District of Texas case, the parties briefed the claim construction issues related to the '516 Patent.  In another pending case, both patents-in-suit are currently being litigated.  Moreover, the Eastern District of Texas has been educated on wireless mesh technologies generally.  As a result, the Texas court is already educated on both the patents and wireless mesh technology more generally, and it will likely construe some of the exact terms that will be at issue in this case.   Conversely, this Court never had an opportunity to become familiar with the patents and technologies at issue by virtue of other IPCO litigations, and ultimately, neither this Court nor any other court in the District conducted a *Markman* Hearing, issued a claim construction order, or analyzed infringement or validity of the '516 Patent or the '062 Patents.

2

Under controlling Federal Circuit authority, the "paramount" factor of judicial economy supports transfer for the practical reason that this Court—which has never addressed any technical issues regarding the patents-in-suit—should not have to duplicate the efforts of the Texas court to learn these patents and this technology.  Rather, the Texas court should be permitted to utilize the knowledge it has gained in order to maximize judicial economy.  Finally, the other factors relevant to a §1404(a) analyses either favor transfer or are neutral.

Accordingly, now that the four-year stay has been lifted, IPCO respectfully moves this Court to transfer the non-Georgia defendants in this case to the Eastern District of Texas.

## II.   BACKGROUND

### A.   Plaintiff IPCO and Prior Negotiations with Tropos Networks, Inc.

Plaintiff IPCO is a leading innovator of mesh networking and related technologies.  IPCO is led by T. David Petite, one of the wireless industry's greatest and most prolific innovators.  Mr. Petite has been active in the wireless industry for over a decade and has developed many leading edge solutions which are deployed in various products and industries throughout the country.

In August of 2005, IPCO contacted Tropos Networks, Inc. ("Tropos")

3

regarding the U.S. Patent Nos. 6,249,516 (the "'516 Patent")  and 6,044,062 (the

"'062 Patent") (collectively, the "Patents" or patents-in-suit).[2]  Tropos initially

indicated that it desired to resolve the issues raised in the August letter,[3] but after

two months of representing to IPCO that Tropos needed additional time to

investigate the substance of IPCO's allegations,[4] Tropos filed a declaratory

judgment action of non-infringement, invalidity, and unenforceability of the '516

and '062 Patents in the Northern District of California[5] (hereinafter, the "California

Action").  The California Action also included state claims for tortious interference

with contractual relations, tortious interference with prospective economic

advantage, and unfair competition (the "State Law Claims").  [California Action,

Dkt. 1].   In response to this action, IPCO filed the current litigation against Tropos

in this Court on March 13, 2006 (hereinafter the "current litigation" or the

"Georgia Action").

        B.     <u>The Parties' Respective Motions to Dismiss or Transfer</u>

---

[2] *See* Letter from John C. Herman, dated August 22, 2005, attached as Exhibit A.

[3] *See* Letter from Michael Taylor, dated September 8, 2005, attached as Exhibit B

[4] *See* Letter from John C. Herman, dated September 12, 2005, attached as Exhibit C.

[5] *Tropos Networks, Inc. v. IPCO, LLC, et al,* Case No. 05-cv-04281, Northern District of California.

On April 10, 2006, IPCO filed a motion to dismiss the California Action, and in the alternative, a motion to transfer venue to the Northern District of Georgia [California Action, Dkt. 22].  On May 8, 2006, Tropos filed its own motion to dismiss, stay, or transfer the Georgia Action to the Northern District of California [Georgia Action, Dkt. 6].   On July 10, 2006, the court in the California Action granted IPCO's motion to transfer the California Action to the Northern District of Georgia [California Action, Dkt. 63].  In analyzing the factors used to determine convenience under §1404(a), the Court found that two factors favored transfer.  The first factor, "local interest in the controversy," favored a transfer because the alleged conduct giving rise to the State Law Claims occurred in Georgia. *Id.* at 6.  The second factor, "relative court congestion," favored transfer because of the relative differences in the dockets for the Northern District of California and the Northern District of Georgia at that time.  *Id.* at 7.  The court also relied on the fact that IPCO already had two patent litigations in the Northern District of Georgia involving the '516 Patent,[6] and the parties in one of the cases, the *Elster* case, had already completed claim construction briefing for the '516 Patent.  *Id.*  Notably, the same reasons the Northern District of California

---

[6] *IPCO LLC v. Elster Electricity, LLC*, Case No. 05-1138-CC (hereinafter, the "*IPCO v. Elster*") and *IPCO LLC v. CellNet Technology,* Case No. 05-2658-CC (hereinafter, the "*IPCO v. CellNet*").

articulated as the basis for transferring the case were the same reasons IPCO filed in this Court originally.

C.     The Motions to Consolidate and Stay

The California case was transferred to the Northern District of Georgia and was opened as Civil Action No. 1:06-cv-1659 on July 13, 2006 (the "Georgia D.J. Action"). On January 17, 2007, this Court consolidated the Georgia D.J. Action and the Georgia Action into the present case and dismissed Tropos' State Law Claims without prejudice. [Dkt. 63]. On August 16, 2007, this Court granted Tropos' motion to stay proceedings pending reexamination of the '516 Patent and ordered the case administratively closed. [Dkt. 72]. The case was stayed until September 8, 2011, when the Court re-opened the case. [Dkt. 75]. Importantly, this case is in its early stages, and there has not even been a discovery schedule yet entered.

D.     Events Transpiring During the Four-Year Stay

As deducible from above, the current litigation was stayed for approximately four years, and unsurprisingly, much has transpired in the interim. First, during the stay, IPCO has been forced to pursue other infringers of the technologies at issue in this case. The patents-in-suit have been the subject of two other cases in the

6

Eastern District of Texas.[7]   Moreover, the Texas courts have now gained

substantial experience with related wireless mesh technologies.[8]

Second, the IPCO cases highlighted in Northern District of California's

§1404(a) convenience factor analysis, and used as a basis for granting transfer of

the case to Georgia, are closed.  On July 1, 2009, IPCO and CellNet reached an

agreement to dismiss  with prejudice the claims at issue in the CellNet Action.

[*IPCO v. CellNet*, Dkt. 107].  Also, on August 28, 2006, IPCO and Elster

Electricity, LLC reached an agreement to dismiss  with prejudice the claims at

issue in the Elster Action.  [*IPCO v. Elster*, Dkt. 88].  Ultimately, this Court did

not issue a claim construction order in any of these cases.  Given all of the events

that have transpired during the four-year stay, the Eastern District of Texas is now

---

[7]  Case No. 2:09-cv-00037-DF ("*IPCO v. Oncor*") involved U.S. Patent Nos. 7,054,271 and the '516 Patent (now closed); Case No. 6:11-cv-00439-LED ("*IPCO v. Ingersoll-Rand*") involves the '062 and '516 Patents.

[8]  Case No. 6:11-cv-00048-LED ("*SIPCO v. ABB*") involves the '511 and '492 Patents (accused products include energy management and electric vehicle charging products operating on a wireless mess network); Case No. 6:10-cv-00533-LED-JDL ("*SIPCO v. Energate*") involves the '511 and '492 Patents (accused products include smart metering and home energy management products operating on a wireless mess network); Case No. 6:09-cv-00532-LED-JDL ("*SIPCO v. Datamatic*") involved the '511 and '661 Patents; and Case No. 2:08-cv-00359-DF ("*SIPCO v. Amazon.com, Inc., et al.*") involves the '511 Patent (accused products include home automation products that operate on a wireless mesh network).  While SIPCO is a different company than IPCO, the wireless mesh technology at issue is similar to that in which the Eastern District of Texas has become proficient.

the more convenient forum for this litigation.

## III.   LEGAL STANDARD

Pursuant to § 1404(a), in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought for the convenience of the parties and witnesses" 28 U.S.C. § 1404(a). Once it is established that the case could have been brought in the district to where transfer is sought,[9] then the Court must determine whether the suggested transferee forum is "more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  In doing so, courts consider several public and private interest factors. Although courts may consider a variety of relevant factors, the Federal Circuit has stated that the interests of judicial economy be of paramount importance in the transfer analysis. *In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money. . . ." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

A non-exhaustive list of convenience factors often examined by courts in

---

[9] The threshold burden is met.  This case could have been filed in the transferee district of the Eastern District of Texas.

this District include: (1) convenience of the witnesses, (2) location of relevant documents and the relative ease of access to sources of proof, (3) convenience of the parties, (4) locus of operative facts, (5) availability of process to compel the attendance of unwilling witnesses, (6) relative means of the parties, (7) forum's familiarity with the governing law, (8) weight accorded a plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).  Here, an analysis of these factors illustrates that Texas is now the more convenient forum for this litigation.

## IV.   ARGUMENT

A current analysis of the convenience factors under Section 1404 points to the Eastern District of Texas as being the most convenient forum for this litigation. First, the current litigation could certainly have been brought in the Eastern District of Texas.  The Eastern District of Texas would have subject matter jurisdiction over the patent claims and personal jurisdiction over IPCO, which has an office in Texas.  Tropos has a national and international presence, with customers all over the United States, and it solicits Texan customers through its website and holds

conferences in Texas.[10]

Second, given the amount of time this case was stayed, and the events that have occurred during the stay, the Eastern District of Texas has become the "more convenient" forum for this litigation.  *See In re Ricoh Corp.*, 870 F.2d at 573. During the four-year stay, much has changed, and the "paramount" factor of judicial economy now favors transfer.  The Texas court has been educated on the technologies at issue in the patents-in-suit and other related patents, and there is a pending case in the Eastern District of Texas involving the patents-in-suit.  Thus, if the case is not transferred, two separate courts would be construing and determining validity of the same patents.  On the other hand, this Court never had the opportunity to become familiar with the patents and technologies at issue. Additionally, the other §1404(a) factors either favor transfer or are neutral.

A.    Trial efficiency and the interests of justice strongly favor transfer

"[C]ourts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice."  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).  Indeed, the interests of judicial economy "may be ***determinative*** to a particular transfer motion, even if the

---

[10] *See e.g.,* http://gridcom.tropos.com/newsletters/May_2011_Newsletter.html (last accessed September 20, 2011)

convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citations omitted) (emphasis added).  In patent cases involving highly technical issues, the appropriate venue is the court most familiar with those technical issues. *Id.*  Courts across the country have recognized that judicial economy is best served in complex patent litigation when the court already familiar with that patent presides over the case.  *See, e.g., Polyform A.G.P. Inc. v. Airlite Plastics Co.*, No. 4:10-CV-43 (CDL), 2010 WL 4068603, at *6 (M.D. Ga. Oct. 15, 2010); *Global Innovation Tech. Holdings, LLC v. Acer America Corp.*, 634 F.Supp.2d 1346, 1348 (S.D. Fla. 2009); *Kelora Sys., LLC v. Target Corp., et al.,* No. 10-cv-683-bbc, slip op. at 5-6 (W.D. Wis. Mar. 23, 2011) (Dkt. 158) (unpublished at this time*); Novartis Vaccines and Diagnostics, Inc. v. Wyeth*, No. 2:08-cv-0067-TJW-CE, 2010 WL 1374806, at *5 (March 31, 2010 E.D. Tex.) (Everingham, J.); *Invitrogen Corp. v. General Electric Co.*, No. 6:08-cv-112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009); *Jackson v. Intel Corp.*, No. 2:08-cv-154, 2009 WL 749305, at *4 (E.D. Tex. Mar. 19, 2009).  Simply put, "judicial economy is served by having the same district court try the cases involving the same patents."  *In re Volkswagen,* 566 F.3d at 1351.   This eliminates the risk of duplicative efforts, preserves that court's familiarity with the technology, and avoids parallel litigation involving the same patents.

Here, the paramount factor of judicial economy necessitate transfer to Texas. Although the current case was filed in this Court with intent of conserving judicial resources by relying on the Court's eventual familiarity with the IPCO patent portfolio, the events transpiring during the four-year stay have altered the calculus for determining judicial economy.

First, during the four-year stay, the Eastern District of Texas has become well versed in the technologies at issue.  In *IPCO v. Oncor*, the parties briefed the claim construction issues related to the '516 Patent.  Additionally, in the *IPCO v. Ingersoll-Rand*, both patents-in-suit are being litigated.   Moreover, there are at least four other cases pending in the Eastern District of Texas that involve similar wireless mesh technologies.  As a result of all this litigation, the Eastern District of Texas has become very familiar with the patents-in-suit and related patents, the specific technologies at issue, and wireless mesh technology generally.  *C.f.,  In re Vistaprint*, 628 F.3d at 1346 (holding that the current district court's prior experience with the patent-in-suit, as well as co-pending litigation, supported a denial of transfer).

Second, this Court never had an opportunity to become familiar with the patents and technology at issue by virtue of any prior IPCO litigations in this Court.  As stated above, during the four-year stay, IPCO and CellNet reached an agreement to dismiss  with prejudice the claims at issue in *IPCO v. CellNet*, [*IPCO*

12

*v. CellNet*, Dkt. 107], and IPCO and Elster reached an agreement to dismiss  with

prejudice the claims at issue in *IPCO v. Elster*.  [*IPCO v. Elster*, Dkt. 88].

Ultimately, neither this Court nor any other Court in this District has conducted a

*Markman* Hearing, issued a claim construction order, or analyzed infringement or

validity of the '515 Patent, the '622 Patent, or any other patents in the IPCO

portfolio for that matter.[11]   Because this Court never had the opportunity to

construe the patents-at-issue, this Court's experience from four years ago does not

support a denial of transfer.  *C.f., In re Verizon Business Network Services Inc.*,

635 F.3d 559, 562 (Fed. Cir. 2011) (finding a district court's construction of the

patent-in-suit "in a case that settled more than five years before the filing of th[e]

lawsuit to be too tenuous a reason to support denial of transfer").

    Under Federal Circuit law, pending litigations involving the patents-in-suit

are more important to the judicial economy calculus than past cases.  *C.f.,  In re*

*Vistaprint*, 628 F.3d at 1346 (co-pending litigation involving the same patent and

underlying technology provided a "substantial justification" for denying transfer);

*In re Verizon,* 635 F.3d at 562 (lack of co-pending litigation even though district

---

[11]  In *IPCO v. Elster*, although the parties had already completed claim construction
briefing for the '516 Patent, the Court never issued a claim construction order.  Given
that this case settled five years ago, it is unlikely the Court has retained any
knowledge of the patents and technologies at issue.  *See, e.g.,  In re Verizon*, 635 F. 3d
at 562.

court had substantial experience with the patent insufficient to support a denial of transfer .  Accordingly, the Eastern District of Texas' investment of time and resources to become familiar with the technology and the patent-in-suit should not be minimized.   Maintaining this case in Georgia would not leverage the time, effort, and expense the Eastern District of Texas has already expended gaining a familiarity with the patents-in-suit—while at the same time risking conflicting claim constructions for the same patent.

Transferring this case to Texas would also not waste party resources.  At this early stage in this litigation, the parties have not even filed their respective infringement and invalidity contentions, so there would be no squandering of party resources.   Hence, there is no reason to believe this Court has familiarity with either Tropos or the technology of the patents-in-suit that would yield judicial efficiencies.  For all of these reasons, the paramount factor of judicial economy strongly favors transfer.

B.    The remaining convenience factors favor transfer or are neutral

1.    *Convenience for the parties and party witnesses*

In a patent infringement suit, "the bulk of the relevant evidence is in the defendant's possession." *In re Genentech,* 566 F.3d, 1338, 1345 (Fed. Cir. 2009). Tropos is not headquartered in this district.  Further, the locations and identity of the relevant party witnesses for Tropos have not yet been disclosed but it is

14

unlikely that any reside in Georgia.  Assuming those witnesses reside near the

Tropos' headquarters in California, on balance Texas is clearly more convenient

than Georgia.   Nonetheless, it remains difficult to know for certain which

witnesses will actually be needed at trial.  *See Aloft Media LLC v. Adobe Sys. Inc.*,

No. 6:07-cv-355, 2008 WL 819956, at *5 (E.D. Tex. Mar. 25, 2008).  Those

witnesses could be deposed in their home state of residence, regardless of where

the suit is tried.

Plaintiff IPCO has offices in both Texas and Georgia.  While its officers

reside in Georgia, Plaintiff will not be inconvenienced by travel to Texas for

litigation purposes.  *See Cellularvision Tech. & Telecommunications, L.P. v.*

*Cellco Partnership*, No. 06-60666-CIV, 2006 WL 2871858, at *3 (S.D. Fla. Sept.

12, 2006) ("[b]ecause Plaintiff chose to file suit in the Southern District of Florida

it is difficult to argue that this forum is inconvenient to [Plaintiff]").  As discussed

above, Plaintiff is already actively engaged in litigation activities in the Eastern

District of Texas.  Thus, on balance, this factor slightly favors transfer or is, at

worst, neutral.

           2.      *Convenience of non-party witnesses and availability of process to*
                       *compel presence of unwilling witnesses*

First, because of the parties' diverse locations, ***no*** venue will have absolute

subpoena power for depositions and trial.  This Court certainly will not.  Second, it

15

is likely that any relevant will be in California, which is much closer to Texas than it is to Georgia.  Third, relevant third party witnesses have not yet been identified. Relevant third party witnesses may include customers or suppliers of Tropos, as well as prior art witnesses, and are likely to have diverse locations across the country.  Even if such witnesses are identified, there is no indication of why it would be difficult to compel their attendance in the Eastern District of Texas.  *See Personal Audio, LLC, v. Apple, Inc.,* No. 9:09-cv-111, 2010 WL 582540, at *4-5 (E.D. Tex. Feb. 11, 2010).  Thus, given the minimal identification of non-party witnesses to date, this factor appears to slightly favor transfer or be neutral.

3.    *Location of relevant documents and the relative ease of access to sources of proof*

This factor relates to the ease with which the parties can transport sources of proof, such as documents, files, and other tangible materials, to trial.  *See Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions*, No. 10-20715-CIV, 2010 WL 3056600, at *5 (S.D. Fla. Aug. 4, 2010).  But "[p]roducing documents and other files for litigation … is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval." *Id.*

Here, there have been no documents produced to date.   Thus, the precise locations of the parties' physical documents has little bearing on this factor.

16

Regardless, Tropos' documents should be in California and not in Georgia, and California is much closer to Texas than it is to Georgia.  However, other relevant documents and things, such as court filings and transcripts related to the other co-pending IPCO actions relating to the patents-in-suit, are located in the Eastern District of Texas (if not available on-line).  Thus, this factor slightly favors transfer.

4.  *The public interest factors*

Courts in this district also consider the public interest as part of the transfer analysis.  *See Merswin v. Williams Companies, Inc.*, No. 1:08-CV-2177-TWT, 2009 WL 249340, at *5 (N.D. Ga. 2009 Jan. 30, 2009).  The public interest is best served by the "easy, expeditious and inexpensive resolution of federal suits." *Perfect Web Techs., Inc. v. Infousa, Inc.* No. 07-80286-CIV, 2007 WL 2757356, at *4 (S.D. Fla. Sept. 20, 2007).  Certainly trying this suit in the same district in which two other IPCO cases have been filed and in front of a Court already well-versed in the technologies at issue would lead to a more expeditious resolution.  Further, the time to trial in the Eastern District of Texas is shorter than that in the Northern District of Georgia.  For patent cases in particular, the time to trial in the Eastern District of Texas is only 2.1 years, compared to 3.1 years in the Northern District of Georgia.   The relevant measure is the "speed with which a case can come to trial" and the Eastern District of Texas provides a quicker venue.  *In re*

17

*Genentech*, 566 F.3d at 1347.

The public interest factors also include the factual connection with the chosen forum.  *Geltech Solutions, Inc. v. Marteal, Ltd.*, No. 09-CV-81027, 2010 WL 1791423, at *7 (S.D. Fla. May 5, 2010).  In a patent infringement case, where the accused systems are sold throughout the country, neither venue will have a particularized local interest based on product sales.  *Aloft Media LLC,* 2008 WL 819956, at *5-7.  Tropos has a national and international presence, and revenue, employees, and business locations around the country.  *See* Tropos Networks, "Press Releases," *at* http://www.tropos.com/news/releases.html (last visited September 20, 2011).  IPCO has a presence in both Texas and Georgia.  Thus, in light of the Tropos widespread activities and IPCO's connections with only Texas and Georgia, there is no compelling reason why Georgia would have a greater localized interest than does Texas.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (when products are sold throughout the United States, then the citizens of the venue chosen by the plaintiff "have no more or less of a meaningful connection to the case than any other venue").

    5.    *Forum's familiarity with the governing law*

Patent infringement cases are governed by federal law and thus both courts are equally capable of applying patent law.  And the Eastern District of Texas already has familiarity with the application of patent law to the particular patents-

in-suit.  Also, as stated earlier, the State Law Claims, which would have involved

two Georgia entities, are no longer part of this litigation.  Thus, this factor favors

transferring this case to the Eastern District of Texas, where it can be resolved

more quickly and efficiently by a court already familiar with the key technical

issues.

### 6.    *Locus of operative facts*

In a patent case, the locus of operative facts is the location where the design,

development, marketing, and manufacture of the accused products occurred.  *See*

*Polyform*, 2010 WL 4068603, at *5.  Here, because Tropos is headquartered in

California and has locations around the country,  neither Georgia nor Texas is the

venue that will be the "locus of operative facts."  Accordingly, this factor is

neutral.

### 7.    *Weight accorded a plaintiff's choice of forum*

Plaintiff's choice of forum "should not be disturbed unless it is 'clearly

outweighed' by other considerations."  *Ins. Co. of N. Am. v. Levin*, No. 10-CV-

60130, 2011 WL 1398473, at *2 (S.D. Fla. Mar. 28, 2011) (quoting *Robinson v.*

*Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996)); *see also Polyform*,

2010 WL 4068603, at *2 (plaintiff's forum choice traditionally afforded

considerable deference).  Although IPCO originally filed in the Northern District

of Georgia, it did so because of the State Law Claims that would inevitably be at

19

issue in the case due to the allegations in the California Action.  However, the State

Law Claims were dismissed and are no longer at issue.  Here, Plaintiff's forum

choice is the Eastern District of Texas, where it is currently litigating the same

patents.  Accordingly, this factor favors transfer.

> 8.    *Relative means of the parties*

This factor is likely neutral, as the relative means of the parties are on

balance.

> C.    <u>The Main Reason for IPCO's Choice of Georgia as a Venue Are No
> Longer Applicable Because The State Law Claims Were Dismissed</u>

One of the main[12] reasons the current litigation was originally filed in

Georgia was because of the State Law Claims that were expected to be at issue in

the case.  Such State Law Claims would have required deposing material witnesses

and reviewing material documents from Scientific-Atlanta and IPCO, the vast

majority of which would have been in Georgia.[13]   Similarly, the Northern District

of California transferred the California Action to this Court because: (1) the

alleged conduct giving rise to the State Law Claims pled in the California Action

---

[12] The other primary reason is that IPCO already had two patent litigations in the
Northern District of Georgia involving the '516 Patent.[12]

[13] Plaintiff IPCO, LLC's Memorandum in Opposition to Defendant's Motion to
Dismiss, Stay, or Transfer [Dkt. 9], at 15.

occurred in Georgia, (2) IPCO had two patent litigations in the Northern District of Georgia involving the '516 Patent, one of which[14] had already been briefed through claim construction, and (3) the relative differences in the dockets during 2006 for the Northern District of California and the Northern District of Georgia favored a transfer to Georgia.

The reasons for IPCO originally filing in Georgia, and the bases for the California Action being transferred to this Court, are no longer applicable. As noted above, (1) the State Law Claims are dismissed, (2) the two IPCO litigations are now closed, and (3) the time to trial in the Eastern District of Texas is shorter than that in the Northern District of Georgia, such time being 2.1 years and 3.1 years, respectively.    Now that the State Law Claims have been dismissed, these facts are no longer relevant to the §1404(a) convenience analysis.  IPCO's patent case against Tropos now belongs in the Eastern District of Texas, where these patent claims can be resolved efficiently and without delay by a Court that has already been educated on the patents-at-issue, the specific technologies covered, and wireless mesh technologies generally.

## V.    CONCLUSION

In light of the foregoing, IPCO respectfully requests that this Court grant

---

[14] *IPCO v. Elster.*

IPCO's motion and transfer this case to the Eastern District of Texas.

Respectfully submitted, this 3rd day of October, 2011.

ROBBINS GELLER RUDMAN
 & DOWD LLP

By: /s/ John C. Herman
      John C. Herman

John C. Herman
Attorney-in-charge
ROBBINS GELLER RUDMAN
 & DOWD LLP
3424 Peachtree Road, NE
Suite 1650
Atlanta, GA 30326
Telephone: (404) 504-6500
Facsimile:   (404) 504-6501

Attorneys for Plaintiff
IPCO, LLC

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1D, the undersigned counsel hereby
certifies that the foregoing brief was prepared using 14-point Times New Roman
font in accordance with L.R. 5.1.

/s/ John C. Herman
   John C. Herman

## CERTIFICATE OF SERVICE

22

I hereby certify that, on October 3, 2011, a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

This 3rd day of October, 2011

/s/ John C. Herman

John C. Herman