```
1                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
2                         ATLANTA DIVISION

3
     IP CO., LLC,                    )
4         Plaintiff,                 )
                                     ) Civil Action
5    -vs-                            ) No. 1:06-CV-585-CC
                                     )
6    TROPOS NETWORKS, INC.,          )
          Defendant.                 )
7

8

9

10                   Transcript of the Proceedings
                 Before the Honorable Clarence Cooper
11                        January 9, 2013
                          Atlanta, Georgia
12

13

14

15   APPEARANCES OF COUNSEL:

16   On behalf of
     the Plaintiff:                    John C. Herman, Esq.
17                                     Jessica M. Kattula, Esq.
                                       Ryan K. Walsh, Esq.
18

19   On behalf of
     the Defendant:                    Bryan Guy Harrison, Esq.
20                                     Bob Steinberg, Esq.
                                       (Appearing Telephonically)
21                                     Lisa K. Nguyen, Esq.
                                       (Appearing Telephonically)
22

23   Amanda Lohnaas, RMR, CRR
     Official Court Reporter
24   United States District Court
     Atlanta, Georgia
25   (404) 215-1546
```

 1                  (Wednesday, January 9, 2013, 9:35 a.m.)
 2              THE COURT:  Thank you, good morning, please be
 3     seated.  Court is now in session.
 4              This is a scheduling conference in the case of IPCO,
 5     LLC versus Tropos Networks, Inc.  Who represents the plaintiff?
 6              MR. HERMAN:  Good morning, Your Honor, John Herman
 7     from Robbins Geller.  With me are my colleagues Brian Walsh and
 8     Jessica Kattula.
 9              THE COURT:  Thank you, Mr. Herman.
10              Who represents the plaintiff?  I mean the defendant.
11              MR. HARRISON:  Defendant, Your Honor, Tropos,
12     correct.  Bryan Harrison from Morris, Manning & Martin.  And I
13     believe with me on the phone are Mr. Bob Steinberg and Ms. Lisa
14     Nguyen, who are calling in through the courtesy of the Court
15     from California for this scheduling conference.
16              THE COURT:  Thank you.  And hopefully they can hear
17     me.  Can they hear me?
18              MR. STEINBERG:  Yes.  This is Bob Steinberg and Lisa
19     Nguyen is also on the line here, Latham & Watkins, representing
20     Tropos.  We are having a little bit of difficulty hearing.  I
21     think it's mainly the location, perhaps, of where the
22     microphone is, it sounds very muffled.
23              THE COURT:  I'm going to speak into the mike and
24     speak louder and I want counsel to approach the podium.
25              This is a scheduling conference, as I indicated.  The

1   Court has reviewed the parties' proposed scheduling order and
2   has compared it to the one prepared by the Court.  However,
3   before the Court signs off on a proposed scheduling order I
4   want to ask counsel to respond to a few questions.
5           Did counsel for the parties consult the patent local
6   rules when making the proposed scheduling order that they
7   submitted?  Speak into the microphone and state your name.
8           MR. HERMAN:  Yes, Your Honor, it's John Herman for
9   the plaintiff.
10          THE COURT:  Mr. Herman.
11          MR. HERMAN:  We did consult the local patent rules in
12  coming up with the scheduling, Your Honor.
13          THE COURT:  Great.  Let me ask you this, and if your
14  counterpart wishes to respond he can respond, have the parties
15  considered requesting that the Court appoint a special master
16  in this case?
17          MR. HERMAN:  We have not, Your Honor, we've not
18  discussed that amongst ourselves.
19          THE COURT:  I know one of the two parties, I think
20  the plaintiff, contemplates filing an order to the effect
21  that -- you all can discuss, you may work this out -- it might
22  not be necessary for either side to file an order requesting
23  bifurcation -- I mean special master, appointment of special
24  master.
25          MR. HERMAN:  Your Honor, may we confer with the

1  defendant's counsel and report back to you in the next two or
2  three days on that issue?
3          THE COURT:  Thank you.  Is that all right with you,
4  Mr. Harrison?
5          MR. STEINBERG:  Your Honor, again Bob Steinberg.  I
6  am so sorry, I am having real difficulty -- it could be my
7  phone, I'm not sure -- hearing the -- I can't really make out
8  what you're saying or counsel.
9          Lisa, are you able to --
10         THE COURT:  I asked --
11         MS. NGUYEN:  I am not.
12         MR. STEINBERG:  Okay.
13         THE COURT:  I asked counsel for both parties two
14 questions.  The first question was did counsel consult the
15 patent local rules when making the proposed scheduling order
16 they submitted.
17         MR. STEINBERG:  Okay.
18         THE COURT:  And the second question I asked was have
19 the parties considered requesting that the Court appoint a
20 special master.  Did you hear that?
21         MR. STEINBERG:  I understand your first question,
22 Your Honor.  We did consult the patent local rules and
23 discussed same with IPCO's counsel.  I did not, unfortunately,
24 understand the second question.  Bryan, maybe you can field
25 that one.

1          MR. HARRISON:  I can certainly field that question.
2     Your Honor had asked whether the parties had considered
3     appointment of a special master in this case.
4          MR. STEINBERG:  Oh, okay.
5          MR. HARRISON:  And we're willing to certainly confer
6     with plaintiff's counsel about that issue and make a
7     determination as to whether we can reach an agreement on it or
8     if one party wants it, one party doesn't.
9          Your Honor, with respect to the first question,
10    though, that you asked in terms of consultation of the local
11    rules, yes, we did consult with the local rules.  And given
12    some of the complexities that this particular case presents,
13    that was the reason for our deviation from the standard period
14    set forth in those patent local rules.  This is not going to be
15    a garden variety, gear-meshing-with-cog-type of patent case.
16    This is going to involve some nuances and some fairly
17    significant complexities and that was the reason why we
18    deviated slightly from the rules.
19         THE COURT:  Thank you.
20         My third question to both parties has to do with the
21    issue of bifurcation and I've asked the parties to meet and see
22    if they could resolve that issue before a motion for
23    bifurcation is filed.  Do you both understand that?
24         MR. HERMAN:  We will certainly meet and confer and
25    report back to you in the next two or three days as well on

1     that issue, Your Honor.
2              THE COURT:  Thank you.  Mr. Harrison, you can remain
3     at the podium.
4              Mr. Herman, let me ask you this.  You represent the
5     plaintiff; is that correct?
6              MR. HERMAN:  Yes, Your Honor.
7              THE COURT:  What are the accused products at issue in
8     this case?
9              MR. HERMAN:  The accused product, the technology at
10    issue is a wireless mesh technology.  The patents that are in
11    the IPCO patent portfolio cover a way of products talking to
12    each other wirelessly.  Tropos Networks has sold a number of
13    wireless mesh networks that we believe the patents read
14    directly on and those are the products that we're focused on in
15    this case.
16             THE COURT:  Okay.  My second question, how big is the
17    market for these products, the approximate annual sales
18    figures?  Can you give me an estimate?
19             MR. HERMAN:  We believe Tropos' sales figures are in
20    excess of $100 million.
21             THE COURT:  $100 million?
22             MR. HERMAN:  Yes.  The overall market is several
23    billion dollars.  Much of the market has taken a license to
24    these portfolio patents so we have over 60 companies that are
25    using the patented technology and have taken a license to do

1   that.
2           THE COURT:  Thank you.  Okay, Mr. Harrison, let me
3   ask you a couple of questions.
4           MR. HARRISON:  Certainly, Your Honor.
5           THE COURT:  Do the parties have a prior business
6   relationship?
7           MR. HARRISON:  Not to my knowledge, Your Honor.  I
8   believe the first time that we heard of IPCO was when the
9   complaint was filed.
10          THE COURT:  Okay, thank you.
11          MR. HERMAN:  Just a point of clarification, Tropos
12  Networks actually sued IPCO in the Northern District of
13  California.
14          MR. HARRISON:  Thank you.
15          THE COURT:  Is that suit still pending?
16          MR. HERMAN:  It was transferred to Your Honor.
17          THE COURT:  Oh, this was the one that was
18  transferred.
19          MR. HERMAN:  Right.
20          THE COURT:  Thank you.  Is there a dispute,
21  Mr. Harrison, about the structure and function of the accused
22  product?
23          MR. HARRISON:  I am certain that there will be, Your
24  Honor.  We're not dealing with a widget here.  We're dealing
25  with a wireless network that has any one of a number of pieces

1   in it and so one of the bases for our request for bifurcation
2   was the fact that each of these networks that we have sold is
3   in effect going to become a mini trial of whether that
4   particular implementation of that particular network is an
5   infringing article and that is what I think is going to be the
6   most difficult aspect of this case and why I was suggesting
7   that we had deviated just slightly from the patent local rules.
8           THE COURT:  I think if the Court were to bifurcate,
9   as you propose, would that unnecessarily prolong discovery?  Or
10  is this absolutely necessary in your opinion?
11          MR. HARRISON:  Your Honor, I think that it is
12  certainly necessary in terms of being able to provide a far
13  more efficient resolution of this case by deciding whether or
14  not the network that Tropos is going to provide actually
15  infringes the patent before we look at each individual network
16  to determine how much of that network is read upon by the
17  patent claims and then how much is attributable in terms of
18  damages, then how much of the total for that network can be
19  attributed to the functionality that is in the patent for
20  purposes of a damages analysis, Your Honor.  That's really
21  where a substantial amount of this case is going to lie in
22  terms of discovery and cost.
23          So what we're suggesting is before the parties have
24  to go through all of that expense and troubling of Tropos'
25  customers to find out exactly how their system is implemented

1    today, since there are inducement claims, as I understand, that
2    we find out whether really we actually infringe these patents
3    first.  Get the claim construction done, look at the
4    infringement issue first before we start going out and
5    troubling all the customers of Tropos.
6              THE COURT:  Mr. Herman, let me hear from you.
7              MR. HERMAN:  Thank you, Your Honor.  Not
8    surprisingly, we have a very different view of this issue.
9              THE COURT:  Okay.
10             MR. HERMAN:  This case was filed in 2006.
11             THE COURT:  Why are you opposed to bifurcation?
12             MR. HERMAN:  Because we think it will unnecessarily
13   prolong the case and increase the expense.  The only --
14             THE COURT:  I'll deal with this later, I just wanted
15   to get a feel initially for where you all are.  I do want you
16   all to confer and try to resolve this; if not, let the motion
17   be brought and we'll move forward from there.  Okay?
18             MR. HERMAN:  Yes, Your Honor, thank you.
19             MR. HARRISON:  Certainly, Your Honor.
20             THE COURT:  Let me ask you one last question,
21   Mr. Harrison -- you've already answered, you said the
22   technology is complex in this case.
23             MR. HARRISON:  Yes, Your Honor.  This is not the
24   wireless network that may be set up in your home.  This is a
25   wireless mesh network which involves different levels,

1   different functionalities.  It's fairly complex and, frankly,
2   the idea of a special master, now that the Court has raised it,
3   is certainly something that I believe we may consider.
4           THE COURT:  Okay.  Let me -- I had my law clerk to
5   provide both parties with a copy of the proposed order that the
6   Court thought might be appropriate given the complexity of this
7   case.  Have you all had a chance to peruse my proposed
8   scheduling order?
9           MR. HERMAN:  Yes, Your Honor, the plaintiff has and
10  we have no objection to the schedule.
11          THE COURT:  Mr. Harrison?
12          MR. HARRISON:  With all due respect, Your Honor, I
13  think we would prefer our schedule that we proposed simply
14  because of particular complexity issues here that are the
15  reason why both parties agreed to deviate somewhat from the
16  standard local patent rules.  If this is what the Court is
17  telling us we have to do, we will figure out a way to get it
18  done.
19          THE COURT:  Okay.  Well, you know, having compared
20  the one which the Court compared to the one you all submitted,
21  the Court is going to opt to the one the Court prepared.  I
22  think we can do it within that time frame.
23          Are there any other questions you might want to ask?
24  Because you've answered the questions that the Court posed and
25  I made a decision that we'll operate pursuant to the Court's

1    scheduling order.  So you're willing to go along with it,

2    Mr. Harrison, you don't strongly object to it?  Is that your

3    position?

4            MR. HARRISON:  That is correct, Your Honor.  I have

5    found it often somewhat foolish to strongly object to something

6    that the Court has already decided that they think is best.

7            THE COURT:  Okay.  With that, then, we are going to

8    conclude this scheduling conference.  The Court will enter an

9    order, a scheduling order proposed by the Court and I'll do

10   that today.  And I want to thank you both for having done what

11   you were supposed to have done on your end and I did take that

12   into consideration.  However, I came up with something, I

13   thought you could do this in a much quicker fashion.  I just

14   `find it repugnant going into 2014 if we can do it in 2013, I

15   think you have ample time.  So I will enter that order today.

16   I want to thank you both.  Good day.

17           MR. HERMAN:  Thank you.

18           MR. HARRISON:  Thank you, Your Honor.

19           THE COURT:  And thank you, Mr. Steinberg and

20   Ms. Nguyen.

21           MR. STEINBERG:  Thank you, Your Honor.  I'm sorry we

22   couldn't really participate here but thank you.

23           THE COURT:  Have a good day.  Court is in recess.

24           (Proceedings concluded at 9:50 a.m.)

25

1          C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6          I hereby certify that the foregoing pages, 1 through

7    11, are a true and correct copy of the proceedings in the case

8    aforesaid.

9          This the 16th day of January, 2013.

10

11

                    /s/ Amanda Lohnaas
12                  _____
                    Amanda Lohnaas, CCR-B-580, RMR, CRR
13                  Official Court Reporter
                    United States District Court
14