IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IP CO., LLC,

                Plaintiff,

      v.

Tropos Networks, Inc.,

                Defendant.

CASE NO. 1:06-CV-0585 CC

**<u>JURY TRIAL DEMANDED</u>**

**DEFENDANT TROPOS NETWORKS, INC.'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

**Page**

I.    TECHNOLOGY BACKGROUND.................................................................2

    A.   The Asserted Patents and The Technology ...........................................2

    B.   Reexaminations of the Asserted Patents ...............................................3

II.   LEGAL STANDARD ........................................................................5

III.  ARGUMENT......................................................................................5

    A.   "server" ('062: all claims; '516: 1-9, 13) / "client" ('062: all claims; '516: 1, 5, 6, 8-11, 13-15, 17, 19).............................................5

        1.   In the context of the Asserted Patents, a "server" and a "client" are each a node in a client-server network. ...................6

        2.   IPCO's construction is confusing and would not be helpful to a jury. ........................................................................8

    B.   "gateway" ('516: 1, 6, 10, 15-19).........................................................8

    C.   "transmission path" ('062: 2, 10; '516: 1, 5, 6, 10, 13-15, 17, 19)..................................................................................................9

    D.   "a client link tree having client link entries" ('062: all claims) / "map of [data packet] transmission paths" ('516: 1, 13-15)..............11

    E.   "changing the transmission . . . so that the path to the gateway is chosen from the group consisting essentially of . . . " ('516: all claims) ........................................................................................14

        1.   IPCO's construction is unintelligible and could only serve to confuse a jury. ..........................................................15

        2.   Tropos' proposed construction simplifies the language of the limitation without changing the scope. ...............................17

    F.   "housekeeping functions" ('062: 6, 10) .............................................18

    G.   '062 Patent Means-Plus-Function Terms............................................20

1. "server means . . . " ('062: 6) ....................................................20

   a. IPCO admitted that the "server means . . . " is a means-plus-function limitation during reexam. .............20

   b. The recited function includes "providing a server process including." ........................................21

   c. The corresponding structure includes a processor running an algorithm. ....................................21

2. "housekeeping step" ('062: 14) .................................................22

3. "means for maintaining a client link tree having client link entries" ('062: 6) ................................................22

H. '516 Patent Means-Plus-Function Terms ...........................................23

1. "means for receiving a data packet from a client of said wireless network" ('516: 6) / "means for transmitting said data packet with said header to a client of said wireless network" ('516: 6) .........................................................23

2. "means for sending said data packet to a proper location on said second network" ('516: 6) / "means for transmitting said data packet with said header to a client of said wireless network" ('516: 6) ..........................................24

3. "means for changing the transmission paths . . . so that the path to the gateway is chosen from the group consisting essentially of . . . " ('516: 6) ....................................25

IV. CONCLUSION .............................................................25

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Sandoz, Inc.*,
 566 F.3d 1282 (Fed. Cir. 2009) ....................................................................... 1

*Apple Inc. v. Motorola, Inc.*,
 1:11-CV-08540, 2012 WL 8123793 (N.D. Ill. Mar. 12, 2012) ................................. 8

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
 521 F.3d 1328 (Fed. Cir. 2008) ............................................................... 21, 23

*Cummins-Allison Corp. v. Glory Ltd.*,
 Case No. 02 C 7008, 2003 WL 355470 (N.D. Ill. Feb. 12, 2003)............................ 22

*Datamize, LLC v. Plumtree Software, Inc.*,
 417 F.3d 1342 (Fed. Cir. 2005) ............................................................... 15, 19

*General American Transportation Corp. v. Cryo-Trans, Inc.*,
 93 F.3d 766 (Fed. Cir. 1996) ......................................................................... 19

*Honeywell Int'l, Inc. v. ITT Indus.*,
 452 F.3d 1312 (Fed. Cir. 2006) ...................................................................... 19

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
 256 F.3d 1323, 1331 (Fed. Cir. 2001) ............................................................. 18

*Masco Corp. v. United States*,
 303 F.3d 1316 (Fed. Cir. 2002) ...................................................................... 22

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
 521 F.3d 1351 (Fed. Cir. 2008) ....................................................................... 5

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) ....................................................................... 5

*PPG Indus. v. Guardian Indus. Corp.*,
 156 F.3d 1351 (Fed. Cir. 1998) ...................................................................... 18

*Renishaw PLC v. Marposs Societa' per Azioni*,
 158 F.3d 1243 (Fed. Cir. 1998) ...................................................................... 19

*Retractable Tech. v. Becton, Dickinson and Co.*,
 653 F.3d 1296 (Fed. Cir. 2011) ................................................................... 5, 19

*Rheox, Inc. v. Entact, Inc.*,
 276 F.3d 1319 (Fed. Cir. 2002) ....................................................................... 5

iii

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) ......................................................................... 21, 22

*Smartphone Technologies LLC v. Research in Motion Corp.*,
   6:10-CV-74-LED-JDL, 2012 WL 489112, (E.D. Tex. Feb. 13, 2012) ...................................... 8

*Terlep v. Brinkmann Corp.*,
   418 F.3d 1379 (Fed. Cir. 2005) ......................................................................... 5

## STATUTES

35 U.S.C. § 112, ¶ 2 .............................................................................................24

35 U.S.C. § 112, ¶ 6 .................................................................................. passim

iv

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| IPCO | IP Co., LLC |
| Tropos | Tropos Networks, Inc. |
| Nguyen Decl. | Declaration of Lisa K. Nguyen in Support of Defendant Tropos Network, Inc's Opening Claim Construction Brief |
| Ex. __ | Exhibit __ to the Nguyen Decl. |
| '062 patent | U.S. Patent No. 6,044,062 (Ex. 1) |
| '516 patent | U.S. Patent No. 6,249,516 (Ex. 2) |
| Asserted Patents | '062 and '516 patents |
| Brownrigg Dep. | Transcript from the June 18, 2013 Deposition of Dr. Edwin Brownrigg (Ex. 3) |
| Belding Decl. | Declaration of Dr. Elizabeth Belding dated June 20, 2013 (Ex. 4) |
| '062 Reexam, Appeal Brief | '062 Reexamination, Appeal Brief dated March 16, 2009 (Ex. 5) |
| '062 Reexam, Reply Brief | '062 Reexamination, Reply Brief dated May 17, 2010 (Ex. 6) |
| McAlexander Decl. | '062 Reexamination, Declaration of Joseph C. McAlexander, III Pursuant to 37 CFR § 1.132 dated May 17, 2010 (Ex. 7) |
| '516 Reexam, OA Resp. | '516 Reexamination, Response to Office Action dated October 29, 2007 (Ex. 8) |
| Brownrigg Decl. | '516 Reexamination, Declaration of Dr. Edwin B. Brownrigg Under 37 C.F.R. § 1.132 dated October 29, 2007 (Ex. 9) |

* Emphasis added throughout unless otherwise indicated.

Plaintiff IPCO, as its name implies, is simply a patent holding company. Rather than commercializing its patents (obtained under questionable circumstances),[1] IPCO's sole business is to sue companies that have already developed their own technologies. But, as evident from its proposed constructions, in order to allege infringement, among other things, IPCO must consistently violate one of the basic doctrines of claim construction—"[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."[2] IPCO's proposals blatantly attempt to recapture the very same subject matter it disclaimed to overcome prior art. And adopting IPCO's proposals would be clear error of law.[3]

In stark contrast, defendant Tropos' proposed constructions are true to the actual language and scope of the claims. In fact, Tropos' proposals adopt the exact language that IPCO used in order to confirm allowance of the Asserted Patents during reexamination. Thus, to follow the well-established legal principles of claim construction, Tropos' proposed constructions should be adopted.

---

[1] Inventor Dr. Edwin Brownrigg filed suit against IPCO in California alleging that IPCO fraudulently induced Dr. Brownrigg to give up his patent rights.

[2] *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1317-1318 (Fed. Cir. 2009).

[3] While IPCO has briefed claim construction for the Asserted Patents at least three other times, IPCO settled these cases before a claim construction order could issue—IPCO cannot risk the issuance of an order that follows the basic legal tenets of claim construction.

# I.   TECHNOLOGY BACKGROUND

## A.   The Asserted Patents and The Technology

U.S. Patent Nos. 6,044,062 and 6,249,516, the patents asserted in this case, share a common specification and claim priority to the application of the '062 patent which was filed on December 6, 1996.[4] The patents disclose a very specific way of optimizing the routing of packets between clients and servers in a wireless network. The clients initiate and select transmission paths. The server then receives that information and maintains a network map (also called a client link tree) that stores the optimal path to the server for each client in the network.[5]

By the end of 1996, wireless networks were well-established. In particular, beginning in the late 1970s, John Jubin and others pioneered the DARPA packet radio network ("PRNet")—"a wireless communication system which allow[ed] digital information to be transmitted in a more robust and efficient manner."[6] Concurrently, Leonard Kleinrock's ground-breaking work with ARPANET, the Internet precursor, continued to evolve, resulting in many alternative communication schemes to route information.[7]

Among other things, the solutions Jubin and Kleinrock developed focused

---

[4] Throughout this brief, references to the specification of the '062 patent will also refer to the corresponding passage in the '516 patent to the extent it applies.

[5] '062 Reexam, Appeal Brief at 26.

[6] '062, 3:13-15; *see also* Ex. 13 (Cited Ref. Jubin).

[7] Ex. 12 (Cited Ref. Kleinrock 1977) at 155.

on the same issues addressed by the Asserted Patents—"problems involved in connectivity and routing table management." '062, 4:24. Devices, or nodes, in a network can communicate through a direct path (1 hop) or indirect path through one or more other nodes (multi-hop). *Id.*, 5:19-22. A data structure, such as a ***table*** or ***map***, typically stores these paths. When connectivity between nodes change (*e.g.*, if a mobile node moves too far away), a path may no longer exist. A network must be able to handle these connectivity changes by implementing routing techniques that choose new optimized paths and update the routing data structure.

**B.    Reexaminations of the Asserted Patents**

The '062 and '516 patents disclose a specific routing technique for choosing new transmission paths and maintaining a routing data structure ("tree" or "map") for those paths. In the system of the Asserted Patents, "a 'node' can either be a client or a server." *Id.*, 10:11-13. The server nodes maintain a "complete tree of the network," *id.*, 22:45-46, which they can "transmit[] to any client that may request it." *Id.*, 9:48-49. "[T]he tree structure 9a is useful for representing and traversing a tree data structure." *Id.*, 16:58-59. In particular, the tree structure allows the system to implement well-known tree sorting algorithms that can identify "a better (i.e. shorter) path to a server." *Id.*, 11:28-29. The patents, thus, disclose a routing technique in which the server chooses the optimized transmission path from the client to the server and maintains these transmission paths in a tree.

3

In 2006, the Asserted Patents were placed into *ex parte* reexam. While certain claims survived, they did not do so unscathed—the scope of the claims was narrowed substantially in order to overcome the prior art (in particular, the prior art references to Jubin and Kleinrock as discussed above). Among other things, IPCO was forced to disclaim four significant technical subject categories to distinguish the prior art. First, IPCO narrowed the system to client-server networks (networks in which a node can only be a server or client) and specifically disclaimed peer-to-peer networks (networks in which a node can be both a server and a client).[8] Second, IPCO required that the paths stored in the tree include the entire route through which the data travels.[9] Third, IPCO required that the data structure of the Asserted Patents store not just any path, but the optimized path.[10] Fourth, IPCO required that the tree store information for each of the clients in the network as opposed to information for only some of the clients in the network.[11] Despite these disclaimers, IPCO defiantly proposes constructions that would encompass the same disclaimers in violation of well-established claim construction principles.

---

[8] *See, e.g.,*'062 Reexam, Appeal Brief at 26 ("Jubin relates to a peer-to-peer network rather than a client-server network.").

[9] *See, e.g.,*'516 Reexam. OA Resp. at 17-18 ("the nodes [of Kleinrock] do not contain complete routing information from a first node to another node that is remote of the first node").

[10] *Id.* at 27 ("Jubin . . . [does not] maintain[] a client link tree or map of the optimized transmission path.").

[11] *Id.* at 29 ("In contrast to Jubin[] . . . , the Brownrigg system . . . maintains a client link tree . . . from each of the clients in the network.").

## II.   LEGAL STANDARD

The ultimate goal of claim construction is "to capture the scope of the actual invention," *Retractable Tech. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011), "elaborating the normally terse claim language [] in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005). Claim construction begins with the intrinsic evidence, which consists of the claim language, the specification, the prosecution history, and the cited prior art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (*en banc*). The specification is the "single best guide to the meaning of a disputed term," *id.* at 1317, but the prosecution history must be examined since "arguments made during prosecution to overcome prior art can lead to narrow claim interpretations*." Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002).

## III.   ARGUMENT[12]

### A.   "server" ('062: all claims; '516: 1-9, 13) / "client" ('062: all claims; '516: 1, 5, 6, 8-11, 13-15, 17, 19)

| **"server"** |
| --- |
| **Tropos:** "In a client-server network, a node that provides a service to a client." |
| **IPCO:** "equipment, program(s), and/or device(s) capable of providing a data, digital, or electronic service to clients" |

[12] As discussed below, in an attempt to escape its disclaimers and leave the claims as broad as possible, Plaintiff argues that the disputed terms do not require construction. But "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

| **"client"** |
|---|
| **Tropos:** "In a client-server network, a node that receives a service from a server." |
| **IPCO:** "equipment, program(s), and/or device(s) capable of communicating with or using a service from at least one server or another client" |

The primary dispute between the parties with respect to the terms "server" and "client" is whether IPCO should be allowed to recapture the scope of the terms that it clearly and unambiguously disclaimed during reexam. It cannot.

### 1.    In the context of the Asserted Patents, a "server" and a "client" are each a node in a client-server network.

"A node which provides resources and services is called a 'server' node and a node which uses the resources and services is called a 'client' node."[13] In a client-server network, each node acts only as a server or a client—a node cannot be both.[14] In a peer-to-peer network, each node acts "as functional equals," '062 Reexam, Appeal Brief at 26 n. 3—a node can act both as a server and client. Thus, "in the client/server network, the processing associated with an application is split between the client and the server whereas, in the peer-to-peer configuration, each computer acts as a server to the other." McAlexander Decl., ¶ 14.

---

[13] Ex. 10 (Cited Ref. U.S. Patent No. 5,548,726) at 1:42-45; *see also* Ex. 11 (IEEE Dictionary) at 1031 (defining "server" as "[t]he software component on one device that provides services for use by clients on the same or another device."), 176 (defining "client" as "the software component on one that uses the services provided by a server on another device").

[14] Belding Decl. ¶¶ 17, 19 ("[I]n the context of the patents, a node cannot be both a client and a server – a node must be one or the other."); Brownrigg Dep., 196:20-22 (rejecting the notion that "[a] server can act as [both] a server or a client in a client-server network").

To overcome the prior art, IPCO unequivocally limited the terms "server" and "client" to nodes that exist in a client-server network rather than the nodes of a peer-to-peer network by arguing that a peer-to-peer network disclosed neither the "server" nor "client" limitations of the claims:

> Jubin fails to disclose or render obvious at least the recited "**server** . . ." and "a plurality of **clients** . . . " at least because Jubin relates to a peer-to-peer network **rather than a client-server network**.

'062 Reexam, Appeal Brief at 26.[15] Tropos' proposed construction, which includes nodes "in a client-server network," properly reflects this disclaimer.[16]

IPCO, on the other hand, blatantly ignores this disclaimer by construing "client" to include the language "using a service from . . . another client." IPCO's constructions of "server" and "client improperly read on any client in the disclaimed peer-to-peer network. As understood by those of ordinary skill in the art, when another client is providing a service, each node (both clients and servers) act as servers.[17] This squarely falls within the definition of a peer-to-peer network, as described by IPCO's own expert, "in the peer-to-peer configuration, each

---

[15] While expressly disclaimed, the specifications also confirm that a "server" of the Asserted Patents cannot exist in a peer-to-peer network. *See* '062, 1:19-20 ("Other local area networks operate on a peer-to-peer basis without the use of servers."); *see also* Brownrigg Dep., 196 ("in a peer-to-peer network, there are zero servers").

[16] Further, inventor Dr. Brownrigg confirms Tropos' proposed construction Brownrigg Dep., 124:6-8 ("my patents relate to software that describes the functionality of client-server networks."); 196:11-12 ("a server is a node, in a client-server network").

[17] Belding Decl., ¶ 17 ("In the context of the patents . . . the server is a node that receives and executes client requests for service.").

computer acts as a server to the other." McAlexander Decl. at 5. Since IPCO disclaimed "peer-to-peer networks" during the reexam, "client" cannot be construed to "us[e] a service from . . . another client." Thus, the phrase "in a client-server network" is necessary in order to avoid confusion with a peer-to-peer network and to memorialize the disclaimer in the construction.

### 2.   IPCO's construction is confusing and would not be helpful to a jury.

Setting aside IPCO's failure to acknowledge its disclaimer, the remainder of IPCO's construction is simply vague and confusing, and has no support in the intrinsic evidence. The phrase "equipment, program(s), and/or device(s)" are never used in the specification in conjunction with the terms "server" or "client" and do not provide any connection to a network. Since IPCO's construction will not help the jury understand the construed terms, it should be rejected.[18]

### B.   "gateway" ('516: 1, 6, 10, 15-19)

| **Tropos:** "A server that facilitates communication between two networks." |
|---|
| **IPCO:** "equipment, program(s), and/or device(s) that facilitates communication between two networks" |

The only dispute between the parties with respect to this term is whether a "gateway" is a "server" (under Tropos' construction) or any assortment of

---

[18] *Smartphone Technologies LLC v. Research in Motion Corp.,* 6:10-CV-74-LED-JDL, 2012 WL 489112, *10 (E.D. Tex. Feb. 13, 2012) (rejecting constructions "to prevent the possibility of juror confusion."); *Apple Inc. v. Motorola, Inc.*, 1:11-CV-08540, 2012 WL 8123793, *1 (N.D. Ill. Mar. 12, 2012) (rejecting claim constructions that "are not in language intelligible to jurors" because "there is no point in giving jurors stuff they won't understand").

"equipment, program, and/or device" (under IPCO's construction). The intrinsic evidence, corroborated by the inventor, is clear—a "gateway" is a server.

The claim language describes the "gateway" as a server. For example, claim 15 requires that the gateway send a "map of transmission paths to any client that requests the map." '516, 26:7-8. Thus, in the client-server architecture, where "a 'node' can either be a client or a server," '516, 10:22-23, the gateway, which performs services for a client such as sending a map, must be a server. Further, the specification states that "[t]he server of the present invention provides a gateway between two networks." '516, 5:50-51. And, each and every time the term "gateway" appears, it is in the context of the server.[19] For avoidance of doubt, inventor Dr. Brownrigg unequivocally testified that "[a] gateway is a server, a function of which is to interface two or more networks." Brownrigg Dep., 32:8-9.[20] Accordingly, a gateway of the '516 patent is a server.

As with the terms "server" and "client," the phrase "equipment, program, and/or device" is just too vague to provide the jury with meaningful information—IPCO's construction is not helpful, and should be rejected.

### C.   "transmission path" ('062: 2, 10; '516: 1, 5, 6, 10, 13-15, 17, 19)

---

[19] *See, e.g.,* '516, 2:19-20 ("centralized server that serves as a gateway"); 7:64-65 ("the server 16 serves as a gateway"); 8:15-16 ("servers, each with their own gateway"); 11:21-22 ("client 7 is now using server 26 as its gateway").
[20] *See also* 82:20-21 ("[t]he server acts as a gateway between one or more clients and the network beyond the server").

| **Tropos:** "The entire path from a client to a server."[21] |
|---|
| **IPCO:** "the route through which a packet travels" |

The parties' dispute whether a "transmission path" must simply be the route through which the packet travels (IPCO's construction) or the ***entire*** route through which the packet travels (Tropos' construction). In view of the reexam, there is no question—a "transmission path" must be the ***entire*** route.

During the '516 reexam, the Examiner rejected all claims of the '516 patent in view of Kleinrock. Among other things, the Examiner found that Kleinrock disclosed a map of "transmission paths"—specifically, a table of routes that contained "one entry per set of destinations for the remote nodes," '516 Patent, OA Resp. at 17. IPCO distinguished Kleinrock by arguing that the "transmission path" is not simply any route information, but the ***"complete"*** or ***"entire"*** route for the node. IPCO argued that because "the nodes [of Kleinrock] do not contain ***complete*** routing information from a first node to another node that is remote of the first node," *id.* at 17-18, Kleinrock does not disclose this limitation.[22]

IPCO submitted the declaration of inventor Dr. Brownrigg to the Patent Office in order to reinforce this disclaimer. Dr. Brownrigg explained that "in the

---

[21] In an effort to compromise, Tropos is willing to agree to the construction "the entire route through which a packet travels."

[22] *See also* '516 Reexam, OA Resp. at 16 ("As noted in connection with the examples, the path or 'link' from a client to a server is 'the entire path description from a given client to a given server.'"); '062, 10:1-3 ("[i]t should be noted that the term 'link' is used to convey . . . the entire path from a client to a server"); '062, 10:6-7 ("a link is the entire path description from a given client to a given server").

Kleinrock article, data is transmitted from one node to another node via a path described in a routing table contained in each node." Brownrigg Decl., ¶ 21. But Dr. Brownrigg distinguished Kleinrock by arguing that the "routing table at a given node contains ***incomplete*** information for transmitting data to more remotely located nodes." *Id.* In other words, Dr. Brownrigg argued that Kleinrock's routing table does not include the ***complete*** or ***entire*** route.

IPCO made similar statements during the '062 reexam to distinguish Jubin. "The Brownrigg patent's client link trees include information about ***all of the clients on the path*** between the transmitting client and the server." '062 Reexam, Appeal Brief at 34. Accordingly, since Tropos' proposed construction properly incorporates IPCO's disclaimer, and IPCO's does not, Tropos' proposed construction should be adopted.

   **D.**    **"a client link tree having client link entries" ('062: all claims) / "map of [data packet] transmission paths" ('516: 1, 13-15)**

| **"a client link tree having client link entries"** |
|---|
| **Tropos:** "A data structure containing the optimized transmission path for each client of the network to the server." |
| **IPCO:** "data structure relating to links among or between clients and/or one or more servers" |
| **"map of [data packet] transmission paths"** |
| **Tropos:** "A data structure containing the optimized transmission path for each client of the network to the server." |
| **IPCO:** "data structure containing a representation of one or more transmission paths" |

The independent claims of the '062 patent recite "a client link tree having client link entries," while independent claims 1 and 15 of the '516 patent recite a "map of [data packet] transmission paths." The parties agree that these terms are data structures, but disagree on three important issues: (1) whether the terms should be construed the same, (2) whether the data structure should include the optimized transmission path or link, and (3) whether the data structure should include information for each of the clients in the network. The reexams of the Asserted Patents resolve these issues with certainty—the "tree" and "map" are each "a data structure containing the optimized transmission path for each client of the network to the server."

During reexam, IPCO used certain terms interchangeably—"tree" and "map"[23] as well "transmission path" and "link"[24]—defining these terms as follows:

> The server, in turn, implements a server process that, among other possible functions, maintains a ***client link tree***, or ***network map*** of the client-to-server ***transmission paths***, including client ***link*** entries corresponding to an ***optimized transmission path for each of the clients of the network to the server***.

'062 Reexam, Appeal Brief at 26.[25] Further, in order to distinguish the prior art, IPCO emphasized two alleged novel aspects of the tree/map: (1) an ***optimized***

---

[23] *See also* Brownrigg Dep., 131:7-11 ("So you refer to network trees or maps. Is a map the same thing as a tree? . . . THE WITNESS: The way they're used here is interchangeable.").

[24] *See also* '062, 4:50-51 ("routing information concerning the path or 'link'"); 4:61-62 ("a 'neighbor' client . . . has its own path ('link') to the server."); 5:18-19 ("maintains a radio transmission path ('link') to the server").

transmission path for (2) *each of the clients of the network*. Once again, IPCO's constructions ignore the disclaimers and instead merely require links or transmission paths to be stored in a data structure—which would improperly cover the routing tables of the prior art that were distinguished during reexam.

IPCO argued that "[t]he Brownrigg system's server process dynamically updates the client link entries corresponding to the transmission paths as conditions change in the network resulting in different *optimized* paths." *Id.* at 34-35. By maintaining a tree/map of these optimized paths, the server could then "send the updated transmission path *for each of the clients* (i.e., the newly optimized transmission path) to the respective clients." *Id.* at 27. IPCO differentiated these aspects of the tree/map, arguing that the prior art Jubin reference does not include "a server that maintains a client link tree or map of the *optimized* transmission paths of *each of the packet radios*." *Id.*

These disclaimers were also confirmed during the '516 reexam in distinguishing the Kleinrock reference. First, IPCO argued that "Kleinrock recognizes that 'smaller (i.e., clustered) routing tables give less precise routing information which then results in longer path lengths for the message traffic.'" '516 Reexam, OA Resp. at 18—arguing Kleinrock does not optimize transmission

---

[25] *See also* 31 ("[I]n the Brownrigg patent's system the server implements a server process that. . . maintains a network map of the client-to-server transmission paths, including client link entries corresponding to an *optimized transmission path for each of the clients of the network to the server*.").

paths. Second, while IPCO recognized that Kleinrock discloses . . . keeping 'at any node, complete routing information about nodes which are close to it," the routing table of Kleinrock included "'lesser information about nodes located further away from it.'" *Id.* at 17. Thus, IPCO argued that Kleinrock did not disclose a map of transmission paths that store the transmission paths ***for each node in the network***. Inventor Dr. Brownrigg confirmed these distinctions in both deposition and during reexam, arguing that, unlike Kleinrock, his patents used servers that maintain "information on the ***optimized*** transmission path for ***every client in the entire network***." Brownrigg Dep., 199:9-13.[26]

Thus, Tropos' proposed construction of these terms should be adopted and IPCO's rejected. Based on these disclaimers, IPCO's construction cannot be correct since it improperly covers the routing tables of both Jubin and Kleinrock which were distinguished during reexam.

E.     **"changing the transmission . . . so that the path to the gateway is chosen from the group consisting essentially of . . . "** ('516: all claims)

**Tropos:** Indefinite[27]; alternatively, "Choosing the transmission path to the gateway by looking at the group that includes at least: (1) the least-hop path, (2) the most-robust path, (3) the least-traffic path, and (4) the fastest path."

---

[26] Brownrigg Decl., ¶¶ 19-24.

[27] As evidenced by IPCO's own construction, "the path through the most robust additional clients" can vary based on the subjective design choices of the engineer implementing the system. Thus, even if this Court "adopted [this] completely subjective construction . . . this would still render the ['516 patent] invalid." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350-51 (Fed. Cir.

**IPCO:** "changing the transmission path" should be construed to mean: "adding, replacing, and/or removing one or more clients in the transmission path"; "the path to the gateway through the most robust additional clients" should be construed to mean: "the path to the gateway through the most reliable clients or through the clients having the greatest ability to maintain communication under adverse conditions, including but not limited to factors such as: signal strength; battery life; link quality; and susceptibility to malfunctions."; "the path to the gateway through the clients with the least amount of traffic" should be construed to mean: "the path to the gateway through the clients having the lowest volume of packets transmitted through the client per unit time"; "path to the gateway through the fastest clients" should be construed to mean: "the path to the gateway through the clients having the highest packet transmission and/or computing speed"

### 1. IPCO's construction is unintelligible and could only serve to confuse a jury.

Each independent claim of the '516 patent recites:

> changing the transmission path from the client to the gateway so that the path to the gateway is chosen from the group consisting essentially of the path to the gateway through the least possible number of additional clients, the path to the gateway through the most robust additional clients, the path to the gateway through the clients with the least amount of traffic, and the path to the gateway through the fastest clients.

Rather than construe the term as a whole, IPCO construes a convoluted series of

subparts of the term, creating a multitude of unnecessary constructions with newly

introduced undefined terms. IPCO's constructions do not serve to clarify. Instead,

the undefined terms they introduce would themselves require construction and

would only confuse a jury. IPCO introduces this new language in an attempt to

bolster the written description's poor support for the claim terms as written, but

2005). Accordingly, Tropos' intends to file a motion for summary judgment of invalidity based on the indefiniteness of this term (and other terms).

this effort to rewrite the patent is improper.

For example, IPCO attempts to rewrite the single phrase "the path to the gateway through the most robust clients" to mean:

> the path to the gateway through the most reliable clients or through the clients having the greatest ability to maintain communication under adverse conditions, including but not limited to factors such as: signal strength; battery life; link quality; and susceptibility to malfunctions

In order to explain what the construed phrase means (because the specification fails to), IPCO's construction is almost four times as long as the construed phrase itself. And, tellingly, while IPCO argues that "robustness" can be measured by such factors as signal strength, battery life, link quality, and susceptibility to malfunctions, none of these factors are discussed in the patent in conjunction with robustness. Even more tellingly, by providing an open-ended list of so-called robustness "factors," IPCO emphasizes that the term "most robust" relies on the subjective opinions of a design engineer. And this is further compounded by IPCO's introduction of the subjective terms "most reliable" and "greatest ability." IPCO's construction is not helpful since jurors will not be able to discern the meaning and scope of these open-ended and subjective phrases. For these reasons, Tropos' concise construction (as explained further below) should be adopted and IPCO's unnecessarily verbose, convoluted construction should be rejected.

16

### 2.    Tropos' proposed construction simplifies the language of the limitation without changing the scope.

The language of the term describes how the digital controller chooses a transmission path by looking at a group of at least four specific paths [C][1]-[4]:

> [A] changing the transmission path from the client to the gateway so that the path to the gateway is chosen [B] from the group consisting essentially of [C][1] the path to the gateway through the least possible number of additional clients, [2] the path to the gateway through the most robust additional clients, [3] the path to the gateway through the clients with the least amount of traffic, and [4] the path to the gateway through the fastest clients.[28]

This term can be understood by simply stepping through each part of the claim language. First, the language of [A] makes clear that the digital controller is choosing the transmission path to the gateway—"changing the transmission path… so that the path… is chosen." Tropos' proposal closely tracks this language.

Next, the language of [B] describes that the digital controller is choosing from a group. Here, the claims of the '516 patent require that the transmission path is chosen "from the group"—*i.e.,* "by looking at the group."[29] The phrase "consisting essentially of," following and modifying the word "group," is a transitional phrase that indicates that the limitation "necessarily includes the listed [components] and is open to unlisted [components] that do not materially affect the basic and novel properties of the invention." *PPG Indus. v. Guardian Indus. Corp.*,

---

[28] For ease of reference, numbers have been inserted into the term.

[29] *See also* '516, 9:20-22 ("the present preferred embodiment looks at only one single factor."); 9:9-10 ("this optimization looks solely to the number of hops").

156 F.3d 1351, 1354 (Fed. Cir. 1998). In other words, it means "including at least." Thus, the language of [B] provides that the transmission path is chosen "by looking at the group that includes at least." Tropos' construction follows this language.

Lastly, the language of [C] defines the make-up of the group from which the path is chosen. The language of [C] enumerates four distinct paths: (1) the least-hop (or shortest) path—"the path to the gateway through the least possible number of additional clients" (2) the most-robust path[30]—"the path to the gateway through the most robust additional clients," (3) the least-traffic path—"the path to the gateway through the clients with the least amount of traffic," and (4) the fastest path—"the path to the gateway through the fastest clients." Again, Tropos' construction closely tracks this language without adding undefined terms.

Thus, Tropos' proposal is true to the language of the claims[31] and provides the concise meaning of this limitation that a jury will be able to understand. IPCO's construction does not, and thus Tropos' construction should be adopted.

### F.   "housekeeping functions" ('062: 6, 10)

**Tropos:** "A process of deleting clients from the client link tree that can be interrupted during heavy traffic."

---

[30]  Even if this Court "adopted [this] completely subjective construction" as proposed by Tropos, "the most-robust path" "would still render the ['516 patent] invalid" under Federal Circuit law. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350-51 (Fed. Cir. 2005).

[31]  *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves.")

| **IPCO:** "functions/steps designed to keep the network in good working order" |
| --- |

IPCO's construction is not only divorced from the specification, but also introduces the word "good," a subjective element that could render the term indefinite.[32] In contrast, Tropos' proposed construction properly "tether[s] the claims to what the specifications indicate the inventor actually invented." *Retractable Techs.*, 653 F.3d at 1304-05 (Fed. Cir. 2011), and should be adopted.

The term "housekeeping" has multiple meanings to one of ordinary skill in the art and therefore lacks a readily understood meaning.[33] Given these multiple meanings, it is necessary to look to the patent disclosure to discern the appropriate construction.[34] The housekeeping function 80 of Figure 4 is part of the "server process of the ***present invention*** operating on the server of FIG. 3." '062, 6:37-38. As such, the housekeeping function 80 of Figure 4 is not merely a preferred embodiment of the '062 patent, but part of ***the*** "present invention."[35]

---

[32] *Datamize*, 417 F.3d at 1350-51 (rejecting subjective construction that would render claim indefinite).

[33] *See, e.g.,* Brownrigg Dep., 141:12-14 (agreeing that "there are multiple definitions of housekeeping"); Belding Decl., ¶ 22 (stating that "housekeeping" "may have a variety of meanings").

[34] *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[W]here there are several common meanings for a claim term, the patent disclosure serves to point . . . toward the proper meaning.").

[35] *See Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) ("the written description refers to the fuel filter as 'this invention' or 'the present invention' . . . we conclude that the patentee has limited the scope of the '879 patent claims to a fuel filter"); *see also General American Transportation Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (limiting the construction of a

The '062 patent illustrates the housekeeping process in Figure 11, and explains that "since the housekeeping function 80 is of generally less importance than the other functions of process 70, it is possible that the housekeeping function will be interrupted." '062, 17:34-40. Accordingly, Figure 11 establishes a process to "delete client from tree and table" that can be interrupted by "heavy traffic." '062, Fig. 11. The Court should adopt Tropos' proposed construction, which aligns with the only description of the "housekeeping function" in the specification.

### G.     '062 Patent Means-Plus-Function Terms

#### 1.     "server means . . . " ('062: 6)

| |
|---|
| **Tropos:** <u>Function:</u> providing a server process including receiving data packets via a server wireless communication means, sending data packets via said wireless communication means, communicating with a network, and performing housekeeping functions <br> <u>Structure:</u> radio modem 62 and microprocessor 42 implementing the algorithms in Figs. 4 and 11 as described at 12:43-16:44, 17:6-18:5 |
| **IPCO:** <u>Function:</u> receiving data packets via a server wireless communication means, sending data packets via said wireless communication means, communicating with a network, and performing housekeeping functions <br> <u>Structure:</u> a radio modem, a router or bridge, and one or more processors, such as a microprocessor. |

##### a.     IPCO admitted that the "server means . . . " is a means-plus-function limitation during reexam.

The parties disagree as to whether the "server means . . . " limitation is subject to § 112, ¶ 6. IPCO's position is puzzling given that IPCO argued the

_____

claim term to the preferred embodiment when "it is the only one described").

contrary during the '062 reexam.[36] Regardless, both parties agree that the function includes performing housekeeping functions. The claims fail to recite any structure to perform that portion of the function and is thus governed by § 112, ¶ 6.[37]

### b.    The recited function includes "providing a server process including."

While Tropos identifies the entire claim language recited after "means," '062, 24:21-25, IPCO inexplicably ignores and reads out the language of the claim "providing a server process including." Tropos is correct—"providing a server process" is important functional language that cannot be ignored, and "including" modifies the meaning of the function so as to make it inclusive of other elements beyond those explicitly listed. Neither phrase should be ignored.

### c.    The corresponding structure includes a processor running an algorithm.

When the specification discloses a computer-implemented function, as here, the corresponding structure must include not only hardware, but also a specific algorithm to perform the recited function.[38] The algorithms in Figures 4 and 11—

---

[36] *See, e.g.,* '062 Reexam, Appeal Brief at 14 ("[S]erver means . . . [" is a] means-plus-function recitation."); '062 Reexam, Reply Brief at 15 ("[S]erver means . . . [" is a] means-plus-function recitation.").

[37] *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997) (in order to escape § 112, ¶ 6 the claims must "explicitly recite[] the structure, material, or acts needed to perform [the recited] functions").

[38] "Merely stating that a standard microprocessor is the structure without more is not sufficient." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331 (Fed. Cir. 2008). "[T]he corresponding structure for a § 112 ¶ 6 claim

identified in Tropos' construction—are clearly linked to the housekeeping function, '062, 13:21-25, 17:34-61, and must be included in the structure.

### 2.      "housekeeping step" ('062: 14)

| |
|---|
| **Tropos:** <u>Function:</u> housekeeping <br> <u>Structure:</u> algorithm of Fig. 11 as described in 13:9-26, 17:34-18:5, Figs. 3, 4, 11 |
| **IPCO:** "functions/steps designed to keep the network in good working order" |

Properly construed, the "housekeeping step" is a step-plus-function limitation. The "housekeeping step" fails to recite sufficient acts to escape § 112, ¶ 6. *Sage Prods.,* 126 F.3d at 1427-28. In fact, the limitation contains "nothing that can be construed as an act."[39] The recited function is "housekeeping," and as discussed in Section III.G.1.c *supra*, the "housekeeping" function is clearly linked in the specification to the algorithms in Figures 4 and 11. '062, 13:21-25, 17:34-61.

### 3.      "means for maintaining a client link tree having client link entries" ('062: 6)

| |
|---|
| **Tropos:** <u>Structure:</u> microprocessor 42 implementing the algorithms in Figs. 6-9c as described at 12:43-49, 15:5-18:5, Figs. 3, 6-9c |
| **IPCO:** <u>Structure:</u> a digital controller configured with logic for performing the recited function, which may include logic for storing a client link tree in memory, and its equivalents |

---

for a computer-implemented function is the algorithm disclosed in the specification." *Id.* at 1333.

[39] *Masco Corp. v. United States*, 303 F.3d 1316, 1327 (Fed. Cir. 2002). The term "housekeeping" is used to refer to "what each element ultimately accomplishes, and not to how each function is accomplished." Similar to *Cummins-Allison Corp. v. Glory Ltd.*, Case No. 02 C 7008, 2003 WL 355470, at *14-15 (N.D. Ill. Feb. 12, 2003), where the court held that "automatically denominating" is subject to § 112 ¶ 6 because it discloses a function without disclosing the acts necessary to perform it, the patentee here has used the term "step" and has set forth the claim functions, but has failed to disclose the acts necessary to perform them. *Id.* at *14-15.

The only dispute between the parties appears to be whether the corresponding structure must include the specific logic or algorithm disclosed in the specification that implements the recited function. The case law is clear—the algorithm (described in Figures 6a-9c[40]) must be included.[41]

### H.    ’516 Patent Means-Plus-Function Terms

With respect to the following terms in claim 6 of the ’516 patent, the parties agree that the terms are governed by § 112, ¶ 6 and on the recited functions. The parties' only dispute is whether algorithm must be included in the corresponding structure.[42] It must under the Federal Circuit *Aristocrat* line of cases.

> **1.     "means for receiving a data packet from a client of said wireless network" (’516: 6) / "means for transmitting said data packet with said header to a client of said wireless network" (’516: 6)**

---

[40] Figure 6 describes the overall process of maintaining the tree, including adding and deleting clients to and from the tree. Belding Decl., ¶ 29; ’062, 14:36-64. Figures 6a-7b describe the process of adding clients to the tree. Belding Decl., ¶ 29; ’062, 15:5-16:12. Figures 8-8c describe the process of delete clients from the tree. Belding Decl., ¶ 29; ’062, 16:13-25. Figures 9a-9c describe maintaining the tree for communication with the network. Belding Decl., ¶ 29; ’062, 16:36-17:5.

[41] "[A] computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm." *Aristocrat Techs.*, 521 F.3d at 1333 (citations omitted).

[42] *Aristocrat*, 521 F.3d at 1333-36; *WMS Gaming*, 184 F.3d at 1349. Failure of the specification to identify such algorithm, renders the claim indefinite. *Aristocrat*, 521 F.3d at 1337-38 ("[T]he patent does not disclose the required algorithm or algorithms, and a person of ordinary skill in the art would not recognize the patent as disclosing any algorithm at all. Accordingly, the means-plus-function limitations of claim 1 lacked sufficient disclosure of structure under 35 U.S.C. § 112 ¶ 6 and were therefore indefinite under 35 U.S.C. § 112 ¶ 2.").

| **"means for receiving a data packet from a client of said wireless network"** |
|---|
| **Tropos:** <u>Structure:</u> radio modem 62 and microprocessor 42 implementing the algorithms in Figs. 5, 5a-c as described at 13:27-14:64, Figs. 3, 5, 5a-c |
| **IPCO:** <u>Structure:</u> a radio modem and its equivalents |
| **"means for receiving a data packet from said second network"** |
| **Tropos:** <u>Structure:</u> radio modem 62 and microprocessor 42 implementing the algorithms in Figs. 5, 5a-c as described at 13:27-14:64, Figs. 3, 5, 5a-c |
| **IPCO:** <u>Structure</u>: a radio modem and its equivalents |

The recited function is not simply "receiving"—the function specifically recites receiving a data packet from a wireless or second network. '516, 24:13-14, 24:18-19. In order to do so, the function requires a microprocessor implementing an algorithm that can identify the source and nature of the data packet, *i.e.*, the algorithms described in Figures 5-5c. Belding Decl., ¶¶ 30, 33; '516, 13:27-14:64.

> **2.**   **"means for sending said data packet to a proper location on said second network" ('516: 6) / "means for transmitting said data packet with said header to a client of said wireless network" ('516: 6)**

| **"means for sending said data packet to a proper location on said second network"** |
|---|
| **Tropos:** <u>Structure:</u> Indefinite |
| **IPCO:** <u>Structure:</u> a network interface[43] and a microprocessor configured to send a data packet and its equivalents |
| **"means for transmitting said data packet with said header to a client of said wireless network"** |
| **Tropos:** <u>Structure:</u> Indefinite |
| **IPCO:** <u>Structure:</u> a radio modem and its equivalents |

The recited function is not simply "sending"—it recites sending a packet to a proper location and transmitting a packet with said header. '516, 24:16-17, 24:20-

---

[43] IPCO's corresponding structure of the "means for sending . . ." cannot be correct—the structure identified is for "communicating with the network" not "sending data packets."

22. No such algorithms are disclosed in the patent, therefore rendering these limitations indefinite for failure to disclose algorithm.[44]

> **3.** **"means for changing the transmission paths . . . so that the path to the gateway is chosen from the group consisting essentially of . . . " ('516: 6)**

| |
|---|
| **Tropos:** <u>Structure:</u> Indefinite; alternatively, microprocessor 42 implementing the algorithms described at 8:66-12:51 and Figs. 1a-1b, 2a-2o |
| **IPCO:** <u>Structure</u>: a radio modem and a processor, such as a microprocessor configured with logic to change the transmission paths and its equivalents |

Among other reasons, this term is indefinite for failure to disclose sufficient structure to identify the most-robust, least-traffic, and fastest paths.[45] The '516 patent, however, does describe an algorithm to identify the least-hop path.[46] To the extent the terms other than least-hop are definite (and they are not), the corresponding structure must include a microprocessor implementing the algorithm at '516, 8:66-12:51, Figs. 1a-1b, 2a-2o.

## IV.   CONCLUSION

For the foregoing reasons, Tropos' constructions should be adopted.

---

[44] While the radio modem is described for "sending," there is simply no structure described to send the packet to a proper location or attach a header. Belding Decl., ¶¶ 32, 34. As inventor Dr. Brownrigg recognized, there are specific algorithms that must be followed in order to perform these functions. Brownrigg Dep., 126:18-130:16, 206:8-15. Accordingly, Tropos intends to file a motion for summary judgment of invalidity based on the indefiniteness of these terms (and other terms).

[45] Tropos intends to file a motion for summary judgment of invalidity based on the indefiniteness of this term (and other terms).

[46] '516, 8:66-12:51, Figs. 1a-1b, 2a-2o; Belding Decl., ¶ 36.

Dated: July 1, 2013                    Respectfully submitted,


                                       */s/ Bryan G. Harrison*
                                       Bob Steinberg
                                       LATHAM & WATKINS LLP
                                       355 South Grand Avenue
                                       Los Angeles, CA 90071
                                       Telephone: (213) 891-8989
                                       bob.steinberg@lw.com

                                       Richard G. Frenkel
                                       Lisa K. Nguyen
                                       LATHAM & WATKINS LLP
                                       140 Scott Drive
                                       Menlo Park, CA 94025
                                       Telephone: (650) 470-4848
                                       rick.frenkel@lw.com
                                       lisa.nguyen@lw.com

                                       Bryan G. Harrison
                                       Morris, Manning & Martin, LLP
                                       1600 Atlanta Financial Center
                                       3343 Peachtree Road, N.E.
                                       Atlanta, Georgia 30326
                                       Telephone: (404) 233-7000
                                       Fax: (404) 365-9532

                                       *Attorneys for Defendant*
                                       *Tropos Networks, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Local Rule 7.1D, the undersigned counsel hereby

certifies that the foregoing brief was prepared using 14-point Times New Roman

font in accordance with L.R. 5.1.

<u>/s/ Bryan G. Harrison</u>
Bryan G. Harrison
Georgia Bar No. 331750

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC, | CASE NO. 1:06-CV-0585 CC |
| Plaintiff, | |
| v. | |
| Tropos Networks, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 1st day of July 2013.

/s/ Bryan G. Harrison
Bryan G. Harrison
Georgia Bar No. 331750

28