IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC, | CASE NO. 1:06-CV-0585 CC |
| Plaintiff, | |
| v. | |
| Tropos Networks, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT TROPOS NETWORKS, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.   Disputed Terms................................................................................2

    A.   "server" / "client" ...................................................................2

        1.   IPCO narrowed the terms "server" and "client" to a "client-server network" during the reexam of the patents. .........3

        2.   IPCO's construction of "client" is unsupported by any evidence (intrinsic or extrinsic). .................................4

    B.   "gateway" .................................................................................5

    C.   "transmission path" ..................................................................7

    D.   "client link tree having client link entries" / "map of [data packet] transmission paths"................................................9

    E.   "housekeeping" .......................................................................13

        1.   "housekeeping functions" .......................................13

        2.   "housekeeping step"................................................17

    F.   "changing the transmission path . . . so that the path to the gateway is chosen from the group consisting essentially of . . ." ('062: all claims) ................................................18

        1.   IPCO attempts to read out the word "chosen" from the claim language. ...................................................18

        2.   IPCO's proposed construction is unintelligible and unsupported...........................................................20

    G.   '062 Patent Means-Plus-Function Terms..........................................22

        1.   "server means . . ." ('062: 6)...................................22

i

a. IPCO is estopped from asserting that the "server means . . ." is not means-plus-function. ........................22

b. The recited function includes "providing a server process including." .......................................23

c. The corresponding structure includes a processor running an algorithm. ....................................23

2. "means for maintaining a client link tree having client link tree entries" ('062: 6)...........................................24

H. '516 Patent Means-Plus-Function Terms.............................24

1. "means for receiving a data packet from a client of said wireless network" ('516: 6) / "means for receiving a data packet from said second network" ('516: 6)............................24

2. "means for sending said data packet to a proper location on said second network" ('516: 6) / "means for transmitting said data packet with said header to a client of said wireless network" ('516: 6)..........................................25

3. "means for changing the transmission paths . . . so that the path to the gateway is chosen from the group consisting essentially of . . ." ('516: 6) .....................................25

II. CONCLUSION..............................................................25

## TABLE OF AUTHORITIES

### CASES

*CAE Screenplates, Inc. v. Heinrich Fiedler GmBH & Co. KG*,
224 F.3d 1308 (Fed. Cir. 2000)..................................................................7

*Chef America, Inc. v. Lamb-Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004)................................................................19

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
418 F.3d at 1225 (Fed. Cir. 2005)..............................................................3

*Ecolab, Inc. v. FMC Corp.*,
569 F.3d 1335 (Fed. Cir. 2009)................................................................20

*General American Transportation Corp. v. Cryo-Trans, Inc.*,
93 F.3d 766 (Fed. Cir. 1996)....................................................................16

*Golight, Inv. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004)................................................................25

*Halliburton Energy Services, Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008)................................................................14

*MarcTec LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012)....................................................................2

*Masco Corp. v. United States*,
303 F.3d 1316 (Fed. Cir. 2002)................................................................17

*Nystrom v. Trex Co., Inc.*,
424 F.3d 1136 (Fed. Cir. 2005)..................................................................7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)...................................................... 1, 2, 23

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998)...................................................... 15, 17

iii

*Seal–Flex*, *Inc. v. Athletic Track and Court Const.*,
   172 F.3d 836 (Fed. Cir. 1999)...............................................................18

*Southwall Tech., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995).................................................................1

*Watts v. XL Systems*,
   232 F.3d 877 (Fed. Cir. 2000).............................................................17

*WMS Gaming, Inc. v. Int'l Game Technology*,
   184 F.3d 1339 (Fed. Cir. 1999)...........................................................24

## STATUTES

35 U.S.C. § 112, ¶ 2 ...............................................................................26

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| IPCO | IP Co., LLC |
| Tropos | Tropos Networks, Inc. |
| Supp. Nguyen Decl. | Supplemental Declaration of Lisa K. Nguyen in Support of Defendant Tropos Network, Inc's Responsive Claim Construction Brief. |
| Ex. __ | Exhibit __ to the Supp. Nguyen Decl. |
| '062 patent | U.S. Patent No. 6,044,062 (Ex. 1) |
| '516 patent | U.S. Patent No. 6,249,516 (Ex. 2) |
| Asserted Patents | '062 and '516 patents |
| PBr. | Plaintiff Intus IQ's Opening *Markman* Brief In Support Of Its Proposed Claim Constructions (Dkt. 154) |
| DBr. | Defendant Tropos Network, Inc's Opening Claim Construction Brief (Dkt. 155) |
| JCCS | Joint Claim Construction and Prehearing Statement (Dkt. 151) |
| Brownrigg Dep. | Excerpts from the Transcript from the June 18, 2013 Deposition of Dr. Edwin Brownrigg (Ex. 3) |
| Belding Decl. | Declaration of Dr. Elizabeth Belding dated June 20, 2013 (Dkt. 155-5) |
| '062 Reexam, Appeal Brief | '062 Reexamination, Appeal Brief dated March 16, 2009 (Dkt. 155-06) |
| '062 Reexam, Reply Brief | '062 Reexamination, Reply Brief dated May 17, 2010 (Dkt. 155-07) |

'516 Reexam, OA Resp.          '516 Reexamination, Response to Office Action
                              dated October 29, 2007 (Dkt. 155-9)


* Emphasis added throughout unless otherwise indicated.

IPCO either misunderstands the law or deliberately asserts objectively baseless arguments. Regardless, IPCO's opening brief[1] confirms that its constructions blatantly ignore the fundamental principle that "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).[2] In particular, despite its numerous disclaimers made during prosecution and reexamination,[3] IPCO cites to the file history of the patents only once throughout its entire brief. The absence of the file history in IPCO's brief is not surprising—such citation would directly conflict with IPCO's proposed constructions which cover the very subject matter that IPCO specifically disclaimed to overcome the prior art.

---

[1] IPCO's assertion that it attempted to "streamline" the claim construction process is surprising given that IPCO refused to participate in claim construction disclosures. While Tropos identified 20 claim terms for construction (IPCO misleadingly states that Tropos identified more than 50 terms), IPCO refused to identify any terms. Similarly, while Tropos provided IPCO with its LPR 6.2 disclosures, IPCO failed to identify any extrinsic evidence until the parties submitted their Joint Claim Construction and Prehearing Statement. And when Tropos tried to establish a schedule for claim construction expert discovery, IPCO failed to respond. Any prejudice suffered by IPCO is self-inflicted by its refusal to engage in these claim construction disclosures.

[2] *See also Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'").

[3] A summary of IPCO's disclaimer is included in Tropos' Technology Tutorial, which is attached as Ex. 1.

1

IPCO instead relies on a "plain meaning" approach, proposing constructions which it purports to be the "well-known meanings" of the terms. Setting aside the fact that IPCO's construction are often unsupported by evidence (intrinsic or extrinsic), the Federal Circuit has specifically admonished that "[w]e cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of . . . the prosecution history." *Phillips,* 415 F.3d at 1313. Thus, IPCO's "plain meaning" approach—which wholly ignores the file history—is improper as a matter of law.[4] IPCO must be held to its disclaimers; IPCO's constructions, which fail to reflect those disclaimers, must be rejected.

## I.    DISPUTED TERMS

### A.    "server" / "client"

IPCO cannot reclaim subject matter it specifically disclaimed to overcome prior art. During the '062 reexam, IPCO narrowed the terms "server" and "client" to nodes in a "client-server network" to avoid the Jubin peer-to-peer network:

> [T]he rejection statement's assertions identify fundamental differences between the Brownrigg patent's client-server wireless network system and Jubin's peer-to-peer network.

---

[4] And in this case, such an approach may even be sanctionable. *MarcTec LLC v. Johnson & Johnson*, 664 F.3d 907, 920 (Fed. Cir. 2012) (affirming district court's finding of litigation misconduct where the plaintiff "ignored language in the specification and statements made during prosecution that directly contradicted the plain meaning arguments it advanced.")

2

'062 Reexam, Appeal Brief at 31; *see also* DBr. at 3-4, 6-8. IPCO's construction of "server" and "client" encompasses the nodes in a peer-to-peer network, the very same subject matter it disclaimed. IPCO's construction should thus be rejected.

> **1.    IPCO narrowed the terms "server" and "client" to a "client-server network" during the reexam of the patents.**

While IPCO utterly fails to acknowledge the disclaimer it made during reexam, Tropos' constructions of "server" and "client" properly reflect this disclaimer by including the exact language that IPCO used to overcome the prior art—in "a client-server network." '062 Reexam, Appeal Brief at 26. IPCO argues that Tropos "attempts to narrow the claim by inserting the limitation 'in a client-server network' in plain violation of Federal Circuit precedent" citing to *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d at 1225 (Fed. Cir. 2005). But IPCO clearly misstates the law. *CollegeNet* specifically acknowledged that "an applicant may disclaim claim scope during prosecution." *Id.* at 1231. Thus, Tropos' constructions, which holds IPCO accountable to its disclaimers, are not only consistent with Federal Circuit precedent but well-supported by the law. Indeed, it is IPCO's constructions, which attempts to recapture the disclaimed scope of the claims, that violate Federal Circuit law.

IPCO further argues that "there is no requirement that those devices be contained in a 'client-server' network," emphasizing that "certain claims do not

even *claim* a 'network.'" PBr. at 6. First, while certain claims may not claim a network, without a doubt, all the claims recite a network,[5] and further recite a "server" and "clients" located within that network.[6] Second, throughout its briefing (present and prior), IPCO made clear that the Asserted Patents are directed towards networks, or devices within a network. As IPCO admits, "[t]he Patents-in-Suit generally concern communications within a wireless network." PBr. at 2. Similarly, IPCO has further stated "[t]he independent claims of the '516 Patent are directed toward the 'gateway' or 'server' *of the above described network*." Ex. 2 (Sensus Br.) at 4. IPCO's own statements therefore support Tropos' constructions.

### 2. IPCO's construction of "client" is unsupported by any evidence (intrinsic or extrinsic).

IPCO provides no support for the language "using a service from . . . another client" in its construction of "client." This is not the plain and ordinary meaning of the term "client" and there is simply no evidence that IPCO can point to that supports this construction. The only evidence to which IPCO cites are two

---

[5] '062, claims 2, 6, 10, 14 (claiming "wireless network," or "method for providing wireless network communication"); '516, claims 1, 6, 10, 15 (claiming "server providing a gateway between two networks," "method providing gateway between a wireless network and a second network," or "gateway between at least two networks").

[6] '062, claims 2, 6, 10, 14 (reciting "wireless networks" or "method for providing wireless network communication" comprising "server" and "clients"); '516, claims 1, 6, 10, 15 (reciting "clients of said first network" and "transmission path from the client to the gateway").

passages from the specification: '516, 4:52-56, 6:8-12. The first passage only recognizes that clients are "capable of communicating . . . with each other." '516, 4:52-56. It does not state that the clients can provide a service to one another. The second passage again simply states that "[a] network client" is "capable of communicating with . . . at least one additional client." '516, 6:8-12. There is no discussion of providing a service from one client to another client. Only the server provides services to clients.

### B.   "gateway"

The only dispute between the parties is whether a gateway is a server (as Tropos' proposes) or any combination of "equipment, program(s), **and/or** device(s)" (as IPCO proposes). While IPCO claims its construction "is consistent with the claim language, the specification, and the testimony of the inventor himself," a plain review of the cited evidence shows that it is not. To the contrary, both the intrinsic and extrinsic evidence supports Tropos' construction.

First, while IPCO relies on Dr. Brownrigg's testimony,[7] IPCO conveniently ignores Dr. Brownrigg's statement that "[a] gateway **is a server**, a function of

---

[7] IPCO cites to Dr. Brownrigg's testimony that states that "[a] gateway could be hardware or software." IPCO Op. at 8 n.5. Notably, this testimony never uses the terms "equipment," "program," or "device." Brownrigg Dep., 189:22-23.

which is to interface two or more networks." Brownrigg Dep., 32:8-9.[8] The

inventor testimony thus supports Tropos' construction, not IPCO's construction.

Second, the specification is clear that a gateway must be a server node.[9] As

discussed in Tropos' opening claim construction brief, each and every time a

gateway is discussed in the specification, it is in the context of a server.[10] DBr. at

8-9. The specification thus supports Tropos' construction,[11] not IPCO's

construction.

Third, Tropos' construction is consistent with the surrounding claim

language. Under Tropos' construction, a "gateway" is a particular type of server,[12]

---

[8] *See also* 82:15-21 ("Q. . . . The server in the '516 patent, what does that do? . . . THE WITNESS: The server acts as a gateway between one or more clients and the network beyond the server."); 48:4-5 ("The '516 patent deals with the functionality of the server.").

[9] In particular, a "server [that] serves as a gateway . . . performs a translation service between the first network and the second network." '516, 7:64-66.

[10] IPCO incorrectly states that the passage at 17:27-30 discloses "a combination of a server and router acting as a gateway." Rather, the passage states "[t]he combination of the server and the router or the link performs a 'gateway' function." Thus, the specification does not describe the combination as a gateway, but merely states that this combination can emulate a gateway by performing a "gateway" function.

[11] *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1143-45 (Fed. Cir. 2005) (construing the term "board" to cover only wooden boards because that was the context in which the term was used throughout the specification).

[12] IPCO misleadingly argues that Tropos' "attempts to 'equate'" the terms "server" and "gateway." Tropos plainly does not. Under Tropos' construction a "gateway" is a "server," but a "server" is not necessarily a "gateway." A server does not need to serve as the connection between to networks. Tropos thus provides distinct,

6

specifically, "a server that facilitates communication between two networks." Accordingly, claim 1 which recites "a server providing a gateway" can be read as "a server providing [specifically] a server *that facilitates communication between two networks*." The claim language thus supports Tropos' construction, not IPCO's construction.[13]

The evidence overwhelming supports Tropos' construction that the gateway is a server. In sharp contrast, IPCO does not (and cannot) point to a single piece of evidence that uses the terms "equipment," "program," or "device" to support its construction. Tropos' construction should therefore be adopted.

## C.   "transmission path"

As discussed in Tropos' opening brief, in an effort to narrow the dispute between the parties, Tropos is willing to adopt Plaintiff's construction with one modification—under Tropos' construction, the "transmission path" is "the *entire*

---

though related, constructions for each of these terms. IPCO's citation to *CAE Screenplates, Inc. v. Heinrich Fiedler GmBH & Co. KG*, 224 F.3d 1308 (Fed. Cir. 2000) (finding distinct claim terms are presumed to have different meanings) is therefore inapposite.

[13] IPCO asserts that Tropos' proposed construction conflicts with the surrounding claim language. But IPCO's logic is flawed, emphasizing the wrong aspects of the construction. In particular, IPCO's own construction would be "nonsensical" under its own logic since claim 1 would read: "a server providing equipment, program(s), and/or device(s) that facilitates communication <u>between two networks between two networks</u>, where at least one of the two networks is a wireless network."

route through which the packet travels."[14] DBr. at 10. Again, Tropos' proposed construction properly incorporates IPCO's disclaimer made during reexamination, and IPCO's proposed construction does not. Thus, IPCO's construction should be rejected as an improper attempt to recapture subject matter specifically disclaimed.

IPCO clearly and unambiguously narrowed the scope of "transmission path" to include the "entire" or "complete" route in order to overcome the Jubin reference during the '062 reexam and the Kleinrock reference during the '516 reexam. Jubin disclosed a data structure that included the route through which the packet travels.[15] IPCO distinguished the '062 patent from the Jubin reference by arguing "[t]he Brownrigg patent's client link trees include information about *all of the clients on the path between the transmitting client and the server*." '062 Reexam, Appeal Brief at 34.[16]

Similarly, during the '516 reexam, IPCO argued that "Kleinrock does not

---

[14] Tropos' original construction was derived directly from the disclaimer that IPCO made during the reexamination of the '516 patent. '516 Reexam, OA Resp. at 16 ("the path or 'link' from a client to a server is "the entire path description from a given client to a given server"); *see also* '062, 10:1-3 ("It should be noted that the term 'link' is used to convey . . . the entire path from a client to a server.").

[15] Specifically, the Examiner found that Jubin disclosed "tier tables (trees) which have [node] entries (client link entries) used in routing data packets to destination [nodes], 'The goal of the tier table is always to maintain the 'best' information about how to get to a destination [node]." '062 Reexam, Appeal Brief at 33.

[16] IPCO appears to agree that "link" and "transmission path" are interchangeable. *See, e.g.,* PBr. at 9 (quoting passage from '516 patent describing "the term 'link'" in support of its construction of "transmission path").

8

disclose or suggest **complete** transmission paths from clients to a server and, for at least this reason does not disclose "maintaining a map of transmission paths of the first network . . ." '516 Reexam, OA Resp. at 24. In particular, while the routing tables of Kleinrock maintain the route through which the packet travels for all of its nodes, for its remote nodes, Kleinrock only stores limited information about the route.[17] Accordingly, in order to overcome the Kleinrock reference, IPCO had to narrow the term "transmission path" to include the **entire** route.

Because IPCO's construction improperly ignores the disclaimer that IPCO made during prosecution,[18] IPCO's construction must be rejected.

### D.     "client link tree having client link entries" / "map of [data packet] transmission paths"

IPCO's constructions for both "client link tree having client link entries" and "map of [data packet] transmission paths" also improperly read directly on the routing tables of Jubin and Kleinrock that it disclaimed during the reexams of the '062 and '516 patents. IPCO's construction should therefore be rejected.

---

[17] '516 Reexam, OA Resp. at 17 ("<u>Kleinrock</u> disclosed reducing a routing table length in the nodes of a wired network by keeping 'at any node, complete routing information about nodes which are close to it . . . and **lesser information about nodes located further away from it**.").

[18] IPCO's construction is also inconsistent with its construction of "changing the transmission path" to mean "adding, replacing, and/or removing one or more clients in the transmission path." JCCS, Ex. A at 2-3. Clients cannot be added, replaced, and/or removed from the transmission path without including all the clients along the route.

As discussed in Tropos' opening brief, during prosecution of the '062 and '516 patents, IPCO specifically narrowed the "tree" and "map" terms:

> . . . client link tree, or network map of the client-to-server transmission paths, including client link entries corresponding to ***an optimized transmission path for each of the clients of the network to the server***.

'062 Reexam, Appeal Brief at 26; *see also* DBr. at 11-14. Accordingly, IPCO clearly and unambiguously narrowed the tree and the map of the '062 and '516 patents to include both (1) the ***optimized*** transmission path and (2) paths for ***each of the clients of the network***.

Setting aside the fact that IPCO completely ignores statements that it made during reexamination, IPCO further misrepresents the disclosures in the specifications and the testimony by the inventor. First, IPCO argues that the map/tree cannot store the optimized path because "the specification [] describes how alternative, less optimal routes can be cached in case the client's current link becomes inoperative" citing to Figure 18 and column 21, lines 22-27 of the '062 patent. PBr. at 10. IPCO's statement is misleading. The cited passages do not state that the "less optimal path" is stored in the tree/map ***instead*** of the optimal path. To the contrary, the specification specifically states that the optimal path is, in fact, stored in the tree:

> [T]he client's link is updated in a step 392 to this shorter link If not, the alternative route is cached in case the client's current link becomes

10

> inoperative. Therefore, in the pooning process, the client listens to all packets to continuously and dynamically ***update its link to the best possible path***.

'062, 21:22-27. The specification explains that the tree stores the optimal path and that a less optimal path is also cached. If the optimal path is no longer operative, the server will determine whether the cached path is the new most optimal path and will update the tree/map accordingly.

Second, IPCO argues that "[h]ad the patentee intended the map to include all clients, the claim would have said so, as confirmed by the inventor's own testimony" citing to page 187 of Dr. Brownrigg's deposition transcript. This is not what Dr. Brownrigg stated. In fact, Dr. Brownrigg stated the opposite—that the map is intended to include all clients:

> Q And similarly, in the context of claim 1 [of the '516 Patent], there's not a limitation that all clients have to be included in the map to be maintained in the server; correct?
> . . .
> THE WITNESS: I think claim 1 implies that ***all clients are included***.
> BY MR. HERMAN:
> Q Okay. Where do you see that, sir?
> . . .
> THE WITNESS: As I said, I believe that it's implicit, not explicit.

Brownrigg Dep., 187:4-16. Dr. Brownrigg, in fact, confirms that the map implicitly includes all clients. Accordingly, consistent with the file history, the inventor

11

confirms that the map includes the transmission paths for **_each client in the network_**.

Third, IPCO argues that the tree/map cannot include each client in the network "due to the dynamic nature of the network, clients continuously enter and leave the system, thus rendering the set of 'each client of the network' undefined." PBr. at 10. This argument is baseless. Again, the evidence upon which IPCO relies supports Tropos' construction. When a client enters or leaves the network, the server simply adds or deletes the client from the map/tree. '062, 11:37-55. The specification is not only consistent, but also supports Tropos' construction.

Last, IPCO argues that "Tropos also attempts to limit the client link tree to including **_only_** paths from the client to server." PBr. at 10-11 n.7. IPCO is again wrong. There is nothing in Tropos' construction that precludes other paths from being stored in the map/tree. Rather, Tropos' construction merely requires (as IPCO stated during reexam) that, at minimum, the map/tree store the optimized transmission path for each client to the server, as established by the same passages to which IPCO cites to support its argument. While IPCO argues that the passage at column 10, lines 1-3 of the '062 patent shows that the tree may include links between clients or from a server to a client (which the tree may under Tropos' construction), this passage also states that the links between clients necessarily

12

include all the links between the client to the server:

> It should be noted that the term "link" is used to convey **both** the connection to an adjacent client as well as the **entire path** from a client to a server. It will therefore be understood that when speaking of a link to an adjacent client, that **this also implicitly includes** all necessarily links from that adjacent client **to the server**.

'062, 10:1-3. Similarly, the long passage cited by IPCO from column 10, line 8 through column 12, line 42 focuses on building the tree of transmission paths for each client **to the server**. *See, e.g.,* 10:44-46 ("client 6 makes radio contact with client 5 and builds a routing path or "link" **to the server** 14 through the client 5. Server 14 updates its routing table accordingly."). Thus, the specification fully supports Tropos' construction.

IPCO's construction has no basis in the intrinsic or extrinsic evidence. More importantly, IPCO's construction would recapture disclaimed subject matter. Therefore, IPCO's construction must be rejected.

### E.    "housekeeping"

#### 1.    "housekeeping functions" ('062: 6, 10)

IPCO argues that "housekeeping functions/steps" are any "functions/steps designed to keep the network in good working order." But the set of function/steps necessary to keep the network in so-called "good working order" is undefined— there is simply no readily understood set of "housekeeping" functions. *See, e.g.,*

Belding Decl., ¶ 22. Accordingly, IPCO's construction will only serve to confuse the jury since "good working order" is vague and undefined.[19]

The term "housekeeping" has multiple meanings. *See, e.g.,* Brownrigg Dep., 141:12-14 ("Q Would you agree with me that there are multiple definitions of housekeeping? A Yes.").[20] "[W]here there are several common meanings for a claim term, the patent disclosures serves to point . . . toward the proper meaning." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998). In the '062 patent, "housekeeping" is clearly "a process of deleting clients

---

[19] As discussed in Tropos' motion for summary judgment on indefiniteness filed concurrently with this brief, when a term and/or construction is vague and provides no objective anchor to determine the scope of the claim, such a term is indefinite. *See also Halliburton Energy Services, Inc. v. M-I LLC* 514 F.3d 1244, 1251 (Fed. Cir. 2008) ) ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope."). IPCO's construction, which introduces the term "good," relies on the subjective opinion of the system designer. If IPCO's construction is adopted, the term "housekeeping functions" would be rendered indefinite.

[20] *See also Wiley Electrical and Electronics Engineering Dictionary* (IEEE Press, 2004) (Ex. 4) at 350 ("Any instructions or routines which are automatically performed by a given program to help provide for itself a more optimum computing environment."); *Microsoft Computer Dictionary* (Microsoft Press, 2d ed., 1994) (Ex. 5) at 201. ("Any of various routines designed to keep the system, the environment within which a program runs, or the data structure within a program itself in good working order."); *IEEE 100 The Authoritative Dictionary of IEEE Standards Terms* (7th ed., 2000) (Dkt. 155-12) at 524 ("A computer operation that establishes or reestablishes a set of initial conditions to facilitates the execution of a computer program, for example, initializing storage areas, clearing flags, rewinding tapes, opening and closing files.").

from the client link tree that can be interrupted during heavy traffic."

Notably, IPCO can point to no part of the specification that supports another process that would qualify as a "housekeeping" function. To the extent that IPCO points to passages in the specification, these passages support Tropos' construction, not IPCO's construction. Here, the '062 patent clearly describes the housekeeping function 80 of Figure 4 as a part of the "server process of the ***present invention*** operating on the server of FIG. 3." '062 patent at 6:37-38. "[I]n FIG. 11, the housekeeping process 80 of FIG. 4 is illustrated in greater detail," and shows the process of "deleting clients from the client link tree." '062, Fig. 11.

IPCO argues that "'[d]eleting' clients is but one of various possible functions,"[21] but does not (and cannot) point to any other housekeeping functions identified in the specification.[22] The process of deleting clients is not simply "a single embodiment described in the specification," it is ***the*** embodiment of the present invention, and the only one described. *General American Transportation*

---

[21] IPCO argues that the inventor confirms that deleting clients is but "one of various possible functions." This is not what the inventor states. Rather, Dr. Brownrigg states that in the patent, the clients are not actually "deleted" but instead "ignored." Brownrigg Dep., 142:19-25 ("Q In your patent, do you perform housekeeping by deleting clients from the client link tree? . . . THE WITNESS: I would amend what you just said. The clients aren't deleted, they're ignored.").

[22] IPCO points to 5:29-32 and 16:61-62 to argue that "the specification often refers generally to 'housekeeping functions' in the plural." PBr. at 11-12. This simply means that multiples processes of deleting can be running.

*Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (limiting the construction of a claim term to the preferred embodiment when "it is the only one described").

Further, while IPCO argues that Tropos' construction is "unnecessarily limiting" because "[t]raffic is but one factor that may impact housekeeping actions," IPCO tellingly points to nothing in the specification that supports this argument. It cannot. The only passage in the patent describing the housekeeping function supports Tropos' construction. In particular, "***the*** housekeeping function is of generally less importance than the other functions of the [server] process 70, [such that] it is possible that housekeeping function will be ***interrupted*** with a branch to one of the functions 74, 76, and 78 of FIG. 4." '062,17:36-40. The functions 74, 76, and 78 of Figure 4—"Process Packets Received from Clients" 74, "Send Packets" 76, and "Communicate With Network" 78—are all functions involving traffic. In other words, the "housekeeping" process is one "that can be interrupted during heavy traffic."

Where, as here, there are multiple meanings of a term, the proper meaning of the term is informed by the specification. *Renishaw*, 158 F.3d at 1250. The specification supports only Tropos' construction.

### 2.    "housekeeping step" ('062: 14)

The "housekeeping step" is a step-plus-function term, not a means-plus-function term.[23] Thus, the question is not whether there is a presumption for "mean-plus-function" treatment, but instead whether there is a presumption for "step-plus-function" treatment.[24] A term is presumed to be in "step-plus-function" form if it uses "step for" language. *Masco Corp. v. United States*, 303 F.3d 1316, 1327 (Fed. Cir. 2002). Here, regardless of whether the presumption applies, there are simply no acts recited in the claim that would allow the "housekeeping step" to escape § 112, ¶ 6. The "function" of a method claim element is *what* that element ultimately accomplishes while "acts" refer to *how* the function is accomplished, or a step for performing the function.[25] Claim 6 contains "nothing that can be construed as an act." *Id.* Thus, this is a step-plus-function term, and the "housekeeping step" is limited to the acts in the specification disclosed for performing that function—the acts described in Figure 11.

---

[23] "An element in a claim for a combination may be expressed as a means ***or step*** for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

[24] IPCO's citation to *Watts v. XL Systems*, 232 F.3d 877 (Fed. Cir. 2000) (finding a presumption against "means-plus-function" treatment where "means" is omitted) is therefore inapposite.

[25] *Masco*, 303 F.3d at 1327 (citing *Seal–Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 849–50 (Fed. Cir. 1999).

**F.**     **"changing the transmission path . . . so that the path to the gateway is chosen from the group consisting essentially of . . ." ('062: all claims)**

**1.**     **IPCO attempts to read out the word "chosen" from the claim language.**

The key dispute between the parties is whether this term means "choosing the transmission path by looking at the group . . ." (Tropos) or "changing the transmission path . . . based on one or more factors" (IPCO).[26] IPCO's interpretation cannot be correct—IPCO reads out the limitation that requires that "the ***path*** to the gateway is ***chosen*** from the group."

"[W]e construe the claim as written, not as the patentees wish they had written it." *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). Here, the claim language is clear—a path is chosen from a group of alternative paths. First, the claims do not recite ***factors***. Instead, the claims list ***paths***:

- "***the path*** to the gateway through the least possible number of additional clients"

- "***the path*** to the gateway through the most robust additional clients"

---

[26] IPCO does not construe the term as a whole, but argues in its briefing that the term means "[c]hanging the transmission path [to] be based on one or more factors, including traffic, robustness of clients, number of hops, and client speed." PBr. at 14 n.12.

- "***the path*** to the gateway through the least amount of traffic"

- "***the path*** to the gateway through the fastest clients"

Had the patentee intended the claims to cover an optimization algorithm based on one or more factors, the claim would have just listed the factors "traffic, robustness of clients, number of hops, and client speed." PBr. at 14. The claims do not.

Second, the plain language cannot be interpreted such that "one or more factors" is considered. As the specification explains, "optimization may result in a routing of data around the less robust or slower links, even though it may increase the number of hops to the server 16." '516, 9:17-19. In other words, the paths, in some cases, are mutually exclusive. This is particular true given the claim language which requires:

- "the path to the gateway through the ***least*** possible number of additional clients"

- "the path to the gateway through the ***most*** robust additional clients"

- "the path to the gateway through the ***least*** amount of traffic"

- "the path to the gateway through the ***fastest*** clients"

The chosen path cannot reflect one or more factors given that ***least*** hop path may not be the ***most*** robust path. Further, if the patentee had intended the claim to cover an optimization algorithm based on one or more of these factors, the patentee again

would have stated—as IPCO attempts to do—"based on one or more factors, including traffic, robustness of clients, number of hops, and client speed." PBr. at 14. The patentee did not use any such language.

Third, there is no support for IPCO's argument that the selection can include more than one member from the group.[27] To the contrary, the plain language of the claims states "***the path*** is chosen from the group," not one or more of a combination of the plural path**s**. The plain language of the claim makes clear that one (and only one) path is chosen from the group of at least four paths.

### 2.   IPCO's proposed construction is unintelligible and unsupported.

As discussed in Tropos' opening brief, IPCO's convoluted, complex constructions are of no help to a jury. DBr. at 15-16. More importantly, IPCO's opening brief confirms that IPCO has no support for its constructions.

First, IPCO construes "the path to the gateway through the clients with the least amount of traffic" to mean:

---

[27] IPCO incorrectly argues that Tropos' construction is "inconsistent with Federal Circuit precedent" because the term "group consisting essentially of" is a partially open group, "and selection from that group can include one member, or a combination of members." MPEP § 2111.03 and *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1343-1344 (Fed. Cir. 2009) simply confirm that "group consisting essentially of" is a partially open group (consistent with Tropos' construction that construes the term as "including at least"). There is no precedent for IPCO's assertion that "group consisting essentially of" must be interpreted such that the selection can include one member or a combination of members.

> the path to the gateway through the clients having the lowest volume of
> packets transmitted through the client per unit time

IPCO's only support for this construction are citations to the specification which

IPCO acknowledges simply "describe[] the benefits of minimizing traffic at certain

nodes." PBr. at 15. IPCO provides absolutely no support (intrinsic or extrinsic) for

the construction itself.

Second, IPCO construes "the path to the gateway through the fastest clients"

to mean:

> the path to the gateway through the packets having the highest packet
> transmission and/or computing speed

Here, IPCO provides its sole citation to the file history, noting that the examiner

"liken[ed] 'fastest clients' to 'delay at clients.'" PBr. at 15 n.14. Again, this

citation provides no support for the interpretation of fastest clients to mean

"highest packet transmission and/or computing speed," and IPCO provides no

other support for its construction.

Third, IPCO construes "the path to the gateway through the most robust

additional clients" to mean:

> the path to the gateway through the most reliable clients or through the
> clients having the greatest ability to maintain communication under adverse
> conditions, including but not limited to factors such as: signal strength;
> battery life; link quality; and susceptibility to malfunctions

As discussed in Tropos' motion for summary judgment filed concurrently with this brief, IPCO fails to cite to any evidence that supports its construction that "robustness" is affected by "signal strength," "battery life," "link quality," and "susceptibility to malfunctions." More importantly, the term "most robust" is indefinite. *See* Tropos' Defendant Tropos Networks, Inc.'s Motion for Summary Judgment of Invalidity Based on 35 U.S.C. § 112, ¶ 2.

IPCO's construction is simply unsupportable, and must be rejected.

### G.    '062 Patent Means-Plus-Function Terms[28]

#### 1.    "server means . . ." ('062: 6)

##### a.    IPCO is estopped from asserting that the "server means . . ." is not means-plus-function.

IPCO knows well that during the reexamination of the '062 patent, it asserted that the "server means . . ." is a means-plus-function term. *See, e.g.,* '062 Reexam, Appeal Brief at 14 ("[S]erver means . . . [" is a] means-plus-function recitation."); '062 Reexam, Reply Brief at 15 ("[S]erver means . . . [" is a] means-plus-function recitation."). IPCO is therefore precluded from asserting that this term is not governed by § 112 ¶ 6. *Phillips*, 415 F.3d at 1317. IPCO's failure to recognize this disclaimer made during reexamination is plainly improper.

---

[28]   The "housekeeping step" was addressed by IPCO in conjunction with "housekeeping functions." Tropos thus addressed the "housekeeping step" *supra* at Section I.E.2 with "housekeeping functions."

### b.    The recited function includes "providing a server process including."

IPCO provides no support or explanation for truncating the recited function, and thus its recited function should be rejected.

### c.    The corresponding structure includes a processor running an algorithm.

IPCO admits that an algorithm is required when "the structure is a generic, general purpose computer." PBr. at 18-19. IPCO further admits that the structure corresponding to the recited function includes "a processor." *Id.* at 18. A processor is a general purpose computer,[29] and therefore, the corresponding structure for the "server means . . ." requires an algorithm.

In particular, as discussed in Tropos' opening brief, an algorithm is needed to perform the housekeeping function.[30] IPCO argues that an algorithm is unnecessary where the recited functions are simple. The "housekeeping functions" are not simple, as demonstrated in the housekeeping algorithm of Figure 11 itself.

The processor identified by IPCO as corresponding structure cannot perform

---

[29] *WMS Gaming, Inc. v. Int'l Game Technology*, 184 F.3d 1339, 1349 (Fed. Cir. 1999) ("In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.").

[30] IPCO argues that the Tropos' identification of the algorithm is not meaningful. This argument is baseless. Tropos' argues simply that the microprocessor implements the algorithms described in Figures 4 and 11.

23

any part of the recited function without an algorithm. Accordingly, IPCO's corresponding structure, which fails to identify an algorithm, must be rejected.

### 2.   "means for maintaining a client link tree having client link tree entries" ('062: 6)

The structure identified by IPCO is not only insufficient to perform the recited function, but also supports Tropos' construction. By its own construction, IPCO admits that the structure must include "logic for performing the recited function." In other words, IPCO acknowledges that the structure must include an algorithm but fails to identify the algorithm. As discussed in Tropos' opening brief, the algorithm disclosed in the patent for performing the recited function is shown in Figures 6-9c. DBr. at 20. Accordingly, IPCO's construction must be rejected for failing to identify this algorithm.

### H.   '516 Patent Means-Plus-Function Terms

### 1.   "means for receiving a data packet from a client of said wireless network" ('516: 6) / "means for receiving a data packet from said second network" ('516: 6)

IPCO argues "an 'algorithm' as corresponding structure is unnecessary where the structure is a special purpose device." IPCO is only partially correct. An algorithm is unnecessary where the structure is a special purpose device *for performing the recited function*. In other words, the structure corresponding to the recited function must be sufficient to perform the entire function. *See Golight, Inv.*

24

*v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1334 (Fed. Cir. 2004) (claim construction analysis focusing on the structure "required for performing the claimed function"). Here, while the radio modem can generally receive data, this is only part of the function. The structure must receive data "from a client of said wireless network" and "from said second network." Accordingly, a microprocessor implementing the Figures 5 and 5a-c is necessary structure.

      **2.**    **"means for sending said data packet to a proper location on said second network" ('516: 6) / "means for transmitting said data packet with said header to a client of said wireless network" ('516: 6)**

*See* Defendant Tropos Networks, Inc.'s Motion for Summary Judgment of Invalidity Based on 35 U.S.C. § 112, ¶ 2.

      **3.**    **"means for changing the transmission paths . . . so that the path to the gateway is chosen from the group consisting essentially of . . ." ('516: 6)**

*See* Defendant Tropos Networks, Inc.'s Motion for Summary Judgment of Invalidity Based on 35 U.S.C. § 112, ¶ 2.

**II.    CONCLUSION**

For the foregoing reasons, IPCO's proposed constructions should be rejected, and Tropos' proposed constructions should be adopted.

Dated: July 22, 2013                              Respectfully submitted,


                                                  */s/ Bryan G. Harrison*
                                                  Bob Steinberg
                                                  LATHAM & WATKINS LLP
                                                  355 South Grand Avenue
                                                  Los Angeles, CA 90071
                                                  Telephone: (213) 891-8989
                                                  bob.steinberg@lw.com

                                                  Richard G. Frenkel
                                                  Lisa K. Nguyen
                                                  LATHAM & WATKINS LLP
                                                  140 Scott Drive
                                                  Menlo Park, CA 94025
                                                  Telephone: (650) 470-4848
                                                  rick.frenkel@lw.com
                                                  lisa.nguyen@lw.com

                                                  Bryan G. Harrison
                                                  Morris, Manning & Martin, LLP
                                                  1600 Atlanta Financial Center
                                                  3343 Peachtree Road, N.E.
                                                  Atlanta, Georgia 30326
                                                  Telephone: (404) 233-7000
                                                  Fax: (404) 365-9532

                                                  *Attorneys for Defendant*
                                                  *Tropos Networks, Inc.*

26

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing brief was prepared using 14-point Times New Roman font in accordance with L.R. 5.1.

/s/     *Bryan G. Harrison*
Bryan G. Harrison
Georgia Bar No. 331750

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed

to have consented to electronic service are being served with a copy of this

document via the Court's CM/ECF system this 22nd day of July 2013.

/s/    *Bryan G. Harrison*
Bryan G. Harrison
Georgia Bar No. 331750