IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC, | CASE NO. 1:06-CV-0585 CC |
| Plaintiff, | |
| v. | |
| Tropos Networks, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT TROPOS NETWORKS, INC.'S
REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.  IPCO MISREPRESENTS THE DOCTRINE OF PROSECUTION HISTORY DISCLAIMER ............................................................1

II. the claim terms in dispute ................................................................2

    A.  "server" ('062: all claims; '516: 1-9, 13) / "client" ('062: all claims; '516: 1, 5, 6, 8-11, 13-15, 17, 19) .............................2

    B.  "gateway" ...................................................................................5

    C.  "transmission path" ('062: 2, 10; '516: 1, 5, 6, 10, 13-15, 17, 19) ..............................................................................................7

    D.  "client link tree having client link entries" / "map of [data packet] transmission paths" ..............................................8

    E.  "housekeeping" ........................................................................10

        1.  "housekeeping functions" ('062: 6, 10) ..........................10

        2.  "housekeeping step" ('062: 14) ......................................12

    F.  Means-Plus-Function Terms ...................................................12

        1.  Federal Circuit law on computer-implemented means-plus-function limitations .............................................12

        2.  "server means . . ." ('062: 6) ..........................................13

        3.  "means for maintaining a client link tree having client link tree entries" ('062: 6) ..........................................14

        4.  "means for receiving a data packet from a client of said wireless network" ('516: 6) / "means for receiving a data packet from said second network" ('516: 6) ...........................14

    G.  The '516 Patent Is Invalid As Indefinite ..............................15

i

III.    CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott Labs. v. Sandoz, Inc.*,
  566 F.3d 1282 (Fed. Cir. 2009)................................................................1

*AccuScan, Inc. v. Xerox Corp.*,
  76 Fed. Appx. 290 (Fed. Cir. 2003) ........................................................1

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007)................................................................2

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech*,
  521 F.3d 1328 (Fed. Cir. 2008)..............................................................13

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013)................................................................5

*Computer Docketing Station Corp. v. Dell, Inc.*,
  519 F.3d 1366 (Fed. Cir. 2008)................................................................8

*Datamize, LLC v. Plumtree Software*,
  417 F.3d 1342 (Fed. Cir. 2005)..............................................................10

*Elektra Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
  214 F.3d 1302 (Fed. Cir. 2000)................................................................4

*Halliburton Energy Services, Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008)..............................................................10

*In re Katz Interactive Call Processing Patent Litigation*,
  639 F.3d 1303 (Fed. Cir. 2011)..............................................................13

*Nystrom v. Trex Co., Inc.*,
  424 F.3d 1136 (Fed. Cir. 2005)................................................................5

*Omega Eng'g, Inc.v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003)................................................................2

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992)............................................................................2, 4

*Saffran v. Johnson & Johnson*,
  712 F.3d 549 (Fed. Cir. 2013)..................................................................... 3, 4, 10

*Southwall Tech., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995).................................................................................9

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| IPCO | IP Co., LLC |
| Tropos | Tropos Networks, Inc. |
| '062 patent | U.S. Patent No. 6,044,062 (Dkt. 155-2) |
| '516 patent | U.S. Patent No. 6,249,516 (Dkt. 155-3) |
| Asserted Patents | '062 and '516 patents |
| PBr. | Plaintiff Intus IQ's Opening *Markman* Brief In Support Of Its Proposed Claim Constructions (Dkt. 154) |
| DBr. | Defendant Tropos Network, Inc's Opening Claim Construction Brief (Dkt. 155 |
| PRBr. | Plaintiff Intus IQ's Responsive *Markman* Brief In Support Of Its Proposed Claim Constructions (Dkt. 158) |
| DRBr. | Defendant Tropos Network, Inc's Responsive Claim Construction Brief (Dkt. 157) |
| Brownrigg Dep. | Excerpts from the Transcript from the June 18, 2013 Deposition of Dr. Edwin Brownrigg (Dkt. 155-4) |
| Belding Decl. | Declaration of Dr. Elizabeth Belding dated June 20, 2013 (Dkt. 155-5) |
| Das Decl. | Declaration of Dr. Samir R. Das dated July 22, 2013 (Dkt. 158-1) |
| '062 Reexam, Appeal Brief | '062 Reexamination, Appeal Brief dated March 16, 2009 (Dkt. 155-06) |

'516 Reexam, OA Resp.          '516 Reexamination, Response to Office Action
                               dated October 29, 2007 (Dkt. 155-9)


* Emphasis added throughout unless otherwise indicated.

IPCO's constructions[1] recapture subject matter that IPCO distinguished during reexam. IPCO does not dispute this. Rather, IPCO argues that it need not be bound to the statements it made to overcome the prior art. In doing so, IPCO relies on alarming misrepresentations of law that directly conflict with the Federal Circuit's admonishment that "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."[2] IPCO does not abide by this basic tenet, and thus its constructions must be rejected.

## I.   IPCO MISREPRESENTS THE DOCTRINE OF PROSECUTION HISTORY DISCLAIMER

Throughout its brief, IPCO boldly asserts that "it is improper to force [] disclaimer into [a] term's construction," arguing that "prosecution history estoppel . . . should be dealt with during the infringement stage of this litigation." PRBr. at 6 n.1. IPCO's argument is a gross conflation of prosecution history estoppel and prosecution history disclaimer. *AccuScan, Inc. v. Xerox Corp.*, cited by IPCO for this assertion (PRBr. at 4), unmistakably distinguishes the two doctrines:

> Contrary to **prosecution history estoppel** which limits the doctrine of equivalents, **prosecution disclaimer** applies to the determination of literal infringement by excluding from the **claim construction** any scope that has been clearly and unmistakably disavowed during prosecution.

---

[1] IPCO incorrectly asserts that Tropos engaged in gamesmanship during the claim construction process. Tropos will fully address these false assertions in its opposition to IPCO's motion to strike testimony of Dr. Elizabeth Belding.

[2] *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1317-1318 (Fed. Cir. 2009).

76 Fed. Appx. 290, 292 (Fed. Cir. 2003). Estoppel and disclaimer are not the same, and there is no question that disclaimer properly applies to claim construction.[3]

IPCO further relies on *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) to argue that when "a patentee distinguishe[s] his invention from [a] combination on multiple grounds . . . each [statement does] not constitute a separate disclaimer." PRBr. at 11. Again, this is a blatant misstatement of law. *Read Corp.* relates to estoppel, not disclaimer. 970 F.2d at 824. More importantly, the Federal Circuit has plainly established "[a]n applicant's invocation of multiple grounds for distinguishing a prior art reference does not immunize each of them from being used to construe the claim language." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007).

## II.   THE CLAIM TERMS IN DISPUTE

### A.   "server" ('062: all claims; '516: 1-9, 13) / "client" ('062: all claims; '516: 1, 5, 6, 8-11, 13-15, 17, 19)

IPCO clearly and unmistakably narrowed the terms "server" and "client" during the '062 reexam. The Federal Circuit recently noted:

[A]pplicants rarely submit affirmative disclaimers along the lines of 'I

---

[3] *See also Omega Eng'g, Inc.v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ("The doctrine of prosecution disclaimer is well established Supreme Court precedent, precluding patentees from recapturing through *claim interpretation* specific meanings disclaimed during prosecution.").

hereby disclaim the following . . .' during prosecution and need not do so to meet the applicable standard. In this case, [the patent owner's] unqualified assertion that 'the device used is a sheet' extends beyond illuminating 'how the inventor understood the invention,' to provide ***an affirmative definition for the disputed term***. Given such definitive statements during prosecution, the interested public was entitled to conclude that the 'device' recited in the claims of the [patent-at-issue] is a continuous sheet.

*Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013). Here, IPCO

definitively stated that "server" and "client" must be in "a client-server network":

> Jubin fails to disclose or render obvious at least the recited "***server*** . . ." and "a plurality of ***clients*** . . . " at least because Jubin relates to a peer-to-peer network rather than ***a client-server network***.

'062 Reexam, Appeal Brief at 26.[4] Given these statements, the public (and Tropos)

is entitled to conclude that the "server" and "client" recited in the claims of the

Asserted Patents are limited to a client-server network.

IPCO's proposed construction encompass the disclaimed peer-to-peer

network. IPCO does not dispute this. Rather, IPCO relies on obvious

misstatements of fact and law in an attempt to reclaim this subject matter.

First, IPCO argues that the inclusion of "in a client-server network"

contradicts the intrinsic record. PRBr. at 5. This is plainly false. As discussed in

Tropos' responsive brief, none of IPCO's cited passages supports this statement.

---

[4] *See also* DBr. at 6-8; DRBr. at 2-4.

3

DRBr. at 4-5. These passages simply relate to communication[5]—the specification never states, or even suggests, that a client can provide a service to another client.[6]

Second, IPCO argues that "the patentee distinguished the invention from Jubin on a ***number*** of different grounds," such that the statement does not create estoppel. IPCO relies on *Read Corp.* for this argument, which, as discussed in Section I *supra*, relates to estoppel, not disclaimer. Significantly, IPCO's argument is directly contrary to Federal Circuit law which has clearly stated that "an applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Saffran*, 712 F.3d at 559. Thus, regardless of whether IPCO distinguished its invention on other grounds (or even whether the examiner relied on those grounds), clear and unambiguous disclaimer applies.

Third, IPCO argues that "these statements were made without an accompanying amendment" (PRBr. at 6), and are therefore non-binding. Again,

---

[5] IPCO further argues that Tropos' construction would read out a "preferred embodiment." PRBr. at 7. Even assuming that the specification discloses this embodiment (which it does not), disclaimer may apply even when it would exclude the preferred ***and only*** embodiment. *See Elektra Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1308 (Fed. Cir. 2000) (adopting construction that excluded the preferred and sole embodiment in light of disclaimer).

[6] Further, the specification unmistakably distinguishes peer-to-peer networks stating "[o]ther local area networks operate on a peer-to-peer basis ***without the use of servers***." '062, 1:18-19.

4

this is plainly contrary to Federal Circuit law. As explained in the recent Federal Circuit decision *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, "[p]rosecution history disclaimer . . . protects the public's reliance on definitive statements made during prosecution. . . . [Accordingly,][s]uch statements can take the form of either amendment *or argument*." 713 F.3d 1090, 1095 (Fed. Cir. 2013).

### B.    "gateway"

A gateway is "a server that facilitates communication between two networks." This construction (Tropos' construction) is firmly established by the intrinsic and extrinsic evidence.[7] IPCO confirms that "the basic function of a 'gateway' is to facilitate communication between two networks" citing to the '516, 5:50-54. While IPCO argues this passage distinguishes a gateway from a server, it simply reiterates a "gateway" is always discussed in the context of a server:[8]

> The *server* of the present invention provides a gateway between two networks, where at least one of the networks is a wireless network. The gateway function of the *server* makes any necessary translations in digital packets being sent from one network to the other network.

'516, 5:50-54. IPCO further attempts to distinguish a gateway from a server by

---

[7] As discussed in Tropos' responsive brief (DRBr. at 6 n.12), IPCO incorrectly asserts that Tropos' constructions conflate "server" and "gateway." PRBr. at 8-9. Tropos does not argue that a "server" is necessarily a "gateway." Under Tropos' constructions, a server need not provide a connection between two networks.

[8] *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1143-45 (Fed. Cir. 2005) (construing the term "board" to cover only wooden boards because that was the context in which the term was used throughout the specification).

arguing that "[t]he specification also describes the gateway being used ***without*** a server." PRBr. at 8 (emphasis original). However, a node in the network can only be a server or client (*see, e.g.,* '516, 10:21-22), and notably, the patent never uses the term "gateway" in the context of a client. As the inventor Dr. Brownrigg stated at his deposition, "[a] gateway ***is a server***, a function of which is to interface two or more networks." Brownrigg Dep., 32:8-9.

IPCO's construction that a gateway is "equipment, program(s), and/or device(s)" is simply unhelpful. While IPCO argues that these "are common terms that are well understood, even to a lay person" (PRBr. at 7 n.2), IPCO fails to cite to ***any*** evidence to support this assertion.[9] IPCO never explains the differences between "equipment" and "devices," let alone how they can be combined. And significantly, the cited evidence (both intrinsic and extrinsic) never use the terms "equipment" or "program" in relation to "gateway."[10]   Defining a term with undefined terms cannot be helpful to a jury.

---

[9] IPCO cites to the '516,13:23-29 and inventor testimony to argue that a "gateway" can be "software, hardware, or a combination." PRBr. at 7 n.2. But "software, hardware, or a combination" is not used in IPCO's construction, and notably, these citations are consistent with Tropos' construction (nothing in Tropos' construction excludes "software, hardware, or a combination").

[10] IPCO does cite to evidence that uses the term "device" (PRBr. at 8 (citing to MICROSOFT COMPUTER DICTIONARY 232 (5th ed. 2002) ("device that connects networks . . ." ). But neither parties' constructions preclude this definition, nor do they limit a "gateway" to simply a "device."

### C.        "transmission path" ('062: 2, 10; '516: 1, 5, 6, 10, 13-15, 17, 19)

There is no dispute that during the reexams of the Asserted Patents, IPCO narrowed the scope of "transmission path" to "the *entire* route through which a packet travels."[11] In fact, IPCO readily admits that "[r]ead in context, [] these statements [] explain how the path between two nodes, *e.g.*, nodes A and B, is the '*entire*' path between A and B . . . '*complete* routing information from a first node to another node'." PRBr. at 11 (emphasis added). Thus, the only dispute between the parties is whether these statements are binding.[12] Without a doubt, they are. IPCO's arguments otherwise are based on the same repeated misstatements of law.

First, IPCO argues that there is no disclaimer because "the patentee distinguished his invention . . . on multiple grounds." PRBr. at 11. As discussed in Section I *supra*, disclaimer applies regardless of the other grounds used to distinguish the invention. Second, IPCO argues that the statements are non-binding because "there was no accompanying claim amendment." PRBr. at 11. Again, this

---

[11] While IPCO acknowledges that Tropos modified its construction to focus the dispute on the inclusion of "entire" (PRBr. at 9), IPCO inexplicably spends the majority of its responsive brief addressing Tropos' original construction. PRBr. at 9-11. These arguments should be ignored as they are superfluous.

[12] IPCO notes that the term "entire" "injects potential ambiguity into the construction" because "the 'entire' path could improperly include travel through the second network (*e.g.*, the Internet)." PRBr. at 10. But, with respect to the '062 patent, IPCO concedes that there is "no connectivity to a 'second network.'" *Id.* at 9.  And, with respect to the '516 patent, each claim specifies that the "transmission path" is from the client to the gateway or server. '516, claims 1, 5, 10, 15.

is plainly contrary to Federal Circuit law. *See Computer Docketing Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) ("Statements made during prosecution may also affect the scope of the claims.").

**D.     "client link tree having client link entries" / "map of [data packet] transmission paths"**

IPCO's proposed constructions recapture the very same prior art it distinguished during reexam. IPCO does not disputes this. Instead, IPCO argues that (1) the intrinsic evidence does not support Tropos' construction that the "tree" / "map" contains the ***optimized*** transmission path ***for each client of the network***, (2) Tropos' constructions improperly read in limitations from the specification (contrary to its first argument), and (3) IPCO's disclaimers during reexam were not "clear and unmistakable." IPCO is wrong on all three counts.

First, the specification is consistent with IPCO's disclaimers. IPCO argues that "due to the dynamic nature of the network environment, it is not a guarantee that each path is always 'optimized.'" PRBr. at 13. But IPCO contradicts its own argument. IPCO states that "[t]ransmission paths are constantly updated (or 'optimized') as conditions change or as clients enter or leave the network." *Id.*  In other words, the "tree" / "map" is constantly updated to include the "optimized" path for each client in the network. Thus, the "tree" / "map" is "a data structure containing the optimized transmission path for each client of the network to the

server."[13]

Second, IPCO argues that Tropos attempts to read in limitations from the specifications. PRBr. at 13. As set forth in detail in Tropos' opening and responsive briefs (DBr. at 11-14; DRBr. at 9-13), IPCO clearly limited these terms to include (1) an ***optimized*** transmission path, and (2) ***for each client of the network***. Tropos' construction does not improperly read in limitations from the specification. Rather, Tropos' construction properly "exclude[s] any interpretation that was disclaimed during [reexam]." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

Third, IPCO argues that "nowhere in the cited portions of the reexamination does the applicant state 'clearly and unmistakably' that the link tree must include a path 'for ***each*** client.'" PRBr. at 14. This is incorrect. IPCO stated definitively:

> The server . . . implements a server process that . . . maintains a client link tree, or network map of the client-to-server transmission paths, including client link entries corresponding to an ***optimized*** transmission path for ***each of the clients*** of the network to the server.[14]

---

[13] *See also* DRBr. at 12. IPCO attempts to distinguish the intrinsic and extrinsic evidence by arguing that "the ***intent*** of the invention of the invention is to optimize paths, but does not relate to what the client link tree (or map) actually represents." PRBr. at 15 (emphasis original). This argument is nonsensical. The "tree"/"map" includes the optimized path for each client of the network.  How the system maintains those structures is a different analysis inapposite to the present issue.

[14] As discussed in Tropos' prior briefing, IPCO makes similar statements as to the '516 patent. DBr. at 11-14; DRBr. at 9-13. IPCO dismisses these statements asserting that "the patentee was simply distinguishing the 'smaller routing tables'

'062 Reexam Appeal Brief at 26. As the Federal Circuit has recognized "applicants rarely submit affirmative disclaimers along the lines of 'I hereby disclaim the following . . .' during prosecution and need not do so to meet the applicable standard." *Saffran*, 712 F.3d at 559. Where, as here, the patentee has "provide[d] an affirmative definition for the disputed term," disclaimer applies.

### E.   "housekeeping"

#### 1.   "housekeeping functions" ('062: 6, 10)

The inclusion of "good working order" in IPCO's construction fails to provide meaningfully precise claim scope and renders the term indefinite.[15] Notably, IPCO fails to cite to any evidence that a person of ordinary skill in the art could properly identify the bounds of this term. To the contrary, as a subjective term, the scope of the claim would "depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention."[16]

---

of Kleinrock from the invention." PRBr. at 15. But this is exactly what constitutes a clear disavowal. In order to distinguish the "smaller routing tables" of Kleinrock, the patentee had to narrow the "map" to include optimized transmission paths for each client of the network. '516 Reexam, OA Resp. at 17-18.

[15] *Halliburton Energy Services, Inc. v. M-I LLC* 514 F.3d 1244, 1251 (Fed. Cir. 2008) ) ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").

[16] *Datamize, LLC v. Plumtree Software*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

10

The term "housekeeping" has multiple meanings.[17] As such, "one of ordinary skill in the art would look to the claim language and specification of the '062 patent to understand how the term is used in the claims of the '062 patent."[18] Belding Decl., ¶ 22. As discussed in detail in Tropos' opening and responsive briefs, the term "housekeeping functions" is used in the '062 patent to mean "a process[19] of deleting clients from the client link tree that can be interrupted by traffic." DBr. at 18-20; DRBr. at 13-16.

IPCO argues that this is not the only type of housekeeping function described in the patent. PRBr. at 16. IPCO is wrong. The specification never identifies another embodiment of the "housekeeping function." *See* DRBr. at 13-16.[20] This is underscored by IPCO's failure to point to another housekeeping

---

[17] *See, e.g.,* Brownrigg Dep., 141:12-14 ("Q Would you agree with me that there are multiple definitions of housekeeping? A Yes."); Belding Decl., ¶ 22.

[18] IPCO argues that "housekeeping [does not have] multiple **_conflicting_** meanings requiring the Court to choose one of those meanings to the exclusion of others." This is incorrect. For example, Dr. Brownrigg recognized that under one definition of "housekeeping" routines are performed "automatically" while under another definition such routines are performed "manually." Brownrigg Dep., 141:2-11.

[19] IPCO incorrectly asserts that Tropos' construction requires that a client be deleted from the link tree. It does not. Because it is a "process" that may be interrupted, a client is not necessarily deleted.

[20] Further, IPCO's argument that the use of the "present invention" language does not limit the scope of the invention is unavailing. As noted in the case cited by IPCO, "district courts should disregard contrary indications in the language of the claims, as well as other language of the specifications." *Plasmart Inc.v . Wincell Int'l Inc.*, No. 05 Civ. 10745 (PKC), 2007 WL 3355509, *7-8 (S.D.N.Y. Nov. 8,

function in the specification.[21]

## 2. "housekeeping step" ('062: 14)

IPCO argues that the "housekeeping step" is not a step-plus-function limitation because it "does not recite the requisite 'step for' language." PRBr. at 15 n.12. IPCO fails to provide any analysis or support for its argument. As discussed in Tropos' prior briefing, regardless of whether the presumption for step-plus-function applies, there are simply no acts recited in the claim that would allow this term to escape § 112, ¶ 6. DBr. at 22; DRBr. at 17.

## F. Means-Plus-Function Terms

### 1. Federal Circuit law on computer-implemented means-plus-function limitations

While IPCO argues that an "algorithm" is only required "when the main corresponding structure . . . must perform complex functions," this is yet another misstatement of the law by IPCO. Instead, the Federal Circuit states that "[t]he key inquiry is whether one of ordinary skill in the art would understand the patent to

---

2007). Here, the language of the claims, as well as other language of the specification is consistent with Tropos' construction.

[21] IPCO describes "fast searching" as a housekeeping function. PRBr. at 16. But the patent states that the routing table of Figure 9c "is created to implement fast searching." In other words, "fast searching" is something that results from the "housekeeping function." Further, IPCO's identification of "fast searching" as a "housekeeping function" simply underscores the subjectiveness of IPCO's construction—"fast searching" does not readily appear to qualify as "functions/steps designed to keep the network in good working order."

disclose structure that **sufficiently corresponds** to the claimed function." *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1317 (Fed. Cir. 2011). In other words, the inquiry is not whether the function is complex, but whether the general purpose computer disclosed is sufficient to perform the recited function. Here, Tropos does not dispute that the simple functions of "sending" and "receiving" that is part of the "server means . . ." can be sufficiently performed by the disclosed radio modem and microprocessor.  Instead, based on the testimony of those of ordinary skill in the art including the inventor, Tropos maintains that a general purpose computer is insufficient to perform the additional functionality recited on top of the simple "receiving" and "sending" functions.[22]

### 2. "server means . . ." ('062: 6)

There can be no dispute that a processor implementing the "housekeeping" algorithm disclosed in Figure 11 is clearly associated with the function of performing the "housekeeping function" of the "server means . . ."[23] While IPCO asserts that any computer can perform a housekeeping function without the need for a special "algorithm" (PRBr. at 20), IPCO fails to point to **any** evidence that

---

[22] *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331 (Fed. Cir. 2008) ) ("in a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm").

[23] As discussed at length in Tropos' prior briefing.  DBr. at 21-22; DRBr. at 23-24.

supports this assertion.

### 3. "means for maintaining a client link tree having client link tree entries" ('062: 6)

IPCO cites to Dr. Das' declaration (disclosed for the first time with IPCO's responsive brief) to argue that "all that is necessary to [perform the recited function] is a digital controller configured with logic to perform this routine function." PRBr. at 21. But in order to maintain the client link tree, the digital controller must be able to add and delete clients from the link tree. Belding Decl., ¶ 29.[24] Dr. Das' declaration does nothing to support the contrary.[25]

### 4. "means for receiving a data packet from a client of said wireless network" ('516: 6) / "means for receiving a data packet from said second network" ('516: 6)

IPCO again ignores that the recited function here is not simply "receiving," but "receiving a data packet from a client of said wireless network" and "receiving a data packet from said second network."[26] Its argument that the simple function of "receiving" can be carried out by a general purpose computer (PRBr. at 18) is therefore inapposite. IPCO does not show that the general purpose computer can

---

[24] *See also* DBr. at 22-23; DRBr. at 24.

[25] Dr. Das simply states that the digital controller can perform the recited function "by, for example, storing the client link tree in memory." Das Decl., ¶ 17. Dr. Das never explains what it means to be "maintaining a client link tree having client link tree entries." Further, his exemplary "logic" of "storing" fails to identify what structure is necessary in order to perform the recited function.

[26] As discussed in Tropos' prior briefing. DBr. at 24; DRBr. at 24-25.

perform the additional functionality of the recited function.

### G.    The '516 Patent Is Invalid As Indefinite

As discussed in Tropos' motion for summary judgment based on indefiniteness, Dkt. 159, and will be further addressed in Tropos' reply brief in support of same, the following terms of the '516 Patent are indefinite:

- "most robust" (all independent claims) [27]

- "means for sending said data packet to a proper location on said second network" (claim 6) / "means for transmitting said data packet with said header to a client of said wireless network" (claim 6)

- "means for changing the transmission paths of clients to optimize the transmission paths includes changing the transmission path from the client to the gateway so that the path to the gateway is chosen from the group consisting essentially of the path to the gateway through the least possible number of additional clients, the path to the gateway through the most robust additional clients, the path to the gateway through the clients with the least amount of traffic, and the path to the gateway through the fastest clients" (claim 6)

## III.   CONCLUSION

For the foregoing reasons, IPCO's proposed constructions should be rejected, and Tropos' proposed constructions should be adopted.

---

[27] The term "most robust" is part of the term "changing the transmission paths . . ." With respect to Tropos' alternative construction for this term, IPCO raises only one issue—the "group consisting essentially of" means that the "selection from that group can include one member, or a combination of members." PRBr. at 22. As discussed in Tropos' responsive brief, the authority that IPCO cites does not support this interpretation. DRBr. at 18-20.

Dated: August 1, 2013                    Respectfully submitted,


                                         */s/ Bryan G. Harrison*
                                         Bob Steinberg
                                         LATHAM & WATKINS LLP
                                         355 South Grand Avenue
                                         Los Angeles, CA 90071
                                         Telephone: (213) 891-8989
                                         bob.steinberg@lw.com

                                         Richard G. Frenkel
                                         Lisa K. Nguyen
                                         LATHAM & WATKINS LLP
                                         140 Scott Drive
                                         Menlo Park, CA 94025
                                         Telephone: (650) 470-4848
                                         rick.frenkel@lw.com
                                         lisa.nguyen@lw.com

                                         Bryan G. Harrison
                                         Morris, Manning & Martin, LLP
                                         1600 Atlanta Financial Center
                                         3343 Peachtree Road, N.E.
                                         Atlanta, Georgia 30326
                                         Telephone: (404) 233-7000
                                         Fax: (404) 365-9532

                                         *Attorneys for Defendant*
                                         *Tropos Networks, Inc.*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing brief was prepared using 14-point Times New Roman font in accordance with L.R. 5.1.

*/s/ Bryan G. Harrison*
Bryan G. Harrison

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 1st day of August 2013.

/s/ Bryan G. Harrison
Bryan G. Harrison
Georgia Bar No. 331750
