IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC, | CASE NO. 1:06-CV-0585 CC |
| Plaintiff, | |
| v. | |
| Tropos Networks, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT TROPOS NETWORKS, INC.'S
REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
OF THE '516 PATENT BASED ON 35 U.S.C. § 112, ¶ 2**

# TABLE OF CONTENTS

**Page**

I.     IPCO Misstates The Law Of Indefiniteness ...................................................1

II.    The '516 Patent Is Invalid As Indefinite .........................................................2

     A.     The Term "Most Robust" Is Indefinite Rendering Each Of The Claims Of the '516 Patent Invalid........................................................2

          1.     IPCO substitutes "robust" with another subjective term. ...........3

          2.     By itself, the term "most" is not definite. ...................................7

     B.     Claim 6 Of The '516 Patent Is Indefinite For Failure To Disclose Sufficient Structure For Certain Means-Plus-Function Elements ..........................................................................................8

          1.     The specification fails to disclose structure clearly linked with sending, or transmitting, data packets "to a proper location" and "with said header to a client." ...........................10

          2.     The specification fails to disclose structure "so that the path is chosen from the group consisting essentially of" the most-robust path, the least-traffic path, the fastest path. ...................................................................................12

III.    CONCLUSION............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allvoice Computing PLC v. Nuance Comm'ns, Inc.*,
  504 F.3d 1236 (Fed. Cir. 2007)..................................................................17

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
  521 F. 3d 1328 (Fed. Cir. 2008)............................................. 12, 16, 17

*B. Braun Medical v. Abbott Labs.*,
  124 F.3d 1419 (Fed. Cir. 1997)..................................................................14

*Bell & Howell Doc. Mgmt. Co. v. Altek Sys.*,
  132 F.3d 701 (Fed. Cir. 1997)..................................................... 14, 15

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009)...................................................... 9, 10

*c4cast.com, Inc. v. Dell, Inc.*,
  2013 U.S. Dist. LEXIS 93199 (E.D. Tex. July 3, 2013) .....................13

*Datamize, LLC v. Plumtree Software*,
  417 F.3d 1342 (Fed. Cir. 2005)....................................................................2

*Deere & Co. v. Bush Hog, LLC.*,
  703 F.3d 1349 (Fed. Cir. 2012).....................................................................5

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)..................................................................12

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012)..................................................................12

*Finisar Corp. v. DirecTV Group, Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008)..................................................................17

*Function Media, LLC v. Google Inc.*,
  708 F.3d 1310 (Fed. Cir. 2013)..................................................................13

*Halliburton Energy Services, Inc. v. M-I LLC*,
514 F.3d 1251 (Fed Cir. 2008)................................................................1

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012)........................................................ 13, 16

*Pinpoint, Inc. v. Hotwire, Inc.*,
No. 11 C 5597, 2013 U.S. Dist. LEXIS 38371 (N.D. Ill. March 20, 2013) ..........8

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
731 F.2d 818 (Fed. Cir. 1984)...............................................................7

*Selex Comm'ns, Inc. v. Google, Inc.*,
No. 1:09-CV-2927-TWT, 2013 WL 1412334 (N.D. Ga. April 8, 2013) ... 2, 8, 13, 16

*Source Search Techs., LLC v. LendingTree, LLC*,
588 F.3d 1063 (Fed. Cir. 2009).............................................................6

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008).............................................................17

*Telcordia Techs., Inc. v. Cisco Sys.*,
612 F.3d 1365 (Fed. Cir. 2010)............................................................17

## STATUTES

35 U.S.C. § 112..................................................................................16

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| IPCO | IP Co., LLC |
| Tropos | Tropos Networks, Inc. |
| '516 patent | U.S. Patent No. 6,249,516 (Dkt. 155-3) |
| Nguyen Supp. Decl. | Supplemental Declaration of Lisa K. Nguyen in Support of Defendant Tropos Network, Inc.'s Reply Brief In Support Of Its Motion for Summary Judgment of Invalidity of the '516 Patent based on 35 U.S.C. § 112, ¶ 2 |
| Supp. Ex. __ | Exhibit __ to the Nguyen Supp. Decl. |
| JCCS | Joint Claim Construction and Prehearing Statement (Dkt. 151) |
| Br. | Memorandum of Points and Authorities in Support of Defendant Tropos Network, Inc's Motion for Summary Judgment of Invalidity of the '516 Patent based on 35 U.S.C. § 112, ¶ 2 (Dkt. 159-1) |
| Opp. | IP Co., LLC, d/b/a Intus IQ's Opposition to Defendant Tropos Network, Inc's Motion for Summary Judgment of Invalidity of the '516 Patent based on 35 U.S.C. § 112, ¶ 2 (Dkt. 171) |
| Brownrigg Decl. | Declaration of Dr. Edwin B. Brownrigg dated August 13, 2013 (Dkt. 171-1) |
| Belding Decl. | Declaration of Elizabeth Belding, PH.D. Regarding Claim Construction (Dkt. 151-4) |
| Belding Dep. | Transcript Excerpts from the August 15, 2013 Deposition of Dr. Elizabeth Belding (Supp. Ex. 1) |

Das Second Decl.              Declaration of Samir R. Das (Dkt. 158-1)

\* Emphasis added throughout unless otherwise indicated.

There can be no question that the '516 patent is indefinite as a matter of law. To meet the requirements of definiteness, a claim term must have an objective anchor. The term "most robust" does not. For a means-plus-function term to be definite, the patent must clearly link sufficient structure to perform the recited function in the specification. For the disputed means-plus-function terms, the '516 patent does not. Accordingly, the '516 patent must be found invalid.

## I.      IPCO MISSTATES THE LAW OF INDEFINITENESS

Throughout its opposition, IPCO incorrectly states that a claim term is definite if it is merely "susceptible to construction by a person of ordinary skill in the art." Opp. at 22. This is not the law of indefiniteness, particularly as to subjective and means-plus-function terms. The Federal Circuit has admonished:

> The fact that [the patent holder] can articulate a definition supported by the specification. . .does not end the inquiry. Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.

*Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008); *see also* Br. at 10. Thus, even if a term can be construed, it can still be indefinite. This is particularly true, here, where (1) IPCO's construction of "most robust" is also subjective and (2) IPCO's corresponding structure covers known methods of carrying out the claimed function not disclosed in the specification.

In *Selex Comm'ns, Inc. v. Google, Inc.,* this Court addressed a materially

1

identical situation,[1] and found (1) the term "high cost number" indefinite because the patent provided no "objective parameters to rein in the claim term[]" and (2) the term "control means for transmitting. . . ," indefinite for failure to disclose adequate corresponding structure. No. 1:09-CV-2927-TWT, 2013 WL 1412334, at *7, 14 (N.D. Ga. April 8, 2013). This Court recognized that (1) "the subjective assessment of a person skilled in the art cannot render a claim definite" and (2) that structure for a means-plus-function term must be disclosed "even when there are multiple known methods for carrying out a function." *Id.* Here, IPCO raises similar arguments as the patent holder in *Selex*, and those arguments must also be rejected.

## II.   THE '516 PATENT IS INVALID AS INDEFINITE

### A.   The Term "Most Robust" Is Indefinite Rendering Each Of The Claims Of the '516 Patent Invalid

"[A] claim term, to be definite, requires an objective anchor." *Datamize, LLC v. Plumtree Software*, 417 F.3d 1342, 1350 (Fed. Cir. 2005). Here, the term "most robust" is inherently subjective, and the specification provides it with no objective anchor—no standard or guide by which a person of ordinary skill in the art could objectively verify that a path is the one through the "most robust" clients. As IPCO admits "robustness" depends on any number of unknown standards

---

[1] While IPCO argues that the '516 patent is not indefinite because it was examined twice by the USPTO, in *Selex*, this Court placed no weight on the fact that the asserted patent had been reexamined. 2013 WL 1412334, at *1; *see also* Br. at 13.

(individually or in combination), "including **but not limited to** factors such as: signal strength; battery life; link quality; and susceptibility to malfunctions," (JCCS, Ex. A at 3), none of which, as IPCO admits, are expressly disclosed in the specification in the context of robustness.[2] The specification simply provides no help—the disclosures related to "robustness" are few and limited, and provides no examples of the "most robust" client path. Even the most "detailed" disclosure— "the present invention is quite robust in that it will survive the loss of one or more clients of the system" ('516, 9:27-28)—fails to explain in any detail how the survival of the loss of clients of the system can be used as a measure of robustness.

IPCO attempts to fix the term "most robust" by defining "robust" and "most" separately. But IPCO's construction of "robust" is simply another subjective phrase and the term "most" is a term of degree that is unanchored by any objective standards. Separately, these phrases are clearly indefinite, and together they create a phrase that is even more undefined.

### 1.    IPCO substitutes "robust" with another subjective term.

Robustness is "in the eye of the beholder." *Datamize*, 417 F.3d at 1350. Just as "button styles, sizes, and placements, window borders, color combinations, and type fonts" might "affect whether [a] screen is 'aesthetically pleasing'" (*id.* at

---

[2] Dkt. 172 at 3; *see also* Br. at 10-11.

1353), factors such as reliability, signal strength, battery life, link quality, susceptibility to malfunctions[3] may also affect whether a client is "robust." And just as an expert may provide "a list of what he denominated 'generally accepted' parameters of design that contribute . . . to whether a design is 'aesthetically pleasing'" (*id.*), an expert may also provide a list of what he denominates as generally accepted parameters of networking that contribute to whether a client is "robust." But, whether for beauty or robustness, a list of factors simply "fails to explain how the parameters should be evaluated or weighed. . .[in] delineating the metes and bounds of the invention." *Id.* at 1354. Thus, just like the term "aesthetically pleasing," the term "robust" is subjective and therefore indefinite.

IPCO argues that the term "robust" has an objective meaning: "the ability to maintain communication under adverse conditions." Opp. at 7. But IPCO's substitution of one subjective term for another does not create an objective standard. The phrase "adverse conditions" itself implicates multiple interpretations—as IPCO contends "there may be multiple 'adverse conditions' (*e.g.*, battery life, signal strength, etc.) that can affect the robustness of a client"—none of which are disclosed in the patent—and these "particular factors (*e.g.,* battery life, signal strength) . . . may vary depending on the particular network

---

[3] Das Second Decl., ¶ 12; Brownrigg Decl., ¶ 6; Belding Dep. 81:16-23.

implementation or current environmental conditions." Opp. at 7-8; *see also* Das Second Decl., ¶ 12; Brownrigg Decl., ¶ 6; Belding Dep. 81:16-23. This phrase does not explain what factors one would consider to determine whether a client is robust—battery life, signal strength, both, or others—or which combinations would be robust. IPCO's "objective" standard still fails to provide a standard to objectively verify whether a path is one through the "most robust" clients. Thus, the adoption of this "completely subjective construction. . .would still render the [patent] invalid." *Datamize*, 417 F.3d at 1350-1351.

The cases cited by IPCO only serve to underscore the distinction between definite terms and the indefinite term "robust." In *Deere & Co. v. Bush Hog, LLC*, the Federal Circuit found the term "easily . . . washed off" to be definite because the specification explained that an easily cleaned deck has "an upper, generally convex smooth surface from which debris tends to slide off and water will run off" and that the known prior art "can be cleaned of debris quite easily and efficiently" 703 F.3d 1349, 1360 (Fed. Cir. 2012). These examples "provide[d] a standard for measuring the scope of [the claim]."[4] In contrast, the '516 patent provides no such examples. Unlike the described known prior art in *Deere*, there is no "robust"

---

[4] IPCO also cites to *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063 (Fed. Cir. 2009). However, the Federal Circuit similarly found that the "definition based on the various markets and applications of the system" provided a reference to determine the scope of "standardized goods or services." *Id.* at 1076.

client in the '516 patent to which one could compare.

Further, the Federal Circuit in *Datamize* made clear that providing examples in the patent specification is not, in and of itself, sufficient to avoid a finding of indefiniteness. *See also* Br. at 11-12. In finding the term "aesthetically pleasing" indefinite, the Federal Circuit noted that while the specification "provides examples of aesthetic features," it failed to "explain what selection of these features would be 'aesthetically pleasing.'" 417 F.3d at 1352. Thus, even if the '516 patent expressly disclosed that signal strength, battery life, link quality, and susceptibility to malfunctions are examples of robustness features (which it does not, *see* Br. at 11-12), the patent still provides no guidance to identify the "robust" clients—what selection of factors would be "robust." Dr. Belding explained in more detail in her deposition:

> I would need to know what the metric is. And then I would need to know ideally how to measure that metric. . .[I]f we go back to battery power, do you pick a path based on battery power? Do you sum the available battery power of all the clients in the path? Do you take the maximum? Or do you look at the remaining battery power and try to take the maximum path of all that so that any individual node has the most remaining battery power. You don't end up with one node that's at 5 percent even though another node has 95 percent battery power because that path is going to fail soon.

Belding Dep. at 83:20-84:11.[5] "Simply put, the definition of [robust] cannot

---

[5] For example, a network designer could implement a routing algorithm that adds all the battery power along a path and chooses the path with the most battery life.

depend on an undefined standard." *Datamize*, 417 F.3d at 1354.

### 2.    By itself, the term "most" is not definite.

The term "most" may "plainly sit[] at one end of a spectrum" (Opp. at 9) but the relevant question is the spectrum of what. IPCO does not and cannot answer that question, and construing "most" separately only accentuates that deficiency.

"Most" by itself is simply a word of degree, and "[w]hen a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984). While IPCO notes that a district court recently found "most closely match" to be definite, the court's determination of definiteness was not based on the term "most." Quite the contrary, the court in *Pinpoint, Inc. v. Hotwire, Inc.* found that "the specifications here do supply ***an objective standard***"—a "close match" could be found "between a customer profile and a content profile by calculating an agreement scale for common characteristics, ac, between the customer profile, cv, and the content profiles, cp in accordance with the relationship: $ac_{ij}=1/[1+\Sigma_k w_{ik}|cv_{ik}-cp_{jk}|]$." No. 11 C 5597, 2013 U.S. Dist.

---

That network designer may not consider this the "most robust" path because the chosen path could include a node with 5% battery life which would fail more quickly as compared to a path where each node had 20% battery life but a lower total battery life. However, another network designer may consider this chosen path to be the "most robust" path simply because the routing algorithm considers battery life. The scope of "robust" is simply undefined.

LEXIS 38371, at *11 (N.D. Ill. March 20, 2013). Thus, in *Pinpoint*, there was no question that an objective standard was provided. Here, in contrast, there are no examples, let alone any discussion of an objective standard for the path through the "most robust" clients. The use of "most" does nothing to cure this defect.

Likewise, in *Selex*, this Court did not focus on the word "high" (as IPCO claims, Opp. at 11) in determining that the term "high cost number" is indefinite. Instead, this Court (consistent with established law) found no objective anchor disclosed in the specification. *Id.* at *14 (finding the specification lacked "sufficient guideposts for someone with ordinary skill in the art to determine" the scope of "high cost numbers"). Thus, as prescribed by *Selex* and established law, the focus is not on the term of degree "most" but whether the specification provides guideposts to determine the scope of "most robust." It does not.

### B. Claim 6 Of The '516 Patent Is Indefinite For Failure To Disclose Sufficient Structure For Certain Means-Plus-Function Elements

"[I]f one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language." *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009). Here, the specification fails to set forth adequate disclosure for:

(a) "means for sending said data packet to a proper location on said second network" / "means for transmitting said data packet with said header to a client of said wireless network"; and

8

(b) "means for changing the transmission paths of clients to optimize the transmission paths includes changing the transmission path from the client to the gateway so that the path to the gateway is chosen from the group consisting essentially of [1] the path to the gateway through the least possible number of additional clients, [2] the path to the gateway through the most robust additional clients, [3] the path to the gateway through the clients with the least amount of traffic, and [4] the path to the gateway through the fastest clients."

For (a), while the specification discloses structure for "sending," it fails to disclose the structure for the functions of sending[6] "to a proper location" or "with said header to a client." Similarly, for (b), while the specification discloses algorithm to determine [1]—the least-hop path, it fails to disclose structure (*i.e.,* algorithm) to determine [2]-[4]—the most-robust, least-traffic, and fastest paths. These terms are therefore indefinite for lack of sufficient structure. *Blackboard*, 574 F.3d at 1383.

Rather than arguing that the specification discloses sufficient structures (because it cannot), IPCO blatantly rewrites the claim language and misstates the law. For (a), IPCO asserts that the claimed functions are simply "sending," depriving the additional recited claim language of any meaning. For (b), IPCO argues that the specification need merely disclose structure to optimize based on the least-hop path, in sharp contrast to established law that the specification must provide "adequate disclosure showing what is meant by that language."

---

[6] There appears to be no dispute that "sending" and "transmitting" are synonymous. *See* Br. at 19; Opp. at 11-12.

9

*Blackboard*, 574 F.3d at 1383. IPCO's untenable positions must be rejected.

>    1.    **The specification fails to disclose structure clearly linked with sending, or transmitting, data packets "to a proper location" and "with said header to a client."**

IPCO cannot dispute that structure disclosed[7] in the specification relates only to "sending,"[8] and not to the more complex functions of sending data "to a proper location" and "with said header to a client." *See* Br. at 16-21.[9]

IPCO attempts to salvage these terms are unavailing. First, IPCO attempts to rewrite the claim such that the functions for these two limitations are "sending" by itself. Opp. at 12, 16. But IPCO's interpretation of the functions "cannot be correct because it would render other language in [the claim] superfluous." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1350 (Fed. Cir. 2013). Specifically, it would give no meaning to the language "to a proper location" and "with said header to a client."

---

[7] While IPCO maintains that the "network interface" is the structure corresponding to "sending" to a "second network," the network interface is only associated with the function of communicating with the second network. As shown in Figure 4, "sending" and "communicating" are separate and distinct functions—the network interface is not linked in the specification with "sending."

[8] By itself, the structure disclosed for simply sending (the radio modem) is inadequate to perform the more complex functions claimed by these terms. For example, a header depends on whether data is sent to a wired or wireless network. Belding Depo. at 112:12-113:10. And a radio modem is used to send data wirelessly, and would be inadequate for a wired second network. *Id.* at 99:66-11.

[9] While IPCO lists parts related to sending (Opp. at 17-18), tellingly, none of these passages mention sending to "a proper location" or "with said header to a client."

Second, IPCO argues that the disclosed general purpose processor is sufficient because *Aristocrat/WMS Gaming* (requiring the disclosure of an algorithm for computer-implemented mean-plus-function terms)[10] does not apply, incorrectly asserting the "*Katz* exception." Opp. at 13, 17. Foremost, the Federal Circuit specifically warned that this exception is only applied in "rare circumstances" and found a general purpose computer sufficient only for the functions of "processing," "receiving," and "storing." *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012). More importantly, even if the exception encompasses the simple function of "sending,"[11] it certainly does not encompass the more complex functions of sending a data packet to "a proper location" or "with said header to a client."[12]

Third, IPCO argues that even if the more complex functions apply, the header information necessary to send a data packet to a "proper location"[13] is

---

[10] IPCO argues an algorithm "need only [be] describe[d] 'in prose.'" Opp. at 14. Tropos does not disagree. Rather, its position is no algorithm is disclosed at all.

[11] IPCO's citation to *c4cast.com, Inc. v. Dell, Inc.*, 2013 U.S. Dist. LEXIS 93199 (E.D. Tex. July 3, 2013) is distinguishable—the case dealt with "storing." *Katz* expressly recognized that a general purpose computer could perform "storing."

[12] *Ergo*, 673 F.3d at 1365 ("[A] general-purpose computer is sufficient structure if the function of a term such as 'means for processing' requires **no more than merely** 'processing.'")

[13] IPCO's citation to the Elster briefing to establish that sending data to a "proper location" is well-understood is entirely inapposite. Tropos argues that the specification fails to disclose structure clearly linked to this function, regardless of

"well-known in the art" and therefore cannot be "insolubly ambiguous." Opp. at 15. But "it is well established that proving that a person of ordinary skill *could* devise some method to perform the function is not the proper inquiry as to definiteness."[14] IPCO misstates the law and ignores the requirement that structure corresponding to the recited function must be disclosed ***in the specification***.

### 2. The specification fails to disclose structure "so that the path is chosen from the group consisting essentially of" the most-robust path, the least-traffic path, the fastest path.

IPCO concedes that the structure corresponding to this function is a "microprocessor configured ***with logic***," (JCCS, Ex. A at 6; Br. at 23)—*i.e.,* a specially-programmed computer. And there is no dispute that the specification fails to expressly disclose logic to identify the most-robust, least-traffic, or fastest paths. Opp. at 19.[15] Thus, there is no algorithm disclosed to program the microprocessor (as required under *Aristocrat*), and claim 6 must be found indefinite for failure to disclose adequate structure. There can be no reasonable finding otherwise.

Despite IPCO's overwhelming concessions, IPCO opposes solely on an incredible interpretation of law and a self-serving inventor declaration.[16] First,

---

whether "proper location" can be understood. Tropos and Elster are not related.

[14] *Function Media, LLC v. Google Inc.*, 708 F.3d 1310, 1311 (Fed. Cir. 2013).

[15] IPCO suggests that the patent ignores that the least-hop algorithm can be used to optimize using other factors at '516, 9:8-25, but there is no such statement there.

[16] Dr. Brownrigg submitted a declaration in order to "fix" his deposition testimony,

while admitting that the patent does not disclose structure necessary to optimize based on robustness, traffic, or speed, IPCO asserts that one of ordinary skill in the art could simply optimize using these factors with the least-hop algorithm disclosed. Opp. at 19. But both Drs. Belding and Brownrigg[17] clearly state that this algorithm *cannot* be used for these factors. As Dr. Belding explained:

> The tree structure described in the '516 patent (see, e.g., 1a-b, 9a-b) is a representation of the number of hops between the nodes. Accordingly, the optimization algorithm. . .based on this tree structure, *is intended to optimize only for path length*. The optimization algorithm. . .*is insufficient* to describe to one of ordinary skill in the art how to implement a system that optimizes based on robustness, traffic, or speed.

Belding Decl., ¶ 25. During deposition, Belding explained in further detail why this algorithm could not be applied to robustness:

> [T]he logic for path length [] looks at number of hops. You count and you take the one with the fewest. But that doesn't apply in any way to robustness because it's not about hops. It's about other criteria. . . . And it's not a measure of fewest of anything. It's whatever you're measuring. It might be the most. It might be an average. And so, it's a completely different approach to how to measure it.

---

but his conclusory, unsupported declaration is entitled to no weight. *Bell & Howell Doc. Mgmt. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) ("The testimony of an inventor . . . concerning claim construction is [] entitled to little or no consideration. The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application.")

[17] Dr. Brownrigg provides inconsistent testimony in his declaration but does nothing to explain his contrary testimony during deposition. Nor does he explain how the least-hop algorithm can be used for robustness, traffic, or speed. Again, Dr. Brownrigg's statements are conclusory, unsupported, and should be given no weight. *Bell & Howell*, 132 F.3d at 706 (Fed. Cir. 1997).

Belding Dep. at 83:20-84:11. And Dr. Brownrigg explained that this algorithm does not apply to traffic and that an algorithm for speed would require certain information noticeably absent from the patent:

> Q Can this tree sorting algorithm be used to optimize using traffic?
> . . .
> A No.
> Q Why not?
> A The relationship between what dynamic forward routing does as described in the patents is ***irrelevant*** to the traffic in the network.
> . . .
> Q If I asked you to implement a system to optimize based off of the fastest clients, how would you implement such a system?
> . . .
> THE WITNESS: [If] a given client discovered a route through another client that had a finite number of hops, and there was a plurality of such other nodes, then the client would attempt to determine the speed of the route by issuing a loopback command, and in my patents, a loopback takes more than one second, then that particular route is deemed by my patents to be too slow.

Brownrigg Dep. 124:21-125:17, 135:6-24; *see also* Br. at 23-25. The least-hop optimization algorithm cannot be used for these other factors.

Second, as a matter of law, it is insufficient to "broadly disclose[] several structures that could support the claimed function but [] not disclose the required specific algorithm."[18] In *Selex*, the patent holder similarly argued that structure

---

[18] *Selex*, 2013 WL 1412334, at *6; *see also Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) ("The disclosure must identify the method for performing the function, whether or not a skilled artisan might otherwise be able to

disclosed in the specification (but not linked to the claimed function) could be used to perform the claimed function. 2013 WL 1412334, at *8. This Court rejected that argument stating "the patent must teach **specific structures** [in particular, algorithms] to correspond with the claimed function." *Id.*[19]

Third, IPCO nonsensically argues that the '516 patent is somehow exempt from providing most-robust, least-traffic, and fastest algorithms because the specification discloses a least-hop algorithm. Opp. at 20. But *Aristocrat* is clear that "in the absence of structure disclosed in the specification to perform those functions, the claim limitation would lack specificity, rendering the claim as a whole invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F. 3d 1328,1331 (Fed. Cir. 2008). The disclosure of the least-hop algorithm is not an exemption. If anything, it only underscores the lack of algorithm in the specification for the other factors.

## III.   CONCLUSION

For the foregoing reasons, all the claims of the '516 patent are indefinite.

---

glean such a method from other sources or from his own understanding.").

[19] IPCO states that it "need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art," citing to a number of cases. Opp. at 20-21. However, each of these cases only reaffirm that "[t]he question is not whether one of skill in the art would be capable of implementing a structure to perform the function, but whether that person would understand the written description itself to disclose such a structure." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

Dated: August 27, 2013                    Respectfully submitted,


                                          */s/ Bryan G. Harrison*
                                          Bob Steinberg
                                          LATHAM & WATKINS LLP
                                          355 South Grand Avenue
                                          Los Angeles, CA 90071
                                          Telephone: (213) 891-8989
                                          bob.steinberg@lw.com

                                          Richard G. Frenkel
                                          Lisa K. Nguyen
                                          LATHAM & WATKINS LLP
                                          140 Scott Drive
                                          Menlo Park, CA 94025
                                          Telephone: (650) 470-4848
                                          rick.frenkel@lw.com
                                          lisa.nguyen@lw.com

                                          Bryan G. Harrison
                                          Morris, Manning & Martin, LLP
                                          1600 Atlanta Financial Center
                                          3343 Peachtree Road, N.E.
                                          Atlanta, Georgia 30326
                                          Telephone: (404) 233-7000
                                          Fax: (404) 365-9532

                                          *Attorneys for Defendant*
                                          *Tropos Networks, Inc.*


16

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing brief was prepared using 14-point Times New Roman font in accordance with L.R. 5.1.

/s/ Bryan G. Harrison
Bryan G. Harrison
Georgia Bar No. 331750

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 27th day of August 2013.

/s/ Bryan G. Harrison
Bryan G. Harrison
Georgia Bar No. 331750