IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IPCO, LLC d/b/a INTUS IQ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TROPOS NETWORKS, INC., | ) | Civil Action File |
| | ) | |
| Defendant. | ) | No. 1:06-CV-00585-CC |
| | ) | |

**PLAINTIFF INTUS IQ'S NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF ITS PROPOSED
CLAIM CONSTRUCTIONS**

Plaintiff IP CO., LLC d/b/a Intus IQ ("Intus IQ" or "Plaintiff") hereby submits this Notice of Supplemental Authority in Support of its Proposed Constructions of the disputed claim terms of U.S. Patent Nos. 6,044,062 (the "'062 Patent") and 6,249,516 (the "'516 Patent"). Plaintiff Intus IQ has already set forth its proposed constructions for each of the disputed terms of the Patents-in-Suit in prior briefing. *See* Dkt. Nos. 154, 158, 164, 171, 172. After claim construction briefing closed, however, Intus IQ had the opportunity to depose Dr. Elizabeth Belding, who Defendant Tropos Networks, Inc. ("Tropos") belatedly proposed as

an expert for claim construction.[1]  Intus IQ now files this Notice because Dr. Belding's sworn testimony regarding certain disputed terms supports Intus IQ's proposed constructions, as detailed below and in the attached Exhibit A (Belding Transcript excerpts).  Accordingly, Intus IQ respectfully requests that the Court consider this additional evidence in support of Intus IQ's claim construction positions.

    1.    With respect to the disputed term "**client**," Dr. Belding admits that a "service" can include providing information about routing:

> Q: What is your understanding of a service within the context of a multi-hop network?
> A: A service could be providing access to another network, for instance, similar to a gateway functionality.  That would be a service.  *A service could be information about routing, so what path a client device should take*.  A service, you could have a DNS server that provides translation between www, mnemonics versus IP addresses.

Ex. A (Belding Tr., p. 46, ll. 10-18).  Dr. Belding's testimony supports Intus IQ's proposed alternative construction of a "client,"[2] in which clients can provide

---

[1]  Intus IQ currently has a motion to strike the testimony of Dr. Belding which is pending before the Court.  Dkt. No. 156.  This notice of supplemental authority is only necessary to the extent the Court permits Dr. Belding's belated expert testimony.

[2]  Intus IQ's proposed alternative construction of "client," should the Court deem construction necessary, is "equipment, program(s), and/or device(s) capable of communicating with or using a service from at least one server or another client."

services to one another by, for example, sharing routing information and "helping" each other to find a path to a server. *See, e.g.,* Dkt. No. 164 at 5-6. Dr. Belding confirmed that a service can indeed include sharing routing information.

    2.    With respect to the disputed terms "**server**" and "**client**," and specifically with regard to the concept of a "client-server" network versus a "peer-to-peer" network, Dr. Belding admits that a network can have characteristics of both types of networks:

> Q: Okay. So must a network be either a client-server network or a peer-to-peer network?
> A: Most or all of the networks I have ever encountered are one or the other. Is it a requirement? ***No.  A network could have characteristics of both****….*

Ex. A (Belding Tr., p. 47, ll. 2-8). Dr. Belding's testimony supports Intus IQ's proposed alternative constructions for "server"[3] and "client," by confirming that a network can have characteristics of both a client-server network and a peer-to-peer network. Here, the network of the Patents-in-Suit can have characteristics of both, for example, because clients can provide services to one another in addition to including a server. *See, e.g.,* Dkt. No. 164 at 5-6. Thus, there is no requirement

---

[3]  Intus IQ's proposed alternative construction of "server," should the Court deem construction necessary, is "equipment, program(s), and/or device(s) capable of providing a data, digital, or electronic service to clients."

that the constructions of "client" and "server" must include the language "in a client-server network," as Tropos proposed.[4]

    3.    With respect to the disputed term "**gateway**," and specifically with regard to the concept of a "gateway" versus a "server," Dr. Belding admits that a person of ordinary skill in the art would understand how to build a network in which the two devices are separate:

> Q: As one of ordinary skill in the art, would you be able to build a system where the gateway and a server were two separate devices?
> …
> A: **So sure**. You could provide a server that serves Web pages and a gateway that provides the communication capability between the two networks….

Ex. A (Belding Tr., p. 54, l. 11 – p. 55, l. 10). Dr. Belding's testimony supports Intus IQ's proposed alternative construction for "gateway"[5] by confirming that a person of ordinary skill in the art would readily understand that a "gateway" (which facilitates communication between two networks) can be separate from a "server," depending on the particular network configuration. While there may be

---

[4] Tropos' proposed constructions of "client" and "server," respectively, are: "***in a client-server network***, a node that receives a service from a server," and "***in a client-server network***, a node that provides a service to a client."

[5] Intus IQ's proposed alternative construction of "gateway," should the Court deem construction necessary, is "equipment, program(s), and/or device(s) that facilitates communication between two networks."

an embodiment in which the "gateway" and "server" are provided in a single device, there is no requirement that a "gateway" always be a "server," as Tropos proposed.[6] *See, e.g.,* Dkt. No 154 at 7-9.

4.  With respect to the disputed term "**client link tree having client link entries**," Dr. Belding admits that this "tree" may not always store an optimal path due to a latency in delivering information from one point to another:

> Q: Couldn't there be a delay between the server receiving a new optimized path, such that it wouldn't have an optimized path?
> A: Well, certainly nothing in networking is instantaneous. There's always a measurable latency between when information is found at one point until the time it can be delivered to another point….
> …
> Q: Okay. So would you agree that this paragraph that we just looked at ['062 Patent, Col. 11, 56-63] discusses the storage of a route that's not optimal?
> A: If you look at the entire layout of the network**, it would be nonoptimal**; however, it's the **best known** or optimal route at the time that the route is created….

Ex. A (Belding Tr., p. 62, l. 15 – p. 63, l. 22).  Dr. Belding's testimony supports Intus IQ's proposed alternative construction for "client link tree having client link

---

[6] Tropos' proposed construction of "gateway" is: "a *server* that facilitates communication between two networks."

entries"[7] by confirming that the link tree does not always include an "optimized transmission path," as Tropos proposed.[8] *See, e.g.,* Dkt. No. 154 at 10-11.

5. With respect to the disputed term "**housekeeping functions**," Dr. Belding states that her understanding of the term "housekeeping" is broad and encompasses a variety of activities:

> Q: Okay.  Do you have an understanding of the term "housekeeping" in the area -- in your field as a person of ordinary skill in the art?
> A: I do.
> Q: And what is that meaning?
> A: **It's broad.  And it can refer to a variety of processes for improving the functionality of the system**, for improving -- in the case of networking, it might be -- I don't know that it would really be improving path information.  But you can housekeep memory; so you get rid of anything that's not needed.  It's basically improving a system, optimizing it, streamlining it, getting rid of things you don't need.
> Q: Okay.  And what is, I guess, what is the goal of housekeeping in the field of networking?
> A: Along the lines of what I just said: Improving the system, getting rid of things, either from memory, from a routing table, getting rid of extra information to free up memory.  **That's not exclusive.  But it would – it could include those**

---

[7]  Intus IQ's proposed alternative construction of "client link tree having client link entries," should the Court deem construction necessary, is "data structure relating to links among or between clients and/or one or more servers."

[8]  Tropos' proposed construction of "client link tree having client link entries" is: "a data structure containing the optimized transmission path for each client of the network to the server."

- 6 -

>       **things.· It's a very broad term that can be applied across
>       the field of computer science**.

Ex. A (Belding Tr., p. 65, l. 18 – p. 66, l. 15).  Dr. Belding's understanding of the term "housekeeping" is entirely consistent with Intus IQ's proposed alternative construction for this term. [9]  Dr. Belding's testimony thus confirms that Intus IQ has proposed the correct construction, as it is how a person of ordinary skill in the art would readily understand this term.

      6.    With respect to the disputed term "**most robust**," Dr. Belding testified as follows:

> Q: What is your understanding of the term "robustness" or just "robust" within your field?
> A: Broadly within the field?
> Q: Uh-huh.
> A: Not particularly susceptible to adversity, so able to overcome adversity or difficult situations.  So you could be robust to disconnections; whereby, if a node along a path turns off, the robustness would be that there are other paths available to get from A to B, wherever you're going.
> Q: Okay.  And what is your understanding of "robust" within the context of the -516 patent?
> A: **I believe that's defined in the patent** … **robustness is defined as the ability to maintain communication with the network under adverse conditions**.  That's the bottom of column 2.
> Q: Okay.  I see it.  I have it.  Is that meaning consistent with your general understanding of robust?

---

[9]  Intus IQ's proposed alternative construction of "housekeeping functions/step," should the Court deem construction necessary, is "functions/steps designed to keep the network in good working order."

- 7 -

>A: Yes.

Ex. A (Belding Tr., p. 79, l. 11 – p. 80, l. 9).  Dr. Belding's testimony supports Intus IQ's proposed alternative construction for "most robust,"[10] confirms that this term has a meaning readily understood by a person of ordinary skill in the art, and confirms that it is defined in the '516 Patent.  Therefore, this term is far from indefinite as submitted by Tropos.

7. With respect to the disputed term "**means for changing the transmission paths of clients to optimize the transmission paths includes changing the transmission path from the client to the gateway so that the path to the gateway is chosen from the group consisting essentially of the path to the gateway through the least possible number of additional clients, the path to the gateway through the most robust additional clients, the path to the gateway through the clients with the least amount of traffic, and the path to the gateway through the fastest clients**," Dr. Belding testified as follows:

>Q: Okay.  And given your knowledge as a person of ordinary skill in the art, would you be able to optimize a multi-hop network for client speed?

---

[10] Intus IQ's proposed alternative construction of "the path to the gateway through the most robust additional clients," should the Court deem construction necessary, is "the path to the gateway through the most reliable clients or through the clients having the greatest ability to maintain communication under adverse conditions, including but not limited to factors such as: signal strength; battery life; link quality; and susceptibility to malfunctions."

> A: I could pick a criteria that I just used. I could pick either data rate or queuing latency, processor speed, and then I could pick a path based on that. But I would be, again, relying on my experience rather than having the patent guide me into how I should be doing that.
>
> p. 88, l. 20 – p. 89, l. 3.
>
> Q: But you, as a person of ordinary skill in the art, would know how to optimize for signal strength?
> A: I would.
>
> p. 86, ll. 13-15.
>
> Q: … And you state that the terms "robust" "traffic" and "fastest" are not defined in the context of the patent. Would a person of ordinary skill in the art understand that there are known ways or known algorithms to calculate those metrics, such as, is there a known algorithm for calculating traffic?
> …
> A: There's not, per se, an off-the-shelf algorithm that you would use. **I think, kind of like we were talking about before, one of skill in the art would know ways of computing metrics that measured each of these things**….

Ex. A (Belding Tr., p. 132, l. 13 – p. 133, l. 5). Dr. Belding's testimony supports that this disputed term has a meaning readily understood by a person of ordinary skill in the art, and therefore is not indefinite.[11] Specifically, Dr. Belding's

---

[11] Intus IQ's positions with respect to this term, and any related terms, are set forth more fully in Intus IQ's briefing. Dkt. Nos. 154, 158, 164, 171, 172. In short, it is Intus IQ's position that the logic described in the Patents-in-Suit can be used to optimize based on a number of factors in addition to number of hops. A person of ordinary skill in the art would readily understand these concepts in light of the disclosure of the Patents-in-Suit.

testimony confirms that a person of ordinary skill in the art would generally understand the concepts of traffic, speed, and robustness, and that a person of ordinary skill in the art would generally understand how to measure those metrics and optimize transmission paths based on those metrics.

8. Again with respect to the disputed term "**means for changing the transmission paths … to optimize the transmission paths**," and specifically with regard to a multi-hop protocol Dr. Belding helped develop (known as "AODV"), Dr. Belding testified that her AODV protocol could account for "any metric":

> A: … So you have a routing protocol. And that specifies how do the nodes communicate? What messages do they exchange in order to find paths? And then, within the routing protocol, you define a routing metric. And sometimes those are tightly integrated and can't be separated. But with the protocol I developed, that AODV protocol, you could put **any metric** in there, **and then you just modify the routing packets to pass whatever information is required**…

Ex. A (Belding Tr., p. 93, ll. 10-20). Dr. Belding's own publication describes a method of routing optimization, and Dr. Belding confirms that the optimization can be based on "any metric," without identifying which metrics might be considered, and without defining a separate algorithm for each such metric. Ex. A (Belding Tr., p. 142, l. 4 – p. 145, l. 21; Ex. 4, Section 2.1, which reads, "[i]n this case, the node always selects the route to the destination with the greatest destination

sequence number. This ensures that the selected route is the most recent. Given the choice between two routes with the same destination sequence number, the node *can use a preferable metric to select a route, such as the smallest hop count.*"). Dr. Belding's deposition testimony and her prior publication undercuts her declaration testimony in which she opined that the disputed term "means for changing … to optimize [based on traffic/speed/robustness]" is somehow indefinite.

9. With respect to the disputed means-plus-function term "**means for transmitting said data packet with said header to a client of said wireless network**," and specifically with respect to the corresponding structure of a "radio modem," Dr. Belding testified as follows:

> Q: Does a – does a radio modem send the bits?
> A: **Yeah. It transmits**, usually, with a radio modem, you would refer to transmit….
> A: Q: Would a person of ordinary skill in the art such as yourself know how to use a radio modem to transmit a data packet?
> A: **Yes. Usually you just plug it in, and it would work**.

Ex. A (Belding Tr., p. 104, ll. 5-16). Belding's testimony supports Intus IQ's proposed alternative construction for "means for transmitting…"[12] by confirming

---

[12] Intus IQ's proposed structure for "means for transmitting said data packet with said header to a client of said wireless network" is a "a radio modem and its equivalents."

that a person of ordinary skill in the art would readily understand that a radio modem is sufficient structure to transmit a data packet.  Therefore, this term is not indefinite as Tropos proposed.

Respectfully submitted, this 3rd day of September, 2013.

                                    ROBBINS GELLER RUDMAN
                                        & DOWD, LLP

                                    /s/ Jessica M. Kattula
                                    Jessica M. Kattula

John C. Herman
Georgia Bar No. 348370
Attorney-in-charge
Ryan K. Walsh
Georgia Bar No. 735190
Jessica M. Kattula
Georgia Bar No. 414056
3424 Peachtree Road, N.E.
Monarch Centre, Suite 1650
Atlanta, Georgia 30326
Telephone:  404-504-6500
Facsimile:  404-504-6501

Attorneys for Plaintiff,
IP CO, LLC d/b/a Intus IQ

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing brief was prepared using 14-point Times New Roman font in accordance with L.R. 5.1.

/s/ *Jessica M. Kattula*
Jessica M. Kattula

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record who have consented to accept service of this document by electronic mail.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Jessica M. Kattula
Jessica M. Kattula