IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>Tropos Networks, Inc.,<br><br>            Defendant. | CASE NO. 1:06-CV-0585 CC<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT TROPOS NETWORKS, INC.'S RESPONSE TO PLAINTIFF IPCO, LL'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS PROPOSED CLAIM CONSTRUCTIONS**

On June 20, 2013, in accordance with this Court's Scheduling Order (Dkts. 108, 146), the patent local rules, and the parties' agreement, Tropos' timely disclosed the opinions of Dr. Elizabeth Belding with the parties' Joint Claim Construction and Prehearing Statement.  Dkt. 151-4.  While Tropos proposed in May that the parties agree to an expert discovery schedule *before briefing*, IPCO refused to respond to its requests.  *See* Dkt. 166 at 5-7.  While Tropos offered Dr. Belding for deposition in June and July prior to claim construction briefing and prior to the completion of claim construction briefing, IPCO refused to take Dr.

Belding's deposition until August.[1]  IPCO provides no reason why it did not take the deposition of Dr. Belding before briefing as offered by Tropos.

Regardless, Tropos submits this Response to IPCO's Notice.  IPCO both mischaracterizes the deposition testimony of Dr. Belding and takes the testimony out of context.  Accordingly, to the extent that the Court considers IPCO's additional evidence it purports to support its claim constructions, Tropos respectfully requests that the Court consider these additional excerpts from Dr. Belding's deposition testimony refuting IPCO's assertion that her testimony supports IPCO's claim constructions.

1. With respect to the disputed term "**client**," while a "service" can include providing information about routing, Dr. Belding clarified that a "service" must be performed *in response to a request* (such as sending the client link tree in response to a request):

> Q: Okay. And we talked about a service with respect to server.  If there's anything else you want to add about what it means to receive a service, as a client, what would that mean? Or if it would differ in any way from what we talked about before?
> A: No.  I think it would be the same.  So just you're the recipient of

---

[1] And while Tropos timely disclosed Dr. Belding on June 10 (well before the parties were required to do so under their agreement), IPCO did not disclose its expert Dr. Samir Das until June 20 nor his opinions until July 22 (well over a month after the parties were to do so under the Court's Scheduling Order).  *See* Dkts. 108, 146; *see also* Dkt. 166 at 7.  IPCO refuses to offer Dr. Das for deposition unless its motion to strike (Dkt. 156) Dr. Belding's testimony is denied.

> whatever it is you've *requested* from the server, be it the Web page or information or file or anything else.

Ex. A (Belding Tr.) at 48:8-16.

> Q: Okay. Receiving a client link tree, is that a service related to routing?
> A: It's -- it's a *service in the sense* that you're *asking* the server for this information, and it's being provided to you.

Ex. A (Belding Tr.) at 50:5-11. Importantly, Dr. Belding is clear that the patents (including the passages in the patents upon which IPCO rely) never discuss a client providing another client with a service:

> Q: Okay. And would you consider receiving help from another client a service?
> A: I would *need context* for that. In the *context of the patent*, the help is specifically referring to routing information. And *no, I would not consider that a service.* I would consider that routing information.
> Q: Okay. So you're saying routing – receiving routing information is not a service?
> A: No. It's routing. It's done in every type of network, whether it has a server or not.

Ex. A (Belding Tr.) at 49:11-16. These passages simply refer to receiving routing information, and nodes in all networks receive routing information. Providing routing information is only a service if it is *in response to a request* to a server. The passages in the patent upon which IPCO relies are not services (nor does Dr. Belding ever state otherwise). See Dkt. 165 at 3-4.

    2.    With respect to the disputed terms "**server**" and "**client**," and specifically with regard to the concept of a "client-server" network versus a "peer-

to-peer" network, Dr. Belding clearly states (in the excerpt omitted by IPCO) that the claimed network of the patents is a client-server network:

> Q: Okay. So must a network be either a client-server network or a peer-to-peer network?
> A: Most or all of the networks I ever encountered are one or the other. Is it a requirement? No. A network could have a characteristic of both. But again, coming **back to the patents**, it's -- it's very clear to me that it's a ***client-server network***.

Ex. A (Belding Tr.) at 47:2-8. Different types of networks will always share certain characteristics—all networks route. This does not remove IPCO's disclaimer narrowing the terms "server" and "client" to a "client-server network." *See* Dkt. 165 at 2-5.

3. With respect to the disputed term "**gateway**," Dr. Belding clearly states (in the excerpt omitted by IPCO) that a gateway is a type of server in the context of the patents:

> Q: As one of ordinary skill in the art, would you be able to build a system where the gateway and a server were two separate devices?
> A: ***Not if I was following the patent***. If I was following the patent, it would be the same device.
> . . .
> A: So sure. You could provide a server that serves Web pages and a gateway that provides this communication capability between two networks. But again, in the context of the patents, the gateway is described as having an operation that's identical to what the server is able to do, and it's providing the service, and it's a node. So ***it's a server***. It's pretty clear.

Ex. A. (Belding Decl.) at 54:11-55:10. Dr. Belding makes clear that if a person of

4

ordinary skill in the art built a system as claimed by the patent, the gateway would always be a server. *See also* Dkt. 165 at 5-6. IPCO's selected excerpts from Dr. Belding's deposition do not establish otherwise.

    4.    With respect to the disputed term "**client link trees having client link entries**," Dr. Belding clearly states (in the excerpt omitted by IPCO) that the "client link tree" represents the optimized paths:

> Q: Couldn't there be a delay between the server receiving a new optimized path, such that it wouldn't have an optimized path?
> A: Well, certainly nothing in networking is instantaneous. There's always a measurable latency between when information is found at one point until the time it can be delivered to another point. That's just a fact of physics, that there's propagation latency.
>     But by the patent, that time is minimized to the greatest extent possible. So as soon as the optimized path is known the client's responsibility is to get that information to the server and for the server to update the tree.
>     So while there is this finite small period of time, the whole point of the network is to be . . . constantly optimizing its node information and providing that to the server. So the server, at any given time, is representing ***in its client link tree the optimized path*** that are known to it.

Ex. A (Belding Tr.) at 62:15-63:9. The fact that the network is dynamic and that the "client link tree" must be updated in order to reflect the new optimized path when clients are added or removed, does not change the fact that the "client link tree" includes the optimized path for each client of the network. *See* Dkt. 165 at 8-10.

    5.    With respect to the disputed term "**housekeeping functions**," IPCO

simply asserts that "Dr. Belding states that her understanding of the term 'housekeeping' is broad and encompasses a variety of activities."  Dkt. 175 at 6.  This is consistent with Dr. Belding's declaration which states:  "Because [housekeeping] may have a variety of meanings, one of ordinary skill in the art would look to the claim language and the specification of the '062 patent to understand how the term is used in the claims of the '062 patent."  Dkt. 151-4 at 8.

6. With respect to the disputed term "**most robust**," IPCO's citation to Dr. Belding's testimony does not support its position.  Even assuming that "robustness" can be defined as "the ability to maintain communication with the network under adverse conditions," this phrase is equally (if not more) subjective than the term "most robust."  The term "robust" is therefore indefinite.  *See* Dkt. 174 at 2-7.

7. With respect to the disputed term "**means for changing the transmission path . . . so that the path to the gateway is chosen from the group consisting essentially of**," Dr. Belding clearly states that the patent fails to disclose sufficient structure for this limitation because it only discloses structure for least-hop path:

> [T]he logic for path length [] looks at number of hops. You count and you take the one with the fewest. But that doesn't apply in any way to robustness because it's not about hops. It's about other criteria. . . . And it's not a measure of fewest of anything. It's whatever you're measuring. It might be

the most. It might be an average. And so, it's a completely different approach to how to measure it.

Ex. A (Belding Tr.) at 91:19-92:2.  IPCO's citation to Dr. Belding's testimony that "one of skill in the art would know ways of computing metrics that measured each of these things" supports its construction (Dkt. 179 at 7-10) is irrelevant.  The inquiry for means-plus-function terms is whether there is adequate structure *disclosed in the patent* for implementing the recited function of the means-plus-function limitation.  *See* Dkt. 174 at 12-15.  For this term, there is not.  *Id.*

8. Again, with respect to the disputed term "**means for changing the transmission path . . . so that the path to the gateway is chosen from the group consisting essentially of . . .** ," IPCO's citation to Dr. Belding's testimony regarding optimization protocols that she has designed (Dkt. 179 at 10) is irrelevant.  As stated above, the inquiry for means-plus-function terms is whether there is adequate structure *disclosed in the patent* for implementing the recited function of the means-plus-function limitation.  *See* Dkt. 174 at 12-15.  For this term, there is not.  *Id.*

9. With respect to the disputed term "**means for transmitting said data packet with said header to a client of said wireless network**," while Dr. Belding states that a radio modem can transmit, Dr. Belding clearly states that a radio modem by itself cannot transmit *said data packet with said header to a client of*

*said wireless network*:

> Q: . . . If you bought an off-the-shelf radio modem, would it be able to perform transmitting said data packet with said header to a client of said wireless network as described in the patent?
> A: I think what I said before is that the said header part is indefinite. ***There's no structure defined***. And so, without knowing what the structure of the header was -- you know, a radio modem just transmits whatever is given to it, modulates and demodulates. But it has to receive the correct structure. And the patent doesn't indicate what the structure of that header should be.

Ex. A (Belding Tr.) at 163:22-164:11. Dr. Belding's testimony does not support IPCO's construction because additional structures are necessary to perform the entire function. *See* Dkt. 174 at 10-12.

Dated: September 6, 2013					Respectfully submitted,


							*/s/ Bryan G. Harrison*
							Bob Steinberg
							LATHAM & WATKINS LLP
							355 South Grand Avenue
							Los Angeles, CA 90071
							Telephone: (213) 891-8989
							bob.steinberg@lw.com

							Richard G. Frenkel
							Lisa K. Nguyen
							LATHAM & WATKINS LLP
							140 Scott Drive
							Menlo Park, CA 94025
							Telephone: (650) 470-4848
							rick.frenkel@lw.com

lisa.nguyen@lw.com

Bryan G. Harrison
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Fax: (404) 365-9532

*Attorneys for Defendant*
*Tropos Networks, Inc.*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing brief was prepared using 14-point Times New Roman font in accordance with L.R. 5.1.

>/s/ Bryan G. Harrison
>Bryan G. Harrison

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 6th day of September 2013.

>/s/ Bryan G. Harrison
>Bryan G. Harrison
>Georgia Bar No. 331750

LA\3295948.3

1